UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION
*Waleed Bin Khalid Abu Al-Waleed Al-Qargani et. al.  v. Chevron Corporation et. al.*

# EXHIBIT B

*Certified Translation of*
**The Arbitration Award Issued by the International Arbitration Center
Located at 14 Ismail Al-Mazni Street, El-Nozha, Cairo, Egypt
June 3, 2015**



CHUNG, MALHAS, & MANTEL, PLLC.





[Arbitration Award Issued by the International Arbitration Center]

1⁵ MAY 2018

# Strictly Confidential



*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ ( ٢٠٢ + )  محمول : ٦٧١ ٥٨ ٦٨ ( ٢٠١٠ +)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



**Arbitration Award Issued by
the International Arbitration Center,
Located at 14 Ismail Al-Mazni Street, El-Nozha, Cairo**

Cairo on June 3rd 2015G., corresponding to Sha'aban 16th, 1436H.,

**1 6 MAY 2018**

By the Arbitration Panel composed of:

1.  Mr. Mohammad Al-Shahaat Al-Sayed Hasanain, attorney at the Courts of Cassation, of Egyptian nationality, with his office located at 257, Al-Hejaz Street, El-Nozha, Heliopolis, Cairo.

    **(Chairman of the Arbitration Panel)**

2.  Mr. Mohammad Arsheed Abdullah Aldeiri, Lawyer, of Jordanian nationality, with his office located at Villa No. 32, Abdullah Ghosha Street, Amman, Jordan.

    **(Arbitrator nominated by the Claimants)**

3.  Dr. Abul-Ela Ali Abul-Ela Al-Nimr, Professor and Head of Private International Law at the Faculty of Law, Ain Shams University, Attorney at the Courts of Cassation, an Arbitrator approved under a Resolution by the Minister of Justice, of Egyptian nationality, with his office located at the 8th Floor, 10, Al-Oboor Buildings, Salah Salem Road, Cairo.

    **(Arbitrator nominated by the Defendant)**

## The Arbitration Case Is Filed by:

**First:** Mr. Waleed Bin Khalid Abu Al-Waleed Al-Qarqani, in his personal capacity, and as Agent of the heirs of late/ Khalid Abu Al-Waleed Al-Qarqani, who are the heirs of late Khalid Abu Al-Waleed Al Hood Al-Qarqani, as evidenced by Bab Bin Ghesheer Court of First Instance, Commitments and Shari'ah Wills Department at the General People Committee for Justice in the Great Socialist People's Libyan Arab Jamahiriya dated 13.09.2010 G as per Order No. 360-2010, evidencing the death of late/ Khalid Abu Al-Waleed Al Hood Al-Qarqani on 15.09.1971G.

*His inheritance is limited to:*

1.  Mr. Al-Waleed Khalid Abu Al-Waleed Al Hood Al-Qarqani,
2.  Mr. Ahmed Khalid Abu Al-Waleed Al Hood Al-Qarqani,
3.  Mrs. Shaha Khalid Abu Al-Waleed Al Hood Al-Qarqani,
4.  Mrs. Naoum Al-Doha Khalid Abu Al-Waleed Al Hood Al-Qarqani,

5.  Heirs of late/ Badriah So'ad Khalid Abu Al-Waleed Al Hood Al-Qarqani, (His daughter), and her inheritance is limited to her above mentioned brothers.
6.  Heirs of late/ Badi'ah Khalid Abu Al-Waleed Al Hood Al-Qarqani (His daughter), and her inheritance is limited to her above mentioned brothers.

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax:(+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٢٢ ٦٩ ( ٢٠٢ + )  محمول ٠٦٧١٥٨٦٨ ( ٢٠١٠٠+)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



7.  Heirs of late/ Nadeemah Khalid Abu Al-Waleed Al Hood Al-Qarqani (His daughter)
    and her inheritance is limited to her above mentioned brothers

8.  Heirs of late/ Jameelah Abdullah Mohammad (his wife),
    *They are the same heirs of late/ Khalid Abu Al-Waleed Al Hood Al-Qarqani as above mentioned*

9.  Heirs of late/ Laila Naeema Khalid Abu Al-Waleed Al Hood Al-Qarqani,
    *Her death was evidenced on 25.06.1995G, and her inheritance is limited toher son `Mustafa Jawad Zikri,*

10. Mr./Mustafa Jawad Zikri
    *All the above named are of Saudi Nationality*

11. Heirs of late/ Mariam Mai Khalid Abu Al-Waleed Al Hood Al-Qarqani
    *Her death was evidenced on 08.03.2007G, and her inheritance is limited to her sons, namely:*

12. Heirs of late/ Omar Abdul-Rahman Azzam:

13. Mr./Khalid Omar Abdul-Rahman Azzam,

14. Mrs. Fatima Omar Abdul-Rahman Azzam,

15. Mr. Omar Abdul-Rahman Omar Abdul-Rahman Azzam,

16. Mrs. Najlaa Omar Abdul-Rahman Azzam,

17. Mrs. Laila Omar Abdul-Fattah Azzam (his wife)
    *A the above named are of Egyptian Nationality*

18. Heirs of Her Royal Highness Late/ Mona Bint Abdul-Rahman Bin Hasan Azzam,
    *Statement of the Heirs No. 1, as per Deed No. 101/1, dated 11.05.1435H. Her death was evidenced on 19.04.1435H. Her heirs are as follows:*

19. HRH Prince Mohammad, Bin King Faisal Bin Abdulaziz Al Saud,

20. HRH Prince Amr Bin Mohammed Bin King Faisal Bin Abdulaziz Al Saud,

21. HRH Princess Maha Bint Mohammad Bin King Faisal Bin Abdulaziz Al Saud,

22. HRH Princess Reem Bint Mohammad Bin King Faisal Bin Abdulaziz Al Saud
    *All the above named are of Saudi Nationality*

23. Heirs of late/ Essam Abdul-Rahman Azzam (of Egyptian nationality) who has no children.
    His inheritance is limited to the above mentioned heirs.

Their elected domicile is the Law Office of Dr. Abdul- Haleem Mandoor, Attorney at the Courts of Cassation, located at 36, Rushdi Street, Abdeen District, Cairo, Arab Republic of Egypt.

**Second: Heirs of late Sheikh/ Adbullah Al-Solaiman Al-Hamdan, namely:**

1.  Mr. Ahmed Abdullah Bin Al-Solaiman Al-Hamdan, in his personal capacity, delegated Mr. Ahmed Abdul-Hayy Ghanem, the attorney, as per the Special Power of Attorney, issued at Rodh El-Faraj Notarization Office, dated 13.12.2014G, and in his capacity as the Agent of:

2.  Heirs of late/ Khadijah Saleh Al-Fadhl (his wife)
    *Her inheritance is evidenced as per Deed of Inheritance, issued at Jeddah Court under No. 56/10, on 07.06.1427H, namely:*

3.  Mr. Abdulaziz Abdullah Al-Solaiman Al-Hamdan,

16 MAY 2018

3

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش - شيراتون هيليوبوليس
تليفاكس : ٢٥١٦ ٢٢ ٦٩ ( ٢٠٢+ )  محمول : ٥٨ ٦٨ ٠٦٧١ ( ٢٠١٠٠+ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



1 6 MAY 2018

4. Heirs of late/ Dala' Adil Abdul-Qader Qabbani
*Her inheritance is evidenced as per Deed of Inheritance No. 776, issued at Jeddah Court on 29.07.1385H, and she was inherited by her brother as per the Deed of Inheritance No. 22/16, issued on 11.05.1431 H, Volume No. 1/16, issued at the General Court of Taif Governorate, and he is:*

5. Mr. Mazen Bin Adil Bin Abdul-Qader Qabbani,

6. Heirs of late/ Fahad Abdullah Al-Solaiman Al-Hamdan,
*His inheritance is evidenced as per Shari'ah Deed No. 31/326/1, issued at Jeddah Court on 21.08.1420 H. The heirs are:*

7. Mrs. Shafia' Saif Ahmed Abu Halail (his wife),

8. Mr. Abdullah Fahad Abdullah Al-Solaiman Al-Hamdan,

9. Mr. Zaid Fahad Abdullah Al-Solaiman Al-Hamdan,

10. Mrs. Sumayyah Fahad Abdullah Al-Solaiman Al-Hamdan,

11. Heirs of late/ Mohammad Abdullah Al-Solaiman Al-Hamdan
*His inheritance is evidenced as per Shari'ah Deed No. 35/13, issued at Jeddah Court on 25.02.1424 H, Volume No. 4/13. The heirs are:*

12. Mrs. Hayat Yahya Abdullah Noori (his wife),

13. Mr. Salah Mohammad Abdullah Al-Solaiman,

14. Mrs. Khadijah Mohammad Abdullah Al-Solaiman,

15. Mrs. Laila Mohammad Abdullah Al-Solaiman,
*Whose inheritance is evidenced as per Shari'ah Deed No. 776, issued on 21.07.1385 H, and as per the Deed of Will No. 154/1/5. dated 25/08/1408 H. The heirs are:*

16. Mr. Faisal Majed Mohammad Al-Solaiman,

17. Mrs. Sarah Majed Mohammad Al-Solaiman,

18. Heirs of late/ Khalid Abdullah Al-Solaiman Al-Hamdan
*Whose inheritance is evidenced as per Shari'ah Deed No. 51/12, issued at Jeddah Court, Volume No. 1/12, on 17/08/1427 H. The heirs are:*

19. Mrs. Laila Ibrahim Abu Samrah (his wife),

20. Mr. Yazeed Khalid Abdullah Al-Solaiman Al-Hamdan

21. Mr. Waleed Khalid Abdullah Al-Solaiman Al-Hamdan,

22. Mr. Tariq Khalid Abdullah Al-Solaiman Al-Hamdan,

23. Heirs of late/ Loulwa Abdullah Al-Solaiman Al-Hamdan
*Her inheritance was evidenced as per Deed No. 88/136/15, issued at Jeddah Court on 12.07.1411 H. The heir are:*

24. Mrs. Ruqayyah Abdul-Rahman Al-Rasheed,

25. Heirs of late/ Mohammad Abdul-Rahman Al-Rasheed
*His inheritance was evidenced as per Deed of Inheritance No. 237414071175310427, issued at Jeddah General Court on 25.10.1431 H. The heirs are:*

26. Mrs. Asma' Bint Abdullah Mohammad Al-Rasheed (his wife),

27. Mr. Bandar Bin Mohammad Bin Abdul-Rahman Al-Rasheed,

28. Mr. Sultan Mohammad Abdul-Rahman Al-Rasheed,

4

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 5959
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card.629/329/260
ISO 9001-2015 Certification No.
17.2.501- QM rectification date 24 Dec.2019

٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس (+202) ٢٢ ٦٩ ٢٥ ١٦ ( ٢٠٢ ) محمول : ٦٨ ٥٨ ٠٦٧١ ( ٢٠١٠+)
بريد الكتروني : egymark@egymark.org
صفحة الكترونية : www.egymark.org





29.  Mr. Majed Bin Mohammad Abdul-Rahman Al-Rasheed,
30.  Mrs. Nada Bint Mohammad Abdul-Rahman Al-Rasheed,
31.  Mrs. Basmah Bint Mohammad Abdul-Rahman Al-Rasheed,

32.  Heirs of late/ Madhawi Bint Abdullah Al-Solaiman Al-Hamdan
     *Whose inheritance after her father, late/Abdullah Al-Solaiman Al-Hamdan, is evidenced as per Shari'ah Deed No. 776, issued on 29.07.1385 H, and her inheritance is evidenced as per Deed No. 3470745, issued on 09.08.1434 H. The heirs are:*
33.  Mrs. Munawwar Ateeq Mohammad Al-Solaiman Al-Hamdan ,
34.  Mrs. Fattoum Ateeq Mohammad Al-Solaiman Al-Hamdan,

35.  Heirs of late/ Asma' Abdullah Al-Solaiman Al-Hamdan
     *Whose inheritance after her father, late/Abdullah Al-Solaiman Al-Hamdan, is evidenced as per Shari'ah Deed No. 776, issued on 29/07/1385 H., and her inheritance is evidenced as per Deed No. 8/262/1, issued at Jeddah Court on 29.01.1416 H. The heirs are:*
36.  Mr. Hamad Bin Saad Bin Hamad Al-Solaiman,
37.  Mrs. Basmah Hashim Saeed Hashim,
38.  Mrs. Fatimah Abdullah Al-Solaiman Al-Hamdan,
     *Whose inheritance after her father, is evidenced as per Deed No. 776, issued on 29.07.1385H.*
39.  Mrs. Hind Bint Abdullah Al-Solaiman Al-Hamdan,
     *Whose inheritance after her father, is evidenced as per Deed No. 776, issued on 29.07.1385H.*
     *All of the are the are of Saudi Nationality*
     *They are all residing in the Building of Sheikh/ Abdullah Al- Sulaimn Al-Hamdan, Al-Ikhlass Street, Al-Hamra District, Jeddah, Kingdom of Saudi Arabia.*
     *Their elected domicile is the Office of Dr. Abdul-Haleem Mandoor, Attorney at Courts of Cassation, located at 36, Rushdi Street, Abdeen, Cairo, Arab Republic Egypt.*

**(First Party – Claimants)**

## AGAINST

**Second:** Chevron Entities (Chevron Company of USA, Chevron Saudi Arabia and Aramco), having their main offices at 6001, Bolinga Road, Canyon San Romano, CA, 94583, 2324, United State of America, represented by Mr. Carry H. Andreas, in his capacity as Assistant Secretary and legally authorized, having their elected domicile at the Law Office of Al-Ebrashi and Co., located at the 4th Floor, 4, Al-Sadd Al-Aali Street, Dokki District, Cairo – 12311, Arab Republic of Egypt, and the Office of Zulfaqqar & Co. for Legal Consultancy and Advocacy, located at the 8th Floor, the Southern Tower, Nile City Towers, 2005 (A), Nile Cornice, Ramlat Bolaq, Cairo, Egypt.

**(Second Party – Respondents)**



ID: 353570 – Tax Card:697/328/200
ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2020

5

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ ( ٢٠٢ + )  محمول : ٦٨ ٥٨ ٠٦٧١ ( ٢٠١٠+)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org





---

## First: Facts

1. On 20.09.1368H, the heirs of the Claimants, namely: Late Sheikh/Abdullah Al-Solaiman Al-Hamdan, Late Sheikh/Hammad Bin El Solaiman Al Hamdan and late Sheikh/ Khalid Abu Al-Waleed Al-Qarqani, owned as per the order issued by His Highness Prince/ Saud Bin Jalawi, No. 1687/5022 dated 20.09.1368H, an area of land with the boundaries and landmarks shown in the Title Deed No. 124, Volume 2 for the Year 1368H, and on the map enclosed to the reverend said Order, provided that late Sheikh/ Abdullah Solaiman Al-Hamdan and late Sheikh/ Hamad Al-Solaiman Al-Hamdan own three-quarters (3/4) of such area of land, and late/ Khalid Abu Al-Waleed Al-Qarqani owns the remaining quarter of such area.

   Subject Title Deed No. 124, Volume 2 of 1368H, stipulates:

   *The land, the subject matter of this sale has become a pure ownership and right for each of Their Excellencies/ Abdullah and Hamad Bin Al-Solaiman Al-Hamdan and Khalid Abu Al- Waleed Al-Qarqani, provided that three-quarters (3/4) of such land shall be owned by each of Their Excellencies Sheikh/ Abdullah and Sheikh/ Hamad Al-Solaiman Al- Hamdan, and the fourth quarter shall be for Khalid Abu Al- Waleed. They shall have the right to act on their respective land as owners of the same without anyone objecting or disputing them in that regard ..... "*

2. On 29th July 1933G, the Saudi Government, represented by His Excellency/Abdullah Al-Solaiman Al-Hamdan, in his capacity as Minister of Finance, concluded, with the Arab American Oil Company (Standard Oil of California), the first Petroleum Agreement (the **"Concession Agreement"**). As per Article 1 of such Agreement:

   *"The Government hereby grants the Company the absolute right, for a period of sixty (60) years, as of the effective date hereof, to investigate, explore, drill, extract, process, manufacture, transport, handle, take and export oil, asphalt, natural greases, wax and other carbonic fluids and extracts of all such products, in connection with the area specified in the Annex of this Agreement".*

   Such Agreement was called "Concession Agreement for Oil Extraction".

3. On the First of Jumada Al-Thani 1368H that corresponds to 20.03.1949G, the representative of the Arab American Oil Company (Standard Oil of California), the predecessors of the Respondents, sent a letter to the owners of the land - subject of Title Deed No. 124, Volume 2 of 1368H - setting the areas the Company needed from the land that belong to them, in order to carry out its obligations as set forth in the Concession Agreement concluded with the Saudi Government on 29th July1933G.

6

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 59
E-mail: egymark@egymark.org
Web: www.egymark.org



4. The above mentioned Title Deed No. 124, Volume 2 of 1368H, included under the title "Transfer to the Arab American Oil Company", what states:

> "Against the good compensation that would be paid to us, we, the undersigned, as per our **ownership** right under Deed No. 154/8, of the plots of land stated thereof, we hereby grant and transfer, each for himself and for his heirs, guardians and lawful representatives, to the Arab American Oil Company, referred to in subjed Deed, **or its successors** and whoever it appoints, **the right to use and occupy** said plots of land for the purposes of the Saudi Arabian Concession, dated 4th Safar 1352H that corresponds to, 29th July 1933G, and any additional agreements to be annexed thereto. We, hereby, declare and prove that the rights of the said Company **to use and occupy** subject land arise in accordance with Article 25 of the said Concession, and we hereby also agree to safeguard the said Company, its successors and whoever it appoints against all claims, whether in the past, present or in future, against anyone claiming title or interest in any of the said plots of land".
> (This was signed by each of Khalid Abu Al-Waleed, Hamad Al-Solaiman and Abdullah Al-Solaiman).

5. On 08.07.1375H, pursuant to the aforementioned Deed of Sale No. 128, His Excellency Sheikh Hamad Al-Solaiman Al-Hamdan assigned his share in the land subject to the above mentioned Deed to his brother, Sheikh/ Abdullah Al- Solaiman as per the Deed issued from Makkah Al-Mukarramah Notary Public No. 765 on 08.07.1375H.

   Consequently, the owners of the land, the subject matter of Deed of Sale No. 124, have become Sheikh/ Abdullah Al-Solaiman at three- quarters (3/4) and Khalid Abu Al-Waleed at one-quarter (1/4).

6. Article 25 of the Concession Agreement concluded on 26th July 1933G stipulates:

> "The Saudi Government authorizes the Arab American Oil Company (Standard Oil of California) to obtain from the owner of the land, the surface rights of the land that the Company believe in the need of using them in the project related works provided that the Company shall pay to the occupant of the land an amount for assigning the use of such lands. As for the amount to be paid to such occupant, it shall be fair and based on the benefit the occupant obtains from such land. The Government shall extend to the Company all possible assistance in case of any difficulties arising from obtaining the rights of the occupant of the land surface .... "

7. There are many letters and correspondence submitted and kept in the file of this Case, issued by the claimants to all concerned authorities in the Kingdom of Saudi Arabia claiming to obtain their rights represented in the price of the land, subject matter of arbitration, its rental value and compensating them for not benefitting by the land for so many years.

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 5888
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبيليس
تليفاكس (+٢٠٢) ٢٢ ٦٩ ٢٥ ١٦ : محمول : ٦٨ ٥٨ ٠٦٧١ (+٢٠١٠)
بريد الكترونى: egymark@egymark.org
صفحة الكترونية : www.egymark.org



However, the Claimants received no response from any concerned authority in that regard, a matter that made them resort to this arbitration in execution of Article 31 of the Concession Agreement, concluded on 29th July 1933G.

16 MAY 2018

## Second: Procedures

1. On 24.05.2014G, Mr. Ahmed Abdullah Al-Solaiman, in his personal capacity, and as the Agent of Mr. Waleed Bin Khalid Abu Al-Waleed Al-Qarqani and others, applied to the International Arbitration Center requesting approval for conducting arbitration procedures and resolving the dispute arising between them and Chevron Saudi Arabia Company as well as their entities (Respondents), through the International Arbitration Center, in execution of Article 31 of the Concession Agreement, dated 31st July1933G.

2. On 27.05.2014G, the International Arbitration Center sent a letter to Mr. Waleed Bin Khalid Al-Waleed Al-Qarqani and others (Claimants) informing them of its approval to conduct arbitration in the above mentioned dispute, and taking its necessary measures in accordance with its regulations. In this letter, the International Arbitration Center requested the Parties of Arbitration to select their Arbitrators.

3. On 28.05.2014G, the Claimants sent a letter to the International Arbitration Center requesting that the Center appoint, on their behalf, an Arbitrator from amongst the list of arbitrators accredited to the Center.

4. On 02.06.2014G, the International Arbitration Center sent a letter to the Claimants informing them of selecting Dr. Ahmed Sadiq Al-Qushairi as their Arbitrator, being one of the accredited arbitrators in the Center's List. The Center also informed them that Mr. Al-Qushairi has already been notified of such selection and that he has accepted over the phone such nomination.

5. On 05.06.2014G, the International Arbitration Center sent a letter to Chevron Saudi Arabia Company and its entities requesting them to appoint their Arbitrator in respect of the dispute arising between them and the Claimants within a period of no more than thirty (30) days as of the date of receiving such letter, and that in case such period lapses without appointing their Arbitrator, then the Center shall nominate him in accordance with the Center's Regulations, and thereupon the arbitration procedures shall commence.

6. On 05.07.2014G, Ibrachy and Partner Legal Consultancy Firm, as the selected domicile for Chevron Saudi Arabia Company and its entities, sent a letter (to the International Arbitration Center) including his rejection for nominating it to consider the above mention arbitration in accordance with its regulations.

In the same letter, Chevron Company and its entities, as a precautionary measure, nominate Dr. Mohammad Abdul-Wahab, of Egyptian Nationality, as an arbitrator on their behalf, and that his address is 8th Floor, the Southern Tower, Nile City Towers, and Dr. Abdul Wahab.

8

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16   Mobile : (+20) 100 667 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card:097/358/399
ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس: ٢٢٦٩٢٥١٦ (٢٠٢+)   محمول: ٦٨ ٥٨ ٦٦٧ ٠١٠٠ (٢٠١٠+)
بريد الكترونى: egymark@egymark.org
صفحة الكترونية: www.egymark.org

مركز التحكيم الدولى



16 MAY 2018

7.  On 19.08.2014G, the International Arbitration Center sent a notice to Dr. Mohammad Salah Abdul-Wahab informing him that as per the letter sent from Chevron Company to the International Arbitration Center dated 05.07.2014G, Chevron Company and its entities appointed him as Arbitrator on their behalf. Dr. Mohamed Salah Abdul-Wahab was informed in the same letter that the Claimants have selected Dr. Ahmed Sadiq Al-Qushairi as an arbitrator on their behalf.

8.  On 21.08.2014 G., Dr. Mohammad Salah Abdul-Wahab sent a letter to the International Arbitration Center informing it of his approval of being appointed as an arbitrator by Chevron Company and its entities.

9.  On 26.08.2014 G., the International Arbitration Center sent a letter to Dr. Mohammad Salah Abdul-Wahab, the Arbitrator appointed for Respondents that included the nomination of a number of arbitrators registered in the Center's List in order for him to select one of them to be the Umpire. Such letter also stated that such names were brought before Mr. Ahmed Sadiq Al-Qushairi to select one of them to be the Umpire.

10. On 31.08.2014 G., the International Arbitration Center sent a letter to Dr. Mohammad Salah Abdul-Wahab informing him that Dr. Ahmed Sadiq Al- Qushairi nominated Dr. Mohammad Ahmed Ali Ghali, of Sudanese Nationality, Assistant to the Minister of Justice in the Sudan, to be the Umpire.

11. On 31.08.2014G, Dr. Mohammad Salah Abdul-Wahab sent a letter to the International Arbitration Center informing it that he was in the process of coordinating with Dr. Ahmed Sadiq Al-Qushairi with regards the appointment of the Umpire.

12. On 01.09.2014G, the International Arbitration Center sent a letter to Dr. Mohammad Salah Abdul-Wahab repeating that Dr. Ahmed Sadiq Al-Qushairi has selected Dr. Mohammad Ahmed Ali Al-Ghali to be the Umpire, and in this letter also the Center asked Dr. Mohammad Salah Abdul-Wahab to approve the selection of subject Umpire.

13. On 02.09.2014G, both Dr. Ahmed Sadiq Al-Qushairi and Dr. Mohammad Salah Abdul-Wahab sent a joint letter to the Center deciding their withdrawal from the above mentioned Arbitration Case.

14. On 04.09.2014G, Mr. Waleed Bin Khalid Abu Al-Waleed Al-Qarqani, in his personal capacity and as the Agent of the other Claimants, sent a letter to Mr. Mohammad Arsheed Abdullah Aldeiri, the attorney, of Jordanian Nationality, appointing him as Arbitrator for on their behalf instead of Dr. Ahmed Sadiq Al- Qushairi who decided to withdraw from the arbitration and notified the Claimants of such withdrawal. Such letter emphasized as well that Dr. Mohammad Salah Abdul-Wahab was still the Arbitrator of the Respondents as they did not send any letter confirming his withdrawal from the arbitration.

15. On 07.09.2014G, Mr. Mohammad Arsheed Aldeiri sent a letter to the Claimants informing them that he approved his appointment as Arbitrator on their behalf in subject Arbitration

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID : 353570 - Tax Card:697/328/200
ISO 9001-2015 Certification No
17.2.500- QM rectification date 24 Dec 202

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٥١٦ ٢٥ ٦٩ ٢٢ ( ٢٠٢ + )   محمول : ٦٨ ٥٨ ٦٧١ ٠ ( ٢٠١٠ +)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



**1 6 MAY 2018**

Case.

16. On 07.09.2014G, the Claimants sent a letter to the Saudi Arabian Oil Company, Chevron Company and its entities and Chevron Saudi Arabia informing them of the nomination of Mr. Mohammad Arsheed Aldeiri as their Arbitrator instead of Dr. Ahmed Sadiq Al-Qushairi who apologized for discontinuing in the Arbitration Case.

17. On 07.09.2014G, the International Arbitration Center sent a letter to Dr. Mohammad Salah Abdul-Wahab informing him that the Claimants selected Mr. Mohammad Arsheed Aldeiri as their Arbitrator instead of Dr. Ahmed Sadiq Al-Qushairi who apologized for discontinuing as Arbitrator in this Arbitration Case.

18. On 15.09.2014G, Mr. Mohammad Arsheed Aldeiri sent a letter to the International Arbitration Center informing it that he agreed, over the phone, with Dr. Mohammad Salah Abdul-Wahab, the Arbitrator for the Claimants to meet him in Cairo on 14.09.2014G, in order to select the Umpire. However, only on 13.09.2014G, Dr. Abdul-Wahab apologized for meeting him. Consequently, Mr. Mohammad Arsheed Aldeiri demanded the International Arbitration Center to apply its regulations and select an Umpire from amongst the arbitrators registered in the Center's list as he could not agree with Dr. Mohammad Salah Abdul-Wahab on selecting the Umpire.

19. On 16.09.2014G, the International Arbitration Center sent a letter to Dr. Hamdy Abdul-Rahman Ahmed informing him that the Center nominated him as Umpire in the said Arbitration Case, as being one of the arbitrators registered in the Center's list as the other two Arbitrators failed to agree on selecting the Umpire.

20. On 17.09.2014G, Dr. Hamdy Abdul-Rahman Ahmed sent a letter to the International Arbitration Center advising his consent to be appointed as Umpire in the said Arbitration Case, and he declared that he is neutral and independent from the two Parties of this Case.

21. On 18.09.2014G, the International Arbitration Center sent a letter to Mr. Mohammad Arsheed Aldeiri, the Arbitrator nominated by the Claimants informing him to attend the meeting of the Arbitration Panel, composed of Dr. Hamdy Abdul-Rahman Ahmed as Umpire, Dr. Mohammad Salah Abdul-Wahab, the Arbitrator nominated the Respondents and himself, which meeting was to be held in the premises of the Center on 20.09.2014G in order to set a time for the proceedings Hearing.

22. On 18.09.2014G, Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, sent a letter to Dr. Mohammad Salah Abdul-Wahab and Mr. Mohammad Arsheed Aldeiri inviting them to a meeting in the premises of the Arbitration Center, in their capacity as Arbitrators, on 20.09.2014G, in order to set the time for the proceedings Hearing.

On the same date, the International Arbitration Center sent a letter to Dr. Mohammad Salah Abdul-Wahab and Mr. Mohammad Arsheed Aldeiri with the same content of above mentioned letter that was sent to them by Dr. Hamdy Abdul-Rahman Ahmed, the Umpire.

23. On 20.09.2014G, the Arbitration Panel held a meeting in the premises of the International

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (+2 0100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس ١٦ : ٢٢ ٦٩ ٢٥ (٢٠٢ +) محمول ٦٨ ٥٨ ٦٧١ ٠١٠٠
بريد الكترونى: egymark@egymark.org
صفحة الكترونية: www.egymark.org

مركز التحكيم الدولى



16 MAY 2018

Arbitration Center, at 12:00 p.m. The meeting was attended by Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, and Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants, however, Dr. Mohammad Salah Abdul-Wahab, the Arbitrator appointed by the Respondent failed to attend that Hearing although he was duly and legally notified. The Arbitration Panel set a Hearing to be held on 23.09.2014G in order to consider the Arbitration Case, and notified Dr. Mohammad Salah Abdul-Wahab of the Minutes of the Hearing held on 20/09/2014 G. and of the time set for the Hearing to be held on 23.09.2014G.

24. On 23.09.2014G, the Arbitration Panel held a Hearing which was attended by Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, and Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimant, however, Dr. Mohammad Salah Abdul-Wahab, the Arbitrator appointed Respondents failed to attend the Hearing although he was duly and legally notified. The Hearing for considering the Case was adjourned to 18.10.2014G. The two Parties and Dr. Mohammad Salah Abdul-Wahab were notified of the date of the upcoming Hearing.

25. On 24.09.2014G, the International Arbitration Center notified the Respondents of the Hearing to be held on 18.10.2014G.

26. On 30.09.2014G, the International Arbitration Center notified Dr. Mohammad Salah Abdul-Wahab, the Arbitrator appointed by the Respondents of the Hearing to be held on 18.10.2014G.

27. On 18.10.2014G, the Arbitration Panel held a Hearing which was attended by Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, and Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimant, and again Dr. Mohammad Salah Abdul-Wahab, the Arbitrator appointed by the Respondents, failed to attend although he was duly and legally notified. The Hearing was also attended by the Agents of the Claimants who were delegated as per Powers of Attorney which were recorded and proved to entitle them the right to attend before Arbitration Panels. The Panel reviewed the originals then returned them to the Agents after keeping a copy of them in the Case File. The Arbitration Panel stated in the minutes of that Hearing that Dr. Mohammad Salah Abdul-Wahab confirmed his apology for not participating in the exiting Arbitration Case. Thereupon, the Arbitration Panel decided to appoint the Legal Consultant, Mr. Abdul-Nasir Mohammad Abdul-Hameed Khattab, the Deputy Chairman of the Administrative Prosecution Board, as Arbitrator for the Respondent instead of Dr. Mohammad Salah Abdul-Wahab, and notified him of the following Hearing that would be held on 15.11.2014G.

28. On 28.10.2014G, the International Arbitration Center sent a letter to the Legal Consultant, the Chairman of the Administrative Prosecution Board, notifying him that the Center selected the Legal Consultant, Abdul-Nasir Mohammad Abdul- Hameed Khattab, the Deputy Chairman of the Administrative Prosecution Board, to be an Arbitrator for the Respondents, and requested the approval of the Legal Consultant, Chairman of the Administrative Prosecution Board, for the appointment of the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, as Arbitrator for the Respondents.

29. On 30.10.2014G, the International Arbitration Center sent a letter to the entities of Chevron, the Respondents, notifying them that the Center selected the Legal Consultant, Abdul-Nasir

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 18  Mobile: (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card: 697/328/200
ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢ ٦٩ ٢٥ ١٦ ( ٢٠٢ + )  محمول : ٥٨ ٦٨ ٠٦٧١ ( ٢٠١٠ + )
بريد الكتروني : egymark@egymark.org
صفحة الكترونية : www.egymark.org





Mohammad Abdul-Hameed Khattab, to be their Arbitrator instead of Dr. Mohammad Salah Abdul-Wahab.

30. On 30.10.2014G, the International Arbitration Center notified the Claimants and the Respondents of the Hearing to be held on 15.11.2014G.

31. On 01.11.2014G, the Legal Consultant, the Minister of Justice, passed his Resolution No. 8866 for the Year 2014G, delegating, under Article 4 thereof, the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, Deputy Chairman of the Administrative Prosecution Board, to act as Arbitrator for the entities of Chevron, as Respondents, in the Arbitration Case filed by Mr. Khalid Abu Al-Waleed Al-Qarqani and others, in their capacity as Claimants.

32. On 15.11.2014G, the Arbitration Panel held a Hearing in the premises of the International Arbitration Center. The Hearing was attended by Dr. Hamdy Abdul-Rahman, as Umpire, Mr. Mohammad Arsheed Aldeiri, as Arbitrator appointed by the Claimants, and the Legal Consultant Abdul- Nasir Mohammad Abdul-Hameed Khattab, as Arbitrator appointed for the Respondents. The Hearing was also attended by the agents of the Claimants as per Powers of Attorney, which were requested by the Panel and recorded in the Minutes of the Hearing. No one attended for the Respondents although they were soundly notified of the time for the Hearing. The Arbitration Panel decided to adjourn the Hearing to 06.12.2014G for submission of copies of relevant documents, the originals of which were reviewed by the Panel, and for providing a detailed statement of the Powers of Attorney and to match the them with the Minutes of the Hearing .

33. On 16.11.2014G, the Claimants and the Respondents were notified of the Hearing to be held at 1:00 pm on 06.12.2014G.

34. On 06.12.2014G, the Arbitration Panel held a Hearing in the premises of the International Arbitration Center. The Hearing was attended by Dr. Hamdy Abdul-Rahman, the Umpire, Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants and the Legal Consultant, Abdul- Nasir Mohammad Abdul-Hameed Khattab, the Arbitrator appointed for Respondents. The Hearing was also attended by the agents of the Claimants as per Powers of Attorneys that were reviewed by the Panel and the Panel made sure of the capacity of the attendants and the capacity of the heirs. No one attended for the Respondents although they were duly and legally notified of the time set for the Hearing. At this Hearing, the Arbitration Panel decided to adjourn the Hearing to 21.02.2015G for submission of relevant documents and memoranda and for the verbal argument. The Panel decided to notify the Respondents of such Hearing. The Panel indicated that there were two warnings addressed to the International Arbitration Center and to the members of Arbitration Panel from the Respondents and the attendants were notified of their content.

35. On 07.12.2014G, the International Arbitration Center notified the Respondents of the minutes of the Hearing of 06.12.2014G and of the time set for the following Hearing which would to be held on 21.02.2015G.

36. On 21.02.2015G, the Arbitration Panel held a Hearing in the premises of the International

12

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+2011) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

جمهورية مصر العربية

مركز التحكيم الدولي

ID: 353570 - Tax Card:697/328/200
ISO 9001-2015 Certification No.
17.2.501- QM rectification date 23 Dec 2019

إجـى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس ٢٠٢) ٢٢ ٦٩ ٢٥ ١٦ + ) - محمول ٢٠١١) ٠٦٧١ ٥٨ ٦٨ + )
بريد الكتروني: egymark@egymark.org
صفحة الكترونية: www.egymark.org



**16 MAY 2018**

Arbitration Center. The Hearing was attended by the Claimants and the Arbitration Panel while the Respondents failed to attend although they were duly notified of the time set for such Hearing. The Arbitration Panel decided to adjourn the Hearing to 28.03.2015G for argument, comments and briefs for whoever wishes, and decided to notify the Respondents of the adjournment decision and of the documents and briefs submitted in the Hearing of that day.

37. On 22.02.2015G, the International Arbitration Center notified the Respondents of the transcript of the Hearing of 21.02.2015G and of the time of the Hearing to be held on 28.03.2015G.

38. On 08.03.2015G, the International Arbitration Center notified the Respondents of reports prepared by experts in respect of a similar dispute over a plot of land, adjacent to the plot of land, subject matter of this dispute, owned by the Claimants, regarding the estimation of the rental value and the price due for the square meter in the land, subject matter of this dispute, and asked them to answer such reports, taking into account that such reports were prepared by valuer experts upon the request of the Claimants.

39. On 28.03.2015G, the Arbitration Panel held a Hearing. The Hearing was attended by Dr. Hamdy Abdul-Rahman, the Umpire, and the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, the Arbitrator appointed for the Respondents while Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants, failed to attend due to some critical health conditions following which he was admitted to a hospital. The Agents of the Claimants attended the Hearing while the Respondents failed to attend although they were duly notified of the time set for the Hearing. The Arbitration Panel decided, in this Hearing, to adjourn to a Hearing on 06.04.2015G due to the illness of Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants.

40. On 29.03.2015G, the International Arbitration Center notified the Respondents of the transcript of the Hearing of 28.03.2015G and the adjournment of the Hearing to 06.04.2015G.

41. On 06.04.2015G, the Arbitration Panel held a Hearing. The hearing was attended by its three (3) members and the Claimants while the Respondents failed to attend although they were duly notified of the transcript of the Hearing held on 28.03.2015G and of the adjournment decision to the Hearing of today, 06.04.2015G. At that Hearing, the Arbitration Panel decided to apply the Saudi Arbitration Law (as there was no agreement between the Parties of the dispute as to the applicable law to be adopted on the subject matter of the dispute, on basis that the Saudi Law is the most relevant law to the dispute) and would be complementary to the Rules of the International Arbitration Center applicable to the proceedings of the dispute, and the Panel decided to retain the Case for an award at the Hearing of 11.05.2015G.

42. On 06.05.2015G, the Legal Consultant, Abdul-Nasir Abdul-Hameed Khattab, the Arbitrator appointed for the Respondents, sent a letter to the International Arbitration Center apologizing for being unable to continue in the Arbitration Case as he was engaged in finalizing the formalities of the family of late Legal Consultant, Enani Abdulaziz, Chairman of the Administrative Prosecution Board, in addition to the burdens of his position that make it impossible for him to perform his duties as Arbitrator in the existing Arbitration.

13

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 76 , Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش - شيراتون هليوبوليس
تليفاكس : ٠١١٦ ٢٥ ٦٩ ٢٢ (+٢٠٢) , محمول : (+٢٠١٠٠) ٥٨٦٨ ٠٦٧١
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



43. On 07.05.2015G, the Legal Consultant Abdul-Nasir Mohammad Abdul-Hameed Khattab, served a warning notice, through a summon server, to the International Arbitration Center, that was delivered on 12.05.2015G, notifying the Center of his withdrawal from carrying out his duties as Arbitrator for Chevron Company and its entities, and <u>declaring that he did not conduct any deliberations nor make any agreement on the form of the award to be given in such dispute</u>, particularly since Mr. Mohammad Arsheed Aldeiri lives outside Egypt because he is Jordanian Nationality.

44. On 11.05.2015G, the Arbitration Panel held a Hearing for giving the award, in the presence of Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, and Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants while the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, the Arbitrator appointed for the Respondents did not attend the Hearing. The Panel reviewed the letter of apology by Mr. Abdul-Nasir Mohammad Abdul-Hameed Khattab apologizing for being unable to continue as Arbitrator in the existing Arbitration, which letter was received by the International Arbitration Center on 06.05.2015G. The Hearing remained held until 1:30 p.m. waiting for the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, who did not appear although he was informed of the time of such Hearing. Thereupon, the Arbitration Panel decided to postpone the award to the Hearing of 18.05.2015G. at 1:00 p.m.

45. On 18.05.2015G, the International Arbitration Center notified Dr. Hamdy Abdul-Rahman Ahmed and Mr. Mohammad Arsheed Aldeiri of the notice received from the Third Arbitrator, the Legal Consultant, Abdul-Nasir Khattab, confirming his withdrawal from the existing arbitration and <u>confirming that he did not deliberate on this arbitration and did not make any agreement as to the form of the award to be given</u>, and the Center stated that it appointed, instead of him, a new arbitrator, namely: Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr, for the Respondents . He is a Law Professor and Head of the Private International Law Section at the Faculty of Law, Ain Shams University, and an Attorney at the Courts of Cassation. Dr. Al-Nimr received the notice of his appointment as a replacement Arbitrator on 14.05.2015G. On 18.05.2015G, he notified the International Arbitration Center of his acceptance of the assignment and declared that he is neutral and independent.

46. On 18.05.2015G, Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, Mr. Mohammad Arsheed Aldeiri, the Arbitrator representing the Claimants and Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr, the Arbitrator for the Respondents, convened in the premises of the Arbitration Center. A meeting was held in the Hall of Deliberations at the premises of the International Arbitration Center. On that date, a Hearing transcript was drafted in which the attendance of Dr. Hamdy Abdul-Rahman, the Umpire, and Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants was recorded. The transcript of that Hearing was signed by each of them, in addition to Dr. Abu Al- Ela Ali Abu Al-Ela Al-Nimr, the Arbitrator appointed for the Respondents as he attended the Hearing with the approval of the Umpire, Dr. Hamdy Abdul-Rahman after submitting the letter of his appointment as Arbitrator for the Respondents and a declaration of his neutrality and independence. The Umpire agreed to have Dr. Abu Al-Ela Al-Nimr as Member of the Arbitration Panel, received from him the above mentioned documents. Such documents were recorded in the transcript of the Hearing. The hearing lasted for one (1) hour and ten minutes.

14

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20109) 0671
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ (٢٠٢+)   محمول : ٨٥ ٦٧١ (٢٠١٠+)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org

جمهورية مصر العربية
مركز التحكيم الدولى

ID: 353570 - Tax Card:607/328/209
ISO 9001-2015 Certification No
17.2.301- QM rectification date 24 Dec 2020



1 6 MAY 2018

[Stamp: EGY MARK — Name of the certified office — for certified translation — Certification # 12001]

The Panel discussed the issue of joining Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr in the Arbitration Panel in replacement of the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, who withdrew from considering the existing Arbitration. Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants, accepted the appointment of such replacement Arbitrator whereas Dr. Hamdy Abdul-Rahman Ahmed, the Umpire (after a period of deliberations for more than one (1) hour and ten minutes) objected to this appointment. The Arbitrator appointed by the Claimants asked the Umpire not to issue the award because a new member had joined the Panel, and such member should hear the argument, and asked him to open the door for argument in a subsequent Hearing in order for the new member to hear the argument in the Case in accordance with the established litigation procedures whether before arbitration panels or judicial bodies, as it is legally established that the person who has heard the argument would issue the award. However, the Umpire refused such request and insisted that he would issue the award. In that regard, he relied, as established in the transcript of the Hearing of 18.05.2015G, on the notice submitted by the International Arbitration Center as being sent by the Legal Consultant, Abdul- Nasir Mohammad Abdul-Hameed Khattab, which notice was unclear and that he had the right to solely issue the award in accordance with the Arbitration Agreement provided for under Article 31 of the Agreement concluded in 1933G. He also held on the fact that he had already prepared the award and the reasoning thereof in four (4) pages only, to which the Arbitrator appointed by the Claimants reviewed. At the end of the meeting, the Umpire declared that he had fulfilled his assignment and left the premises of the International Arbitration Center without legally delivering the Award to the management of the International Arbitration Center, as he did not draft a legal filing transcript for the delivery of the award.

47. On 18.05.2015G, a transcript had been drafted for the Hearing  attended by Mr. Mohammad Arsheed Aldeiri, the Arbitrator appointed by the Claimants, and Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr, the Arbitrator appointed for the Respondents in order to consider taking the necessary legal procedures so as to proceed with considering the existing Arbitration in the light of the withdrawal of the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab from considering this Arbitration and based on the refusal by Dr. Hamdy Abdul-Rahman Ahmed, the Umpire, to re-open the door for the argument due to the appointment of a new arbitrator, and also to consider selecting an Umpire instead of Dr. Hamdy Abdul Rahman Ahmed. The two arbitrators attending at this meeting decided to select Mr. Mohammad Al-Shahaat Al-Sayed Hasanain, Attorney at the Courts of Cassation, as Umpire, and instructing the International Arbitration Center to notify him of such selection, and to set the time for a Hearing  to be held on 19.05.2015G, at 2:00 p.m. as a Procedural Hearing  in order to complete the formation of the Arbitration Panel.

48. On 18.05.2015G, Mr. Mohammad Al-Shahaat Al-Sayed Hasanain, Attorney at the Courts of Cassation, was notified of the decision of appointing him as Umpire in the existing Arbitration.

49. On 19.05.2015G, Mr. Mohammad Al-Shahaat Al-Sayed Hasanain accepted the selection decision as Umpire, and declared that he is neutral and independent from the two sides of the dispute.

50. On 19.05.2015G, the Arbitration Panel held a Procedural Hearing attended by Mr.

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (+202 00) 067 1 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card: 697/328/266
ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2016

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٦٩ ٢٥ ١٦ ٢٢ (+٢٠٢) محمول : ٥٨ ٦٨ ٠٦٧ ١ (+٢٠١٠٠)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



Mohammad Al-Shahaat Al-Sayed Hasanain, the Umpire, Mr. Mohammad Rasheed Abdeen, the Arbitrator appointed by the Claimants, and Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr, the Arbitrator appointed for the Respondents . At such Hearing, the Arbitration Panel decided reopening the door for argument at a Hearing to be held on 27.05.2015G, and instructing the International Arbitration Center to notify the two (2) Parties of the Arbitration in order to attend such Hearing and express their respective written and oral defenses.

51. On 19.05.2015G, the International Arbitration Center notified the Respondents of the decision to open the door for argument at a Hearing to be held on 27.05.2015G, and of the new formation of the Arbitration Panel.

## Third:  Arbitration Agreement

The Arbitration Agreement was set forth in Article 31 of the First Petroleum Agreement dated 29th July 1938G.  This Article stipulated:

> *"In case any doubt, controversy or difference arise between the Government and the Company, as to the execution of this Agreement or the interpretation or implementation of any provision thereof, or in relation thereto, or in connection with the rights or responsibilities of either Party, and the two Parties fail to agree on a settlement by another means, the Case shall be referred to two (2) arbitrators, one to be selected by each Party, and one Umpire shall be selected jointly by the two arbitrators, before proceeding with the arbitration. Each Party shall appoint its Arbitrator within a period of thirty (30) days as of the date of being so requested in writing by the other Party. If the two (2) arbitrators fail to agree on appointing the Umpire, then the Government and the Company shall jointly appoint such umpire. If the Government and the Company fail to agree on the umpire, then they shall ask the President of the Permanent International Court of Justice to appoint the umpire. The award to be given by the two (2) Arbitrators in the Case shall be conclusive. However, in case they fail to agree on an award, then the award to be given by the Umpire in the Case shall be final. As for the venue of arbitration, the two (2) Parties shall agree on such place. If they fail to so agree, then Arbitration shall be conducted in La Hague (Netherlands)".*





*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيچي مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ ( ٢٠٢ + )  محمول : ٥٨ ٦٨ ٠٦٧١ ( ٢٠١٠+)
بريد الكتروني : egymark@egymark.org
صفحة الكترونية : www.egymark.org





## Fourth:  Adverse Party's Briefs, Defense & Documents

The Arbitration Panel presents a statement of the briefs and  Documents Submitted by the Claimants

**Fourth/First: Briefs, Documents, Defenses and Claims of the Claimants:**

16 MAY 2018

### 1. Claimants' Briefs and Defenses

The Claimants submitted a Statement of their Arbitration citation and a a closing brief of their defense. In such documents, they stated the facts of the existing dispute and the phases it had passed through since the time of concluding the Concession Agreement between the Government of Saudi Arabia and Standard Oil of California Company and the possession of the heirs of the owners of the land subject matter of the dispute by virtue of a grant from His Majesty the King which title is evidenced by Deed No. 124, Volume 2 of 1368H.  They referred as well to the Lease Contract included in subject Deed between the Principals of the Claimants and the Respondents. The area of the leased land amounted to (39,885,000) square meter (Thirty Nine Million Eight Hundred Eighty-Five Thousand Square Meters. The Principals of the Claimants stated that the Lease Contract expired in 2005G by the end of the above mentioned Concession Agreement, and that the Respondents have been refraining from handing over the land, the subject matter of this Arbitration, to the heirs of the owners of the land up till now. The Claimants initiated this Case - as stated in the in their Statement of the case and the closing argument brief - based on a number of legal and judicial grounds, represented in: 1- The Arbitration Panel is competent body to review the dispute under the Ownership Contract of Al-Solaiman & Co. The Lease Contract concluded between the Principals of the Claimants and the Respondents referred to the Concession Agreement concluded between the Saudi Government and the Arab American Oil Company on 29th July1933G that provided in Article (31) thereof for an Arbitration Clause. Accordingly, such reference is to be deemed an arbitration agreement and the defense of the Claimants relied on the provisions of the Saudi Arbitration Law No. 34, dated 24.05.1433H, and in particular Article (9) thereof, as well as the Egyptian Arbitration Law No. 27 of 1994G, in particular Article (10) thereof. They also relied, in this regard, on court judgments issued in Egypt and some other Arab countries as to arbitration by referral. Moreover, they relied on opinions of Arab and Western Jurisprudence in that regard. 2- Extending the Arbitration Clause from the Concession Agreement to the Lease Contract because they form one contractual set and the existence of an Arbitration Clause in one of them should extend to the other one. The Claimants relied in that regard on court judgments issued by the French judiciary and published in the Arbitration Magazine published in the French language, in particular what was published in such Magazine in 1984G, page 363, and in 1989G, page 691. 3- The Respondents have no right to refrain from attending the Arbitration Hearings on the justification that there is no Arbitration, and the Claimants based their defense, in this regard, on the rule which says "Competence by Competence", which grants the Arbitration Panel the competence or the defenses relating to whether or not there is an agreement on arbitration. They based their defense, in that respect, on the provision of Article (22) of the Egyptian Arbitration Law No. 27 of 1994G and the provision of Article 20 of the Saudi Arbitration Law No. 34, dated 24.05.1433H. In that regard, they held on the Egyptian jurisprudence opinions and some other judgments issued by the Egyptian

17



*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 18  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353870 - Tax Card:697/328/206
ISO 9001-2015 Certification No
17.2.501- QM recitification date 24 Dec 2018

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢٦٩٢٥١٨ ( ٢٠٢ + )  محمول : ٠٦٧١٥٨٦٨ ( ٢٠١٠٠ + )
بريد الكتروني : egymark@egymark.org
صفحة الكترونية : www.egymark.org



Court of Cassation. In their Statement of Claim and the Closing Defense Brief, the Claimants explained the characterization of the Contract concluded between the Claimants and the Respondents. They stated that the Contract is the support of the claim out of the set of contracts and that the Deed (the Registered Contract) certified at the Public Notary Office (the notarization body of the Kingdom of Saudi Arabia) No. 124, included two Contracts, namely: the Title Contract of the Principals of the Claimants for the plot of land which area amounts to Four Thousand Four Hundred Ninety-Five and One-Half Hectare (Hec. 4,495), and the Lease Contract concluded between the Principals of the Claimants and the Respondents , in connection with the area of said land, as stipulated in the Deed No. 124, Volume 2 for the Year 1368H. The defense of the Claimants mentioned the provisions relating to such two Contracts in the said Deed, and referred to several pieces of evidence proving the existence of a lease relationship between the Principals of the Claimants and the Respondents. The Arbitration Panel shall provide the documents that contain such pieces of evidence when presenting the documents submitted by the Claimants. The defense of the Claimants insisted on the expiry of the Lease Contract concluded between their Principals and the Respondents  due to the expiry of the Concession Agreement in ar 2005G after the lapse of the sixty (60)-year period agreed upon under the Concession Agreement made on 29th July1933G. They also presented the provisions included in the Deed (the Registered Contract) No. 124. Volume 2, of 1368H, in respect of the provisions of the above mentioned Lease Contract.

The defense of the Claimants claimed their right in compensation for the damages they incurred due to the non-handing over of the land, subject matter of this dispute, to them after the expiry of the term of the Lease Contract. In that respect, they relied on opinions of Egyptian jurisprudence scholars, provisions of the Egyptian Civil Code and some judgments issued in that regard by the Board of Grievances in the Kingdom of Saudi Arabia.

## 2. Documents of the Claimants

The Claimants filed several documents supporting their Claim, which documents shall be addressed by the Arbitration Panel as a whole as their originals of such documents are kept in the Case File. These documents are as follows:

- The First Petroleum Agreement signed between the Saudi Government and Standard Oil of California Company dated 29th July1933G.
- The Title Contract of the plot of land – subject matter of the dispute - that proves the ownership of the Principals of the Claimants.  It is the Deed (Registered Contract) No. 124, Volume 2 of 1368H.
- A letter dated 04.05.1388H issued by the Arab American Oil Company in which it explicitly declare that the land, subject of the Deed No. 124, Volume 2 of 1368H, had been leased from their owners Khalid Abu Al-Waleed and late Hamad and Abdullah Al-Solaiman, throughout the term of the Concession Agreement.
- A letter dated 26.05.1388H issued by the Arab American Oil Company that includes an acknowledgement of leasing the land, subject of the Deed, (Contract) No. 124, the subject matter of the dispute.
- A letter dated 05.02.1389H issued by the Arab American Oil Company to the heirs of Al-Solaiman, that includes an acknowledgement of leasing the land, subject matter of the Deed No.124., that is the subject matter of the dispute.
- A letter dated 05.03.1389H issued by the Arab American Oil Company, that includes an acknowledgement of leasing the land, subject matter of the Deed No.124., that is the subject

18

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس: ٢٢ ٦٩ ٢٥ ١٦ (٢٠٢+)  محمول: ٠٦٧١٥٨٦٨ (٢٠١٠٠)
بريد الكترونى: egymark@egymark.org
صفحة الكترونية: www.egymark.org





matter of the dispute.

- A letter dated 03.11.139. H issued by the Arab American Oil Company and address of the heirs of Al-Solaiman, the Claimants, declaring that it is leasing the land, the subject matter of dispute, which is owned by those heirs.
- A letter dated 23rd Ramadan 1407 H sent by the Company, the Respondents, to the Heirs of the Claimants, declaring that it is leasing the land owned by the Heirs, subject of the Deed No. 124, Volume 2 of 1368H, the land subject matter of the dispute.
- The transcript of the Trespasses Removal Committee that reports to the Eastern Province Administration in the Ministry of Interior, dated 15.05.1414H in which such Committee stated that the land, the subject matter of dispute, is owned by the Heirs of Al-Solaiman, and is leased to Aramco Company. This transcript is signed by a representative of Al-Solaiman Heirs and a representative of Aramco Company.
- A letter dated 13.04.1417H issued by the Governor of the Eastern Province that is addressed from the Crown Prince, Deputy Premier, stating the ownership of the land, the subject matter of dispute, by the Al- Solaiman family and that such land is leased to Aramco Company.
- An undated letter, sent from Aramco Company to Sheikh/ Abdulaziz Abdullah Al- Solaiman, one of the Heirs of Abdullah Al-Solaiman, the Principal of the Claimants, in which it declares that it is leasing the plot of land owned by the Heirs of Al-Solaiman. In this letter, Aramco Company stated the following: *"Aramco Company showed no tolerance in defending its right as Lessee and your right as Lessors"*.
- An undated letter, addressed by Aramco Company to the Principal of the Claimants, stating its approval to lease the land, the subject matter of the dispute, from its Owners, the Heirs of the Claimants.
- An undated letter issued from Aramco Company to the Heirs of Abdullah Al- Solaiman, declaring that the land, the subject matter of dispute, is leased to the company by its Owners, Principals of the Claimants, namely: Late/ Abdullah Al-Solaiman, late/ Hamad Al-Solaiman and late/ Khalid Abu Al- Waleed.

Moreover, the Claimants submitted a number of documents showing that their Principals owned the land, subject matter of dispute, these are:

- On 05.07.1376H, a judgment was passed in the Case No. 497 dated 05.07.1376H, deciding that: *"The land, subject matter of the Deed No. 124 dated 23.09.1368 is owned by Bin Solaiman & Partners and it is leased to Aramco Co. "*.
- A letter dated 24th Safar 1407H sent from Aramco Company to the Heirs of the Claimants, declaring thereby that the Claimants are the owners of the land, the subject matter of dispute, as per Deed No. 124, dated 20th Ramadan 1368H.
- The final Judgment No. 171/200/20, issued on 18.07.1407H establishing that the land, subject matter of dispute, is a pure ownership of Heirs of Abdullah Al-Solaiman, in the Estate Division Case, filed by the Heirs of Hamad Al-Solaiman.
- The order issued from His Royal Highness, late/ Prince Naif Bin Abdulaziz Al Saud, the Crown Prince, Minister of Interior, and Deputy Premier of the Kingdom of Saudi Arabia, as per Cable No. 32346, dated 22.03.1433H, circulated to three Governmental Departments, to instruct Aramco Company to pay the delayed rental payment since the expiry of the Concession Agreement, and to handover the land to the Heirs of the Claimants or to compensate them.
- The Claimants also submitted several documents supporting the value of compensation they claim for failure to hand them over the land they own, the subject matter of dispute. These

19

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 76 Mobile: (+2 0100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Fax Card:697/328/200
ISO 9001-2015 Certification No.
17.2.804- QM registration date 23 Dec 2016

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢ ٦٩ ٢٥ ٧٦ ( ٢٠٢ + )   محمول : ٥٨ ٦٨ ٦٧١ ٠١٠٠ ( ٢ + )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



documents are as follows:

- A scientific study, prepared by Saudi banks, estimating the growth of the land value in the Kingdom of Saudi Arabia at a rate ranging between 7% and 9% annually, in the last ten (10) years. The documents are prepared in the English language.
- A letter for agricultural land expropriation representing a case similar to the Case of the land owned by the Claimants.
- A letter dated 22.03.1433H sent from the Minister of Petroleum to His Majesty the King of the Kingdom of Saudi Arabia, admitting the ownership of the land, the subject matter of dispute, by Al-Solaiman family **and stating compensating them for the non recovery of the land would cost the State Billions of Riyals.**
- A set of letters of various dates, sent from the Claimants to Aramco Company and **to several concerned authorities in the Kingdom claiming the rental value** of the land, subject matter of the existing dispute, and requesting compensation for non-recovery of the land, as Owners thereof, these are:
  - A letter to His Excellency the Minister of Petroleum, dated 07.02.1428H.
  - A letter to His Royal Highness Prince Naif Bin Abdulaziz, Minister of Interior, Deputy Premier and Second Deputy of the Custodian of the Two Holy Mosques of the Kingdom of Saudi Arabia dated 07.04.2011G.
  - A letter sent to His Royal Highness Prince Naif Bin Abdulaziz, Minister of Interior, Deputy Premier and Second Deputy of the Custodian of the Two Holy Mosques of the Kingdom of Saudi Arabia dated 08.01.2012G.
  - A letter sent to His Royal Highness Prince Naif Bin Abdulaziz, Minister of Interior, Deputy Premier and Second Deputy of the Custodian of the Two Holy Mosques of the Kingdom of Saudi Arabia, dated 26.04.2012G.
- Reports prepared by real estate experts in the Kingdom of Saudi Arabia, submitted by the Claimants to the International Arbitration Center on 07.03.2015G. True copies of such reports were delivered to the selected domicile of the Claimants in Cairo, and the Respondents were notified of such reports on 11.03.2015G by express mail (DHL), **in connection with the evaluation of the rental value (per square meter) of the land, subject matter of this dispute.** Such reports were submitted in a file of documents to the Arbitration Panel in its Hearing held on 28.03.2015G.
- Reports prepared by real estate experts in the Kingdom of Saudi Arabia submitted by the Claimants to the International Arbitration Center on 07.05.2105G. Such reports were delivered to the selected domicile of the Respondents in Cairo, and they were notified thereof on 11.03.2015G by express mail company (DHL), with regard to **the evaluation of the price per square meter of the land, subject matter of dispute.** Such reports were submitted in a documents file to the Arbitration Panel at the Hearing of 28.03.2015G.
- A plan of the location showing the boundaries of the plots of land, subject matter of dispute.
- A "*Fatwa*" (*Shari'ah* opinion) issued by "*Dar Al-Ifta*" (House of Legal Opinions), in the Arab Republic of Egypt, addressing the Lease Relationship under Islamic *Shari'ah*, dated 02.06.1998G submitted to the International Arbitration Center on 19.03.2015G. Such document was delivered to the Respondents at their selected domicile in Cairo, and they were notified accordingly on 21.03.2015G, by express mail (DHL).
- Elements of the Lease Contract of the land, subject matter of dispute and a receipt of

**EgyMark**
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 067 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢٦٩٢٥١٦ ( +٢٠٢ )   محمول : ٠٦٧١ ٥٨ ٦٨ ( +٢٠١٠ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



rental value payment covering the period during which the land was leased to the Co. by the Principal of the Claimants.

- Details of the Seaport of Ras Tanourah which is located inside the land, subject matter of dispute.
- Volume of the Saudi oil out of the total volume of international oil.

## 3.  Claims of the Claimants

The closing claims of the Claimants, as stated in their closing Defense Brief, are as follows:

**First:**
Binding the company, the Respondents, jointly with their successors to pay a sum of SR. 35,896,500,000 (Thirty-Five Billion Eight Hundred Ninety-Six Million Five Hundred Thousand Saudi Riyals) as compensation for the value of the land, the subject matter of dispute, which area amounts to 39,885,000 m² (Thirty-Nine Million Eight Hundred Eighty-Five Thousand Square Meters) for the impossibility of handing over the land to the Claimants.

**Second:**
Binding the Respondents  jointly with their successors to pay a sum of SR. 3,589,650,000 (Three Billion Five Hundred Eighty-Nine Million and Six Hundred-Fifty Thousand Saudi Riyals) per annum as compensation against the rental value of the right of use (usufruct) since the 2005G, being the date of expiry of the Contract until the complete execution. Accordingly, **the total value of ten (10) years** would be SR. 35,896,500,000 (Thirty-Five Billion Eight Hundred Ninety-Six Million Five Hundred Thousand Saudi Riyals)

**Third:**
Binding the Respondents jointly with their successors to pay a sum of SR. 3,589,650,000 (Three Billion Five Hundred Eighty-Nine Million Six Hundred-Fifty Thousand Saudi Riyals) per annum. Accordingly, **the total value for ten (10) years** would be SR. 35,896,500,000 (Thirty-Five Billion Eight Hundred Ninety-Six Million Five Hundred Thousand Saudi Riyals)  as compensation against the usufruct of a part of the land totaling 3,200,000 m² (Three Million Two Hundred Thousand Square Meters) representing the area of Ras Tanourah Seaport. This is the part which was for sure exploited of the land since the Year 1949G, the date of the Lease Contract until the complete execution since the Lease Contract did not provide for granting the Respondents the power to exploit the land.

**Fourth:**
Binding the Respondents jointly with their successors to pay a sum of SR 1000,000,000 (One Billion Saudi Riyals) as compensation against the physical and moral damages incurred.

**Fifth:**
The invalidity of any action carried out based on the fact of the Company's existence on the land since the date of the Lease Contract until the complete execution.

**Sixth:**
The enforcement of the award, with all its elements, against the successors of the Respondents .

**Seventh:**
Binding the Company - the Respondents - to pay all arbitration and legal fees.

ID: 353570 - Tax Card:697/328/200
ISO 9001-2015 Certification No
17.2.501-QM rectification date 24 Dec 2020

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (+201000 007 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢ ٦٩ ٢٥ ١٦ (٢٠٢+)  محمول : ٥٨ ٦٨ ٠٦٧١ (٢٠١٠+)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org





**Fourth/Second – Briefs, Documents, Defense and Claims of the Respondents**

### 1- Briefs, Defense and Documents of the Respondents

The Respondents failed to appear in any of the Arbitration Hearings although they were notified of all the Hearings, the transcripts thereof and the defense briefs and documents submitted thereat. However, they submitted Defense Brief and failed to submit any other documents supporting their defense. Such briefs are as follows:

- On 05.07.2014G, Al-Ebrashi & Co. Law Firm submitted a defense brief for the Respondents. Under such brief, it objected to the admissibility of the claims and the competence of the Arbitration Panel that would be selected in accordance with the appointment notice issued on 05.07.2014G. Said Office relied, in such defense, on the fact that the notices sent to the Respondents did not specify who are the Claimants in such Arbitration, and objected also to the fact that the Claimants used the letterhead of the International Arbitration Center in their correspondence. It requested the said Center to confirm that it is neutral, independent and is not favoring either Party of the dispute. The Respondents' defiance also confirmed in its brief that the notices it received did not specify the alleged contractual rights and failed to produce any supporting evidence. The Respondents' defense added that no contact information was provided with regard to the Claimants or their legal advisors and also the Claimants did not send Chevron Entities any request for arbitration giving the causes therefore. The Respondents' defense further indicated that the Claimants did not provide, with the notices, neither the Concession Agreement of 03.05.1933G nor the alleged Lease Contract. The Respondents' defense objected as well to involving Chevron Entities in any arbitration agreement with those Claimants, and added that no agreement was reached as to the place or language of arbitration, or the rules to be applied. The Respondents' defense stated that Chevron Entities were never, at any time, a party in any disputes.
  The defense of the Respondents added, in item No. 9 of the above mentioned brief, under the title "Appointment of an Arbitrator".. that Chevron Entities, as a precautionary measure, nominates Prof. Mohammad Abdul- Wahab as Arbitrator, and stated his address, electronic mail and phone numbers.
  Such brief was signed by a person called "Mohammad Madkoor".
- On 21.08.2014G, Zulfaqqar & Co. Legal Consultants and Advocates sent a letter to the International Arbitration Center, signed by Dr. Mohammad Salah El-Deen Abdul-Wahab, the Arbitrator appointed for the Respondents, "Chevron Entities", and agreed to be appointed as Arbitrator for the Respondents and asked the International Arbitration Center to provide some clarifications. These are:
  - Clarifying the procedural rules and the subjective law applicable to the dispute.
  - Sending the Arbitration Notice and the attachments thereof, in addition to any answer submitted by the Respondents, stating the language and place of arbitration and clarifying whether Dr. Ahmad Sadiq Al- Qushairy agreed to be appointed as arbitrator for the Claimants.
  - On 31st August 2014, Zulfaqqar & Co. Legal Consultants and Advocates sent a letter to the International Arbitration Center, signed by Dr. Mohammad Salah Eldeen Abdul- Wahab, the Arbitrator appointed for the Respondents , stating that he was in the process

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 76  Mobile: (+2 0100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢٦٩٢٥٧٦ ( ٢٠٢ + )  محمول : ٠٦٧١٥٨٦٨ ( ٠١٠ +)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



of reviewing the notice sent to him by the International Arbitration Center, and that he would notify this Center of the appointment of the Umpire in due course, after coordination with Dr. Ahmad Sadiq Al-Qushairy, the Arbitrator appointed by the Claimants.

The defense of the Respondents did not provide any documents.

### 2. Claims by the Respondents

The briefs of the above mentioned Respondents contained a formal claim, namely: insisting that Chevron Entities are not a party in any arbitration agreement or in the contract brought before the Arbitration Panel, and that the International Arbitration Center has no competence to consider this dispute.

## Fifth:  The Arbitration Panel

After reviewing the briefs and documents contained in the Case File, Hearing the verbal arguments and legally conducted deliberations, the Arbitration Panel hereby gives the following Award:

With regard the form of the existing Arbitration Case, the Arbitration Panel shall address the scope of effectiveness of the Arbitration Clause, provided for under Article 31 of the Concession Agreement concluded between the Saudi Government and the Saudi Arabian Oil Company (Standard Oil of California), in term of the persons and the subject, and shall decide thereof.

The Arbitration Panel shall also address the Parties to the Arbitration Case brought before it in order to specify them.

The Arbitration Panel shall address the law applicable to the procedures and subject of this Arbitration Case, the language of arbitration and the place of convening the Arbitration Panel in order to decide on the same before deciding on the subject of the Case.

As for the enforcement of the above mentioned Arbitration Clause on Parties of Arbitration, the Arbitration Panel hereby paves the way for its judges to present the approach of judicial bodies in that regard.

It is established under judicial judgments and arbitration awards that <u>the Arbitration Clause extends to each person participating in the execution of the contract providing for such Clause and has not physically signed it</u>. The participation by a person in the execution of the Lease Contract is deemed full acceptance by such person and consent by him/it to the Arbitration Clause provided for therein (Judgment by the Court of the International Chamber of Commerce, issued on 23rd September 1982G, published in the Arbitration Magazine, issued in the French language in the year 1984G – Page 137). (Judgment by the Court of Appeal, Paris, issued on 21st October 1983G published in the Arbitration Magazine, issued in the French language – 1984, Page 98). (The Judgment issued in the Arbitration Case No. 109 of 1988, issued by Cairo Regional Office for International Commercial Arbitration, at the Hearing of 11.03.1999G. Arab Arbitration Magazine, 1999, Issue 2 – Page 224) (Egyptian Court of Cassation – the two challenges No. 4729 of 72G and 4730 of 1972G, respectively, the Hearing of 22.06.2004G, Section 55, Page 638) (Legal Principles of the Court of Cassation in the Commercial Arbitration, Judges Club, Issue of the year 2014G, Page 58).

The Jurisprudence supports such judiciary as it states <u>that sharing in the execution a</u>

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 75 16  Mobile: (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 451570 - Tax Card:607/328/700
ISO 9001-2015 Certification No
14,3,501- QM certification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢ ٦٩ ٧٥١٦ (٢٠٢+)  محمول : ٦٨ ٥٨ ٠٦٧١ (٢٠١٠+)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



contract containing an arbitration clause means that there is a real will of the Parties to such contract to accept the enforcement of said clause on whoever shares in the execution thereof, without physically signing it. At the same time, this means that there is no need to the of the person sharing in execution and his consent to be included in the arbitration clause and to accepts the same (Dr. Fathi Wali, Arbitration Between Theory and Application, Version of 2007 G., Page 100, "Dar Al-Ma'arif", Alexandria).

By applying the principle of extending the Arbitration Clause, provided for under the Contract, to any person sharing in the execution, to the facts of the existing dispute, it is evident, and established by the documents, that the Principals of the Claimants actually and really shared in the execution of the Concession Agreement, which contains the Arbitration Clause in its Article 31, as they assigned the use of the land, subject matter of the concession, to the Company that was granted the concession in order to enable the Company to execute its obligations under the Concession Agreement, as established under Item 25 of the Said Agreement, and under the Registered Contract (the Title Deed) No. 124, Volume 2 of 1368H, as without such assignment, the Company holding the Concession would have not been able to execute its obligations.

Such actual and real participation by the Principals of the Claimants in the execution of the Concession Agreement, which contains the Arbitration Clause, leads to extending such Clause to that Principal, and from him to his heirs, a matter that enforces the said Clause on the Claimants, and the Arbitration Panel hereby so decides, without stating the same in the text of its Award.

As for the enforcement of the Clause, provided for in Article 31 of the Concession Agreement, concluded on 29th July 1933G, between the Saudi Government and the Saudi Arabian Oil Company (Standard Oil of California), as being the Respondents , it is established under the Registered Contract (the Title Deed) No. 124, Volume 2 of 1368H, that the rights were conveyed in favor of the Company holding the Concession, namely: The Arab American Oil Company, and the said Deed provides under the title "Transfer in favor of the Arab American Oil Company", what stipulates:

"In consideration of the good compensation to be paid to us, we the undersigned, for our property under the Deed No. 154/8, for the plots of land set forth above, each of us, in his personal capacity and on behalf of his heirs, guardians and lawful representatives, hereby grant and transfers to the Arab American Oil Company, referred to in the Deed above, its successors and whomever it appoints, the right to use and occupy the plots of land mentioned above, for all the purposes of the Saudi Arabian Concession Agreement, dated 4th Safar 1352H that corresponds to 29th July 1933G, and any other agreements to be annexed thereto. We hereby further declare and state that the rights of the Company (the Arab American Company) to use and occupy the said plots of land arise pursuant to Article 25 of the said Concession Agreement …"

Pursuant to such provision, Standard Oil of California Company is itself the Arab American Oil Company (Aramco), i.e.: the Concession Agreement concluded between the Saudi Government and the Saudi Arabian Oil Company, and accordingly the Arbitration Clause, provided for in Article 31 of such Agreement, applies thereto, and also applies to its successors.

Therefore, and whereas it is evidenced on the official website of Chevron Company:

"Since the Arab American Oil Company has started its second century, it has become one of the leading companies in the United States of America, and it owns the Trademark "Chevron" which has become famous and reputable worldwide, and Chevron Company, by the year 1993, has become the first major western oil company",

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16   Mobile: (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card:697/328/200
ISO 9001-2015 Certification No
17.2.501- QM rectification unit: 34709-04178

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢ ٦٩ ٢٥ ١٦ ( + ٢٠٢ )   محمول : ٢٠١٠٠ ( + )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org

مركز التحكيم الدولى



This means that Chevron Company was established and affiliated several entities of which are, the Arab American Oil Company (Aramco), the Saudi Arabian Chevron Company and Chevron Company, as it is evidenced under the Deed No. 124, Volume 2 of 1368H, that the owners of the land, the subject matter of that Deed, granted the Arab American Oil Company or whatever succeeds it the right to use the land, the subject matter of the said Deed, and therefore Chevron Entities, being part of the said entities, are deemed to be a party to the Arbitration Clause provided for under Article 31 of the above mentioned Concession Agreement.

It is established under jurisprudence and judicial principles that the Arbitration Clause provided for in a contract concluded with a company extends to the other companies affiliated with such company, and is deemed one of its entities shared in the execution of such contract. (Dr. Mohammad Noor Shehatah, "Concept of Third Parties in Arbitration", Version of 2001 G., Page 130, the Arab Dar Al-Nahdah).

(Judgment of the French Court of Cassation passed on 27th March 2007G and published in the Commercial Law Seasonal Magazine 2007G, Page 677).

Chevron Entities explicitly admitted that they are a genuine party to the existing arbitration and they produced a power of attorney on 15th October 2014G, for which a deposit transcript was made under No. 1408/A, on 2nd February 2015G, at Shubra Notarization Office, in favor of a group of attorney at Al-Ebrashi & Co. Law Firm. The text of said power of attorney provided for the following:

> *"On Wednesday that corresponds to 15th October 2014G, we Chevron Corporation, a corporation established in accordance with the laws of the State of Delaware, United States of America (Principal), operating in the field of energy in the United States of America, with its head office located at 6001, Bolinga Canyon San Romano Road, CA, 94583 2324, United State of America, represented by Mr. Garry H. Andreas, in his capacity as Assistant Secretary, legally authorized to produce this power of attorney, hereby constitute and authorize Mr. Ashraf Hassan Zaki Al-Ebrashi, Mr. Mohammad Yasir Jadallah, Mr. Mohammad Ahmed Hani Madkoor, Mrs. Deemiah Ziyad Abdul-Fattah Haijer, Mrs. Deemah Tariq Mohammad Al-Janzouri and Mr. Hatim Hassan Tulbah Mohammed, with their office located at 4, Al-Sadd Al-A'ali Street, Al-Dokki, Guiza 12311, Egypt, jointly or severally, to represent the Principal and to attend, on its behalf, in the Arbitration Case filed by Al-Qarqani and others against Aramco, Chevron, Chevron Saudi Arabia and others ...."*.

The fact that Chevron Entities authorized lawyers to represent them and to attend on their behalf in the Arbitration Case filed by Al-Qarqani and others against Aramco, Chevron, Chevron Saudi Arabia and others, means two things:

**The First:** Chevron Entities explicitly admitted that they are a genuine party in the existing Arbitration because issuing the power of attorney in favor of attorneys to represent them and to attend on their behalf in this Arbitration Case only means that such entities declare and admit that they are a genuine party to the said Arbitration Case, because according to the well established principles in litigation in arbitration, it is impermissible to interfere with or include in arbitration, and attending in Arbitration Case is exclusively limited to the parties subject to the arbitration clause, and the term "Chevron Entities", as clarified previously by the Arbitration Panels, are Chevron of USA, Chevron Saudi Arabia and Aramco.

**The Second:** Such power of attorney assigns attorneys to attend in the said Arbitration Case and to plead for Chevron Entities, including Aramco, Chevron of USA, Chevron Saudi Arabia, as

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (+2) 0100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢ ٦٩ ٢٥ ١٦ ( ٢٠٢ + )   محمول : ٦٨ ٥٨ ٦٧١ ٠١٠٠ (٢+)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



1 6 MAY 2018

per the wording of the said power of attorney because such case is filed against them at the

This means that such entities have the genuine capacity as Respondents in this Arbitration Case.

Based on the above, Chevron Corporation, together with its entities ("Chevron Entities") have become a genuine party to the Arbitration Clause provided for under Article 31 of the Concession Agreement, signed on 29th July 1933G and such Clause applies to them and they should comply therewith. The Arbitration Panel hereby so decides, without stating that in the text of its award.

This judgment is considered an answer to the defense raised by Chevron Corporation, stated in its brief sent to the International Arbitration Center on 05.07.2014G, whereby it alleges that it is neither a party to any contract brought before the Arbitration Panel nor a party to the above mentioned Arbitration Clause.

The Arbitration Panel hereby rejects such defense, without the need to repeat this judgment in the text of its award.

As for determining the Claimants, it is established under the Title Deed No.124, Volume 2 of 1368H that His Excellency Sheikh/ Hamad Al-Solaiman Al-Hamdan assigned his share of the said land, stated under the said Deed, to his brother Sheikh/ Abdullah Al-Solaiman Al-Hamdan, as per the Deed issued at Makkah Public Notary Office under No. 865 KH, dated 08.07.1375H.

Accordingly, three-quarters (3/4) of the land, the subject matter of the Deed No. 124, Volume 2 of 1368H has become the ownership of Sheikh/ Abdullah Al-Solaiman Al-Hamdan, and the remaining one-quarter (1/4) has become the ownership of Khalid Abu Al-Waleed Al-Qarqani (Principals of the Claimants), and thus the Claimants have become the heirs of late Khalid Abu Al-Waleed Al-Qarqani and the heirs of late Abdullah Al-Solaiman Al-Hamdan.

The Claimants submitted a detailed statement, as heirs of late Sheikh/ Abdullah Al-Solaiman and late Khalid, and also submitted Shari'ah Deeds of Inheritance proving their right in the estate. They attended, in person and in their capacity, and submitted powers of attorney for their representatives to attend in this Arbitration. All Parties to the Arbitration are mentioned by name at the beginning of this Award, and also all their particulars are attached.

As for the competence of the International Arbitration Center to consider the existing dispute, the two Parties to the dispute agreed that it is so competent. The Respondents have appointed, as their Arbitrator, Dr. Mohammad Salah Abdul-Wahab who accepted such appointment. This fact is confirmed by the Respondents as his acceptance was received on the letterhead of the Law Office, namely: Zulfaqqar & Co. Consultants % Advocates, in its capacity as the attorney for the Respondents. This is not to be prejudiced by the objection expressed under the defense of the Respondents as per the brief sent to the International Arbitration Center on 05.07.2014G.

Furthermore, the appointment of Dr. Mohammad Salah Al-Deen Abdul-Wahab, as Arbitrator for the Respondents, his acceptance of such appointment and the request of documents from the International Arbitration Center, all that constitutes a waiver by such Parties of all such objections. All the above mentioned objections are related to alleging that the Respondents have never been a party to the Arbitration Clause or to any of the contracts brought before the Arbitration Panel. The Arbitration Panel previously refused all these defenses, and hereby refers to its previous views, without need to repeat that in the text of its award.

With regard to determining the law applicable to the procedures and to the subject of the dispute, it is established under all comparative laws that the issue depends on the agreement of the Parties. In case they fail to agree, the Arbitration Panel determines such applicable laws.

Paragraph 2 of Article 25 of the Saudi Arbitration Law, issued under the Royal Decree No. M/34, dated 24.05.1433H provides for the following: "If there is no agreement as to the arbitration procedures, then the Arbitration Panel shall select the arbitration procedures it deems appropriate".

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile  (+20 100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card:697/328/206
ISO 9001-2015 Certification No
17.2.501- QM rectification date 27/08/2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢٦٩٢٥١٦ ( ٢٠٢+ )  محمول : ٥٨٦٨ ( ٢٠١٠٠+ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



16 MAY 2018

Therefore, and as the two Parties failed to agree on such procedures, the Arbitration Panel selected the procedures provided for under the said Arbitration Law, supplemented by the regulations of the International Arbitration Center, as being the most appropriate procedures for passing an award on this dispute, taking into account that the Parties to the dispute are of the Saudi nationality and the land, the subject matter of the exiting dispute, is in the Kingdom of Saudi Arabia. Accordingly, the Arbitration Panel's decision in that regard came in compliance with the proper law as the Panel deemed such procedural rules appropriate for the case. Furthermore, Article 28 of the above mentioned Saudi Arbitration Law provides that in case the two parties fail to agree on the place of holding the arbitration, then the Arbitration Panel shall determine such place. The Arbitration Panel selected the city of Cairo, Arab Republic of Egypt, as the place for conducting the arbitration. In that regard also its decision came in compliance with the provision of law.

As for determining the language of Arbitration, Article 29 of the Saudi Arbitration Law provides that arbitration should be conducted in the Arabic language unless the Arbitration Panel decides, or the two relevant parties to the arbitration agree on, another language.

Therefore, the exiting arbitration was conducted in the Arabic language, and this is deemed in compliance with the general principle provided for under the above mentioned Article 29 which provides that the general principle is that the arbitration language is to be the Arabic language.

As for determining the law applicable to the subject matter of the exiting arbitration, the Arbitration Panel decided to apply the provisions of the Saudi laws because the two Parties failed to agree on such law, taking into account that such provisions are most relevant to the subject matter under dispute because the Claimants and the Respondents are of the Saudi nationality, and the place of dispute is in the Kingdom of Saudi Arabia, and it was so decided in application of Paragraph 3 of Article 38 of the Saudi Arbitration Law which provides for the following:

"If the two parties to the arbitration fail to agree on the supervisory rules applicable to the subject matter of dispute, then the Arbitration Panel shall apply the objective rules in the law which it deems *most relevant to the subject matter of dispute ....*"

As for the procedures of the exiting Arbitration Case, the Arbitration Panel hereby decides that such procedures were conducted pursuant to the valid law. It is decided under the law and well established judicial practice that in case of change of a member of the Arbitration Panel, and replacing him with another arbitrator, at the time of keeping the case for giving an award, the Arbitration Panel shall re-open the door for argument in application of the legal rule provided for in all comparative laws, which rule provides that the persons who give the award should have heard the arguments, and this is provided for under the Saudi *Shari'ah* Pleadings Law, issued under the Royal Decree No. M/1, dated 22.03.1435H under Article 160 thereof. Such Article provides for the following:

"If there is more than one judge, then deliberations on passing the judgments should be confidential. Except for the provision of Article 62 of this Law, deliberations should be conducted only among the judges who heard the argument".

The concept of this provision is also stated in Article 167 of the Egyptian Procedural Law. Such Article provides for the following:

"Only the judges who heard the argument have the right to participate in the deliberations, otherwise the judgment shall be invalid".

When applying this principle, decided under the law and established according to jurisprudence and judicial rules, on the facts of the exiting dispute, it is evident, according to the papers of the exiting case, and the contents of the transcript of the Hearing held on 18.05.2015G

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile: (+20) 01 06 71 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 353570 - Tax Card:697/328
ISO 9001-704916 or 491:8/A8A No.
17.2.801- QM rectification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش - شيراتون هليوبوليس
تليفاكس : ٢٢٦٩٢٥١٦ ( ٢٠٢+ )  محمول
بريد الكترونى: egymark@egymark.org
صفحة الكترونية : www.egymark.org



that the Legal Consultant, Abdul-Nasir Mohammad Abdul-Hameed Khattab, sent a notice to the International Arbitration Center, before giving the award in this Arbitration Case, notifying the Center that he withdrew from considering that Case, and stated that he did not conduct any deliberations with the members of the other Arbitration Panel and did not agree on any form or content of the Award to be given, particularly as one of the Panel's members is of Jordanian nationality and resides in Jordan outside the Arab Republic of Egypt, and therefore the Arbitration Panel had to re-open the door for argument and to suspend giving the award in order for the replacement Arbitrator to hear the argument, particularly as such replacement Arbitrator, namely Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr, was appointed, accepted the assignment and declared that he is neutral and independent before the convening of the Hearing of 18.05.2015G and the Arbitration Panel and the Umpire knew all that. However, the Umpire acted in violation of this rule provided for under all comparative procedural laws in that regard, and the Umpire of the Arbitration Panel issued the Award although he had access to such notice sent by the Legal Consultant, Abdul Nasir Mohammad Khattab, and although he was aware of the appointment of the replacement Arbitrator and his acceptance of the assignment before the Hearing of 18.05.2015G. All such events are established in the transcript of the Hearing of 18.05.2015G which are signed by all members of the Panel, including the Arbitrator appointed by the Respondents, namely Dr. Abu Al-Ela Al-Nimr. Therefore, the Award given by the Umpire of the Arbitration Panel unilaterally has become totally null and void, without any legal effect, and the issue thereof does not end the arbitration procedures. Moreover, such Award was not lodged with the International Arbitration Center pursuant to the applicable legal procedures for lodging awards of arbitration as provided for under the above mentioned Article 44 of the Saudi Arbitration Law.

The other two Arbitrators held a Hearing on 18.05.2015G at which they selected as new Umpire, Mr. Mohammad Al-Shahhat Al-Sayed, an attorney at the Courts of Cassation. The newly formed Arbitration Panel held a Hearing on 19.05.2015G at which it decided to re-open the door for argument at a Hearing to be held on 27.05.2015G. At such Hearing, the Arbitration Panel decided to close the door for argument and to keep the Case for giving its Award at a Hearing to be held on 03.06.2015G.

Consequently, and based on all the foregoing, the Arbitration Panel hereby decides that the procedures for conducting the arbitration are valid and proper and that it is competent to consider the exiting Arbitration Case in execution of the principle of "Competence by Competence", according to which the Arbitration Panel is deemed competent to decide with regard to its competence, as will be stated in the text of the Award.

As for the non-appearance of the Respondents in the Arbitration Hearings, it is established under the documents submitted and kept in the file of the Case that they were properly and legally notified of all such Hearings and the documents submitted thereat but they failed to appear.

Since Article 34/2 of the Saudi Arbitration Law, applicable to the procedures of this Arbitration, provides for the following:

> *"If the defendant fails to submit a written answer containing his defense, pursuant to paragraph 2 of Article 30 of the said Law, then the Arbitration Panel should continue in the arbitration procedures unless the two Parties to the arbitration agree otherwise. If either Party fails to attend a Hearing, after notifying him, or fail to submit the documents required from him, then the Arbitration Panel may continue the procedures of arbitration and give an award in the dispute relying on the supporting elements available to the Panel".*

EgyMark
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

ID: 251570 - Tax Card:697/328/206
ISO 9001-2015 Certification: No
17.2.501- QM rectification date 24 Dec 2020

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٢٦٩٢٥١٦ ( +٢٠٢ )   محمول : ٠٦٧١٥٨٦٨ ( +٢٠١٠٠ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



16 MAY 2018

In application of such provision, the Arbitration Panel, having ascertained that Respondents were duly notified of all the Arbitration Hearings and all the documents submitted thereat, decided to continue the Arbitration procedures and to give an Award in respect thereof relying on the supporting elements available thereto. Accordingly, the Arbitration Panel hereby decides that it is rightful in continuing the procedures and that it is rightful in relying on such supporting elements available thereto, without need to state that in the text of the Award.

As for the possibility of subjecting the exiting dispute to arbitration, the claims expressed by the Claimants are represented in compensation for their non-recovery of the land, the subject matter of this Case, and the failure of the Respondents to pay the due and payable rental value for using such land, and these are financial claims that reconciliation may be made in respect thereof. Accordingly, arbitration can be applied in this regard in application of the provision of Article 2 of the Saudi Arbitration Law which provides for the following:

*"The provisions of this Law do not apply to disputes relating to family affairs and issues in respect of which reconciliation may not be made".*

Based on the violation concept, issues in respect of which reconciliation may be made, they may also be subject to arbitration.

As for the fifth claim of the Claimants, namely: deciding the invalidity of any actions made based on the Company's existence on the land, since the date of the Lease Contract and until the complete execution, this claim relates to real estate real rights in respect of which reconciliation may not be made, consequently, the Arbitration Panel provides the non-acceptance of this claim as will be clarified in the text of the award.

As for the subject of the Case and the claims filed in connection therewith, the issue brought before the Arbitration Panel, in respect of such subject and such claims, is the compensation for the breach by the Respondents of their obligations stated under two contracts, namely: The Contract of Ownership by the Claimants of the land, the subject matter of this Case, and the Lease Contract concluded between them and the Respondents.

The Arbitration Panel shall first decide on the existence of such two Contracts and how far they are valid before deciding on the claims submitted by the Claimants in relation to such two Contracts.

As for the said Lease Contract, it is one of the voluntarily-made contracts in respect of which the rulings of Islamic *Shari'ah* do not require drafting it in a certain form, and accordingly it may be established with all means of proof. It is confirmed under the documents included in this Case file that such contract exists, is valid and satisfies all required elements and conditions. This Contract was concluded between the Claimants and the Respondents in the form of the Title Deed of the leased land No. 124, Volume 2 of 1368H. Under the title "Transfer to the Arab American Oil Company", the following is stated in such Deed:

"In consideration of the good compensation to be paid to us, we the undersigned, for our property under the Deed No. 154/8, for the plots of land set forth above, each of us, in his personal capacity and on behalf of his heirs, guardians and lawful representatives, hereby grant and transfers to the Arab American Oil Company, referred to in the Deed above, its successors and whomever it appoints, the right to use and occupy the plots of land mentioned above, for all the purposes of the Saudi Arabian Concession Agreement, dated 4th Safar 1352H that corresponds to 29th July 1933G, and any other agreements to be annexed thereto. We hereby further declare and state that the rights of the Company to use and occupy the said plots of land arise pursuant to Article 25 of the said Concession

29

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org



Agreement and we hereby also agree to safeguard the said Company, its successors and whomever it appoints against all claims, whether in the past, present time or in future, by anyone claiming interest in any of the said plots of land"

Such text included all elements and items of the Lease Contract concluded between the Claimants and the Respondents, in terms of the Parties to such Contract, its place, the due and payable rental value and the obligations to be borne by each of the two Parties thereto. It specifies the Parties, namely the Principals of the Claimants (Lessors) and the Arab American Oil Company (Lessee), and thus the said Lease Contract passed to the Respondents.

Based on the above, the two parties to such Contract are the Principals of the Claimants and the Respondents. The subject matter of such Contract is the plots of land stated in the Title Deed No. 124, Volume 2 of 1368H, the rental value agreed upon is a good and valuable consideration, and it is subject to evaluation. It is decided under the rulings of Islamic *Shari'ah* that the rental value may be evaluated or can be evaluated. As for the valid term of such Contract, it commenced on 20.03.1949G as stated in the said Title Deed and ended in the year 2005, being the expiry date of the term of the Concession Agreement. Moreover, the above mentioned Lease Contract provided for a commitment on the part of the Principals of the Claimants to ensure the non-legal obstruction to the Lessee Company.

All the correspondence exchanged between the Claimants and the Respondents conclusively proves that the predecessor of the Respondents is the Arab American Oil Company, being the Lessee. The latter Company, in its capacity as Lessee, admitted that fact in several correspondence signed and issued by it. All such documents were listed when the Arbitration Panel addressed the documents submitted by the two Parties. Furthermore, all official authorities in the Kingdom of Saudi Arabia admitted the existence of such Lease Contract. The Arbitration Panel, in this regard, refers to the documents it listed above in this Award in order to avoid repetition.

Therefore, the Lease Contract made between the Principals of the Claimants and the Respondents satisfies all required elements proving its existence, and meets all *Shari'ah* and legal requirements in order to be deemed valid and proper.

Based on the above and since the said Lease Contract was properly concluded, in terms of all its elements, the Arbitration Panel hereby decides that it is valid and effective, without stating that in the text of the Award, provided that this shall be complementary to the text of the award and forms an integral part thereof.

### With Regard to the First Claim of the Claimants

In respect of the ownership of the Claimants to the plots of land, the subject matter of this Arbitration Case, it is established under the Registered Contract (the Title Deed) No. 124, Volume 2 of 1368H that they fully own such plots of land. According to correspondence, in relating to such ownership, kept in the Case file, it is established that the ownership of the Claimants of such plots of land are still existing up to the date hereof. There are several letters exchanged between the Claimants and several governmental authorities in the Kingdom of Saudi Arabia, claiming compensation for the non-recovery of such plots of land. Such authorities instructed the concerned parties to finish and resolve such issue. However, this never happened. There is a letter issued by the Saudi Minister of Petroleum, dated 04.02.2012G kept in the Case file, which does not deny the ownership of the Claimants to such plots of land nor their right in compensation as a result of their non-recovery thereof, but refused such compensation relying on one reason, explicitly stated in the

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٥١٦ ٢٥ ٦٩ ٢٢ (+٢٠٢)  محمول : ٦٨ ٥٨ ٦٧١٠ (+٢٠١٠٠)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



said letter, namely: That the compensation for such plots of land would cost the State billions of Riyals.

The ownership of the Claimants to the plots of land, the subject matter of this Case, is established under documents, and no one can dispute their ownership of such land. However, since it is absolutely impossible for the Claimants to recover such plots of land, due to the construction of buildings thereon and the huge petroleum projects executed on such land, the Claimants requested that they be compensated for the non-recovery of such land, and assessed such compensation, according to their final claims, at a sum of SR. 35,896,500,000 (Thirty-Five Billion Eight Hundred Ninety-Six Million Five Hundred Thousand Saudi Riyals) as a price for an area of 39,885,000 m$^2$ (Thirty-Nine Million Eight Hundred Eighty-Five Thousand Square Meters). Whereas no one has disputed the ownership of the Claimants to such area of land, therefore the Arbitration Panel shall decide on the price payable for such area as compensation for the Claimants for the non-recovery thereof.

Since the Respondents did not return the said land to the Claimants up to the date hereof, therefore they are deemed to have breached their obligation set forth under the Lease Contract concluded between the two sides on 21st March 1949G as by so acting the Respondents are deemed to be illegally maintaining such land and hence they are committed to pay the price thereof.

Since Articles 17 and 18 of the Basic Law of Governance in the Kingdom of Saudi Arabia provide that ownership should be safeguarded, therefore the claim by the Claimants of compensation for the non-recovery of the land they own came in conformity with the proper Islamic *Shari'ah* and the Saudi Basic Law of Governance.

The Claimants submitted three (3) reports, prepared by real estate experts in the Kingdom of Saudi Arabia, all of which are kept in the exiting Case file. One of such reports assessed the value per square meter at a sum of SR. 1,000, the second at a sum of SR. 900 and the third at SR. 850.

The Arbitration Panel shall adopt the report assessing the value per square meter at SR. 850. By multiplying that price by the total area of the land amounting to 39,885,000 m$^2$ (Thirty-Nine Million Eight Hundred Eighty-Five Square Meters) then the total price being the compensation for the non-recovery of such area of land, becomes SR. 33,902,250,000 (Thirty-Three Billion Nine Hundred Two Million Two Hundred Fifty Thousand Saudi Riyals).

Based on the foregoing, the Arbitration Panel hereby commits the Respondents to pay to the Claimants a sum of SR. 33,902,250,000 (Thirty-Three Billion Nine Hundred Two Million Two Hundred Fifty Thousand Saudi Riyals) as compensation for the non-recovery of the plots of land, the subject matter of this Case as set forth in the text of the Award.

### With Regard to the Second Claim of the Claimants

Based on the foregoing, the Arbitration Panel hereby decides that the Claimants are entitled to the rental value due and payable thereto by the Respondents  (Lessee) for the period from the year 2005 until the full settlement, taking into consideration that it is not established, under the documents submitted in this Case, that the Respondents  paid such rental value since the year 2005 and up to date, and further the Respondents failed to submit any reply as to this claim, and therefore the Arbitration Panel hereby decides to commit the Respondents  to pay such rental value for the such period.

As for the rental value due and payable to the Claimants by the Respondents, for the period from 2005 until the complete execution, the Claimants submitted a report prepared by the Golden Towers Office for Real Estate Development in the Kingdom (real estate experts), which report

31

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org



Name of the Certified Office
EGY MARK
for certified translation
Certification # 12001
Entry date 1-12-2018
Date & Signature

16 MAY 2018

- stated that the rental value of the leased land is about SR 85 (Eighty-Five Saudi Riyals) per square meter per annum, another report was submitted by the Claimants in that regard, which report assessed the said rental value at SR 90 (Ninety Saudi Riyals) per square meter per annum, prepared by Al-Khuzaim for Real Estate Services, and they submitted a third report prepared by Ibn Ashlan Real Estate Office, which report estimated the rental value per square meter per annum at SR 100 (One Hundred Saudi Riyals).

The Respondents were notified of such three (3) reports but failed to respond, and did not raise any objection as to the assessment of the rental value.

According to the discretionary power of the Arbitration Panel in that regard, being the higher expert, the Arbitration Panel hereby adopts the report which estimated the rental value at SR 85 (Eighty-Five Saudi Riyals) per square meter per annum based on the reasons given therein.

Since the total area of the land leased to the Respondents totals 39,885,000 square meters (Thirty-Nine Million Eight Hundred Eighty-Five Square Meters), therefore the total rental value due and payable to the Claimants, by the Respondents, for a period of ten (10) years, commencing from 2005G until the year 2015G., at the rate of SR 85 (Eighty-Five Saudi Riyals) annually per square meter become only SR. 33,390,225,000 (Thirty-Three Billion Three Hundred Ninety Million Two Hundred Twenty-Five Thousand Saudi Riyals), as will be stated in the text of the Award.

### With Regard to the Third Claim by the Claimants

As for the Claim by the Claimants that the Respondents be committed to pay to the Claimants a sum of SR. 3,589,650,000 (Three Billion Five Hundred Eighty-Nine Million Six Hundred Fifty Thousand Saudi Riyals) as compensation for exploiting a part of the land at an area of 3,200,000 $m^2$ (Three Million Two Hundred Thousand Square Meters) representing the area of Ras Tanoura Seaport, the Arbitration Panel hereby rejects such Claim because such plot of land constitute a part of the total area of the land owned by the Claimants, and the compensation for the exploitation thereof by the Respondents is included in the compensation referred to above, and deciding compensation for the exploitation of such part of the land separately is deemed duplication of compensation, which matter is hereby rejected by the Arbitration Panel as will be stated in the text of the Award.

### With Regard to the Fourth Claim by the Claimants

As for the claim of the Claimants that the Respondents be committed to pay a sum of SR 1,000,000,000 (One Billion Saudi Riyals) as compensation for the physical and moral damages they incurred, the Arbitration Panel hereby rejects such claim based on that the amount decided as compensation for the non-recovery by the Claimants of the land is deemed to be covering all the physical and moral damages sustained by the Claimants as a result of the non- recovery of the land they own, particularly as the value of such land was assessed at the rate of today, and therefore the Arbitration Panel hereby rejects such Claim as will be stated in the text of the Award.

### With Regard to the Fifth Claim by the Claimants

As for the Claim of the Claimants that any actions taken based on the occupation by the Company of the land, since the date of the Lease Contract until the complete execution, be rendered invalid, the Arbitration Panel hereby decides non-acceptance of that Claim because it is an issue of

32

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون مصر الجديدة
تليفاكس : ٢٠١٦ ٦٩ ٢٢ ( ٢٠٢ + )  محمول : ٥٨ ٦٧١ ( ٢٠١٠+ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



those in respect of which no arbitration may be conducted as it relates to real estate real rights in respect of which no settlement may be made, and consequently no arbitration may be conducted in respect thereof. Therefore, the Arbitration Panel hereby decides non-acceptance of this Claim as will be stated in the text of the Award.

### With Regard to the Sixth Claim by the Claimants

As for the Claim of the Claimants that this Award, together with all the elements thereof, be valid and effective against the successors of the Respondents, such Claim does not need giving an independent award because at the time being there is no successor of the Respondents, and when there is a successor, this Award shall be valid and enforced as against it in application of the general rules of the transfer of rights and obligations, the subject matter of Arbitration, together with all the consequences, to the successor of the Respondents, and accordingly this Claim should be rejected.

### With regard to the Seventh Claim by the Claimants

As for the Claim of the Claimants that the Respondents be committed to pay all the arbitration and attorney's fees, the Arbitration Panel hereby decides that the Respondents and the Claimants are committed to share the Arbitration fees (50/50). Such arbitration fees shall be assessed based on one-eighth percent (1/8 %) of the total value of the Claims of the Claimants, as will be stated in the text of the Award. Regarding the attorney's fees, each Party shall pay the fees of his/its attorney's, as will be stated in the text of the Award.









33

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ ( ٢٠٢ + )  محمول : ٦٨ ٥٨ ٠٦٧١ ( ٢٠١٠+ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org





| **For All the Foregoing Reasons** |

## The Arbitration Panel hereby ruled the followings:

16 MAY 2018

**First:** The Arbitration Panel has the competence to consider this Arbitration Case.

**Second:** The Respondents are hereby committed to pay to the Claimants a sum of SR 33,902,250,000 (Thirty-Three Billion Nine Hundred Two Million and Two Hundred Fifty Thousand Saudi Riyals) as compensation for the non-recovery of the plots of land totaling an area of 39,885,000 m$^2$ (Thirty-Nine Million Eight Hundred Eighty-Five Square Meters).

**Third:** The Respondents are hereby committed to pay to the Claimants a sum of SR 33,390,225,000 (Thirty-Three Billion Three Hundred Ninety Million Two Hundred Twenty-Five Thousand Saudi Riyals) as rental value due and payable by the Respondents to the Claimants since the year 2005 G. until the date of giving this Award.

**Fourth:** Rejection of the Third Claim stated in the final defense brief of the Claimants.

**Fifth:** Rejection of the Fourth Claim stated in the final defense brief of the Claimants.

**Sixth:** Non-acceptance of the Fifth Claim stated in the final defense brief of the Claimants.

**Seventh:** Rejection of the Sixth Claim stated in the final defense brief of the Claimants.

**Eighth:** The Claimants and the Respondents are committed to equally share the arbitration fees, assessed at one-eighth percent (1/8 %) of the total value of the Claims of the Claimants.

**Ninth:** Each of the Claimants and the Respondents is committed to bear their respective attorney's fees.

**Tenth:** Rejection of all other claims.





34

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٢٢٦٩ ( ٢٠٢ + )  محمول : ٦٨ ٥٨ ٠٦٧١ ( ٢٠١٠+ )
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org



### Arbitration Panel

| Mr. Mohammad Al-Shahhat Al-Sayed Hasanain (signature) The Umpire (Chairman of the Arbitration Panel) | Dr. Abu Al-Ela Ali Abu Al-Ela Al-Nimr (signature) Arbitrator for the Respondents . | Mr. Mohammad Arsheed Abdullah Aldeiri (signature) Arbitrator for the Claimants. |

Cairo on 3rd June 2015G that corresponds to 16th Sha'ban 1436H.





**Remarks:**

- The following stamp appears on each page of the document:
  "(Logo) Arab Republic of Egypt
  (Logo) The International Arbitration Center"
- Each page is initialed by the Members of the Arbitration Panel.

16 MAY 2018





ID: 353570 - Tax Card:697/328/200
ISO 9001-2015 Certification No
17.2.501- QM rectification date 24 Dec 2020

*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجى مارك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ ( ٢٠٢ + )   محمول : ٥٨ ٦٨ ٠٦٧١ ( ٢٠١٠٠+)
بريد الكترونى :egymark@egymark.org
صفحة الكترونية : www.egymark.org





## Content of the Given Award

**In the Arbitration Case filed by:**

Heirs of late/Khalid Abu Al-Waleed Al-Qarqani and heirs of late Sheikh/Abdullah Solaiman Al-Hamdan

**("Claimants")**

1 6 MAY 2018

**Against**

Chevron Entities (Aramco, Chevron of USA and Chevron Saudi Arabia)

**("Respondents")**

| Content | Page No. |
|---|---|
| Introduction to the Award | 2 |
| First:     Facts | 6 |
| Second:  Procedures | 8 |
| Third:    Arbitration Agreement | 16 |
| Fourth:   Briefs, Defenses and Documents of the Opponents | 17 |
| 1.  Briefs and defenses of the Claimants | 17 |
| 2.  Documents of the Claimants | 18 |
| 3.  Claims of the Claimants | 21 |
| Fourth/ Second:  Briefs, Documents, Defenses and Claims of the Respondents | 22 |
| 1.  Briefs, defenses and documents of the Respondents | 22 |
| 2.  Claims of the Respondents | 23 |
| Fifth:    Arbitration Panel | 23 |
| The Award | 34 |

Cairo on 3rd June 2015G that corresponds to 16th Sha'ban 1436H.

(Signatures of the members of the Arbitration Panel Members)

**Stamps**
(Logo) Arab Republic of Egypt
(Logo) The International Arbitration Center





*EgyMark*
4 Saqr Quraish Building - Sheraton Heliopolis
Telefax: (+202) 22 69 25 16  Mobile : (+20100) 0671 58 68
E-mail: egymark@egymark.org
Web: www.egymark.org

إيجي مازك
٤ مساكن صقر قريش – شيراتون هليوبوليس
تليفاكس : ٢٥١٦ ٦٩ ٢٢ ( ٢٠٢ + )  محمول : ٦٨ ٥٨ ٠٦٧١ ( ٢٠١٠ +)
بريد الكترونى : egymark@egymark.org
صفحة الكترونية : www.egymark.org

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ١

# حكم التحكيم الصادر

## بمركز التحكيم الدولي

## الكائن مقره ٤ ١ ش اسماعيل المازني – النزهة – القاهرة

القاهرة / في ٣ يونيو ٢٠١٥م الموافق ١٦ شعبان ١٤٣٦ هـ

من هيئة التحكيم المشكلة من كل من :

١- السيد الاستاذ / محمد الشحات السيد حسانين – المحامي بالنقض – مصري الجنسية – الكائن مكتبه في ٢٥٧ ش الحجاز النزهة مصر الجديدة – القاهرة

**رئيس هيئة التحكيم**

٢- السيد الاستاذ / محمد ارشيد عبدالله الديري – المحامي – اردني الجنسية – والكائن مكتبه في الاردن مدينة عمان ش عبدالله غوشة فيلا ٣٢

**المحكم المسمى عن المحتكمين**

٣- الاستاذ الدكتور / أبو العلا علي ابو العلا النمر – استاذ ورئيس قسم القانون الدولي الخاص بكلية الحقوق جامعة عين شمس – والمحامي بالنقض – المحكم المعتمد بقرار وزير العدل – مصري الجنسية – والكائن مكتبه في ١٠ عمارات العبور الدور الثامن- صلاح سالم - القاهرة

**المحكم المعين عن المحتكم ضدهم**

## في القضية التحكيمية المرفوعة من

أولا : - السيد / وليد بن خالد أبو الوليد القرشي عن نفسه وبصفته وكيلا عن ورثة المرحوم / خالد أبو الوليد القرشي وهم والدة المرحوم/ خالد أبو الوليد أل هود القرشي و الثابت من محكمة جدة بن عشر الجزئيه قلم ......



Certified True Copy From The Original document Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٣

١٥- السيد / عبد الرحمن عمر عبد الرحمن عزام
١٦- السيدة / نجلاء عمر عبد الرحمن عزام
١٧- السيدة / ليلى عمر عبدالفتاح عزام ( زوجته )
وجميعهم يحملون الجنسية المصرية .
١٨- ورثة المرحومة صاحبة السمو الملكي الاميرة /
مني بنت عبدالرحمن بن حسن عزام
أثبتات حصـــر و ضبط الورثــه رقــم (١) بالصـك رقـم ١/١٠١ بتـاريخ
١٤٣٥/٥/١١هـ و ثبت وفاتها بتاريخ ١٤٣٥/٤/١٩هـ وهم
١٩- صاحب السمو الملكي الامير /
محمد بن الملك فيصل بن عبدالعزيز آل سعود
٢٠- صاحب السمو الملكي الامير /
عمرو بن محمد بن الملك فيصل بن عبدالعزيز آل سعود
٢١- صاحبة السمو الملكي الاميرة /
مها بنت محمد بن الملك فيصل بن عبدالعزيز آل سعود
٢٢- صاحبة السمو الملكي الاميرة /
ريم بنت محمد بن الملك فيصل بن عبدالعزيز آل سعود
وجميعهم يحملون الجنسية السعودية
٢٣- ورثة المرحوم / عصام عبدالرحمن عزام - (مصري الجنسية)
ولم ينجب وانحصر ارثه في الورثة المذكورين اعلاه .
ومحلهم المختـار مكتـب الاستـاذ الـدكتور عبدالحليم منـدور المحـامي بـالنقض
الكائن مقره بـ ٣٦ ش رشدي - عابدين - القاهرة - بجمهورية مصر العربية
ثانيا :- ورثة المرحوم الشيخ / عبدالله السليمان الحمدان وهم
١- السيد / أحمد عبدالله بن سليمان السليمان الحمدان عن نفسه و بصفته
وكل الاستاذ / أحمد عبد الحي غـانم المحـامي بموجب توكيل خاص صادر
مـــن شـــهر عقـــاري روض الفـــرج بتـــاريخ ٢٠١٤/١٢/١٣م
و بصفته وكيلاً عن
٢- ورثة المرحومة / خديجة صالح الفضل (زوجته)



Certified True Copy
From The Original document
...mark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤

الثابت ميراثهـا بموجب صـك حصـر الإيـرث الصـادر مـن محكمة جـدة
برقم ٥٦ / ١٠ في ١٤٢٧/٦/٧ هـ وهو

٣- السيد /عبد العزيز عبدالله السليمان الحمدان

٤- ورثة المرحومة / دلع عادل عبد القادر قباني
والثابـت ميراثهـا بموجـب صـك حصـر الايـرث رقـم / ٧٧٦
في ٢٩ / ٧ / ١٣٨٥ هـ مـن محكمة جـدة وورثهـا شـقيقها بموجب صـك
حصـر الارث رقـم ٢٢ / ١٦ فـي ١٤٣١/٥/١١ هـ جلـد رقـم ١٦/١
الصادر من المحكمة العامة بمحافظة الطائف وهو :

٥- السيد / مازن بن عادل بن عبدالقادر قباني

٦- ورثة المرحوم / فهد عبدالله السليمان الحمدان
والثابت ميراثه بالصك الشرعي رقم ١/٣٢٦/٣١ و تاريخ ١٤٢٠/٨/٢١هـ
الصادر من محكمة جده وهم :

٧- السيدة / شفياء سيف أحمد أبو هليل ( زوجه )

٨- السيد / عبدالله فهد عبدالله السليمان الحمدان

٩- السيد / زيد فهد عبدالله السليمان الحمدان

١٠- السيدة / سميه فهد عبدالله السليمان الحمدان

١١- ورثة المرحوم / محمد عبد الله السليمان الحمدان
والثابـت ميراثهـم بالصـك الشـرعي رقـم ١٣/٣٥ فـي ١٤٢٤/٢/٢٥هـ
جلد ١٣/٤ من محكمة جده وهم :

١٢- السيدة / حياة يحيى عبدالله نوري ( زوجته )

١٣- السيد / صلاح محمد عبدالله السليمان

١٤- السيدة / خديجه محمد عبدالله السليمان

١٥- السيدة / ليلى محمد عبدالله السليمان
والثابت ميراثهـا أيضـا بالصـك الشـرعي رقـم ٧٧٦ فـي ١٣٨٥/٧/٢١ هـ
وبموجب صك الوصية رقم ٥/١/١٥٤ وتاريخ ١٤٠٨/٨/٢٥ هـ وهم : ٠

١٦- السيد / فيصل ماجد محمد السليمان

١٧- السيدة / سارة ماجد محمد السليمان



Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٥

١٨- ورثة المرحوم / خالد عبدالله السليمان الحمدان
الثابت ميراثه بالصك الشرعي رقم ١٢/٥١ وتاريخ ١٤٢٧/٨/١٧هـ، جلد ١٢/١
من محكمة جدة وهم :

١٩- السيدة / ليلى إبراهيم أبو سمره ( زوجته )

٢٠- السيد / يزيد خالد عبدالله السليمان الحمدان

٢١- السيد / وليد خالد عبدالله السليمان الحمدان

٢٢- السيد / طارق خالد عبدالله السليمان الحمدان

٢٣- ورثة المرحومة / لولوه عبدالله السليمان الحمدان
والثابت ميراثها بالصك رقم ١٥/١٣٦/٨٨ و تاريخ ١٤١١/٧/١٢هـ
والصادر من محكمة جدة وهي :

٢٤- السيدة / رقية عبدالرحمن الرشيد

٢٥- ورثة المرحوم / محمد عبدالرحمن الرشيد
الثابت ارثه بموجب صك حصر الارث رقم ٢٢٧٤١٤٠٧١١٧٥٣١٠٤٢٧
في ١٤٣١/١٠/٢٥هـ الصادر من المحكمة العامة بجده وهم :

٢٦- السيدة / أسماء بنت عبدالله محمد الرشيد ( زوجته )

٢٧- السيد / بندر بن محمد عبدالرحمن الرشيد

٢٨- السيد / سلطان محمد عبدالرحمن الرشيد

٢٩- السيد / ماجد بن محمد عبدالرحمن الرشيد

٣٠- السيدة / ندى بنت محمد عبدالرحمن الرشيد

٣١- السيدة / بسمه بنت محمد عبدالرحمن الرشيد

٣٢- ورثة المرحومة / مضاوي بنت عبدالله السليمان الحمدان
والثابت ميراثها عن والدها المرحوم عبدالله السليمان الحمدان بالصك
الشرعي رقم ٧٧٦ في ١٣٨٥/٧/٢٩ هـ - والثابت ارثها
بالصك رقم ٣٤٧٠٧٤٥ بتاريخ ١٤٣٤/٨/٩ هـ وهم :

٣٣- السيدة / منور عتيق محمد السليمان الحمدان

٣٤- السيدة / فطوم عتيق محمد السليمان الحمدان

٣٥- ورثة المرحومة / اسماء عبدالله السليمان الحمدان



Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٦

والثابت ميراثها عن والدها المرحوم عبدالله السليمان الحمدان بالصك الشرعى
رقم ٧٧٦ في ١٣٨٥/٧/٢٩ هـ - والثابت ارثها بالصك رقم ٨/٢٦٢/١ و تاريخ
١٤١٦/١/٢٩هـ الصادر من محكمة جده وهم :

٣٦- السيد / حمد بن سعد بن حمد السليمان
٣٧- السيدة / بسمه هاشم سعيد هاشم
٣٨- السيدة / فاطمه عبدالله السليمان الحمدان
الثابت ميراثها عن والدها بالصك رقم ٧٧٦ في ١٣٨٥/٧/٢٩ هـ
٣٩- السيدة / هند بنت عبدالله السليمان الحمدان
الثابت ميراثها عن والدها بالصك رقم ٧٧٦ في ١٣٨٥/٧/٢٩ هـ
وجميعهم يحملون الجنسية السعودية
والمقيمون جميعا ببناية الشيخ عبدالله السليمان الحمدان بشارع الاخلاص
بحي الحمراء بجدة بالمملكة العربية السعودية
ومحلهم المختار مكتب الاستاذ الدكتور عبدالحليم مندور المحامي
بالنقض الكائن مقره بـ ٣٦ ش رشدي - عابدين - القاهرة
- بجمهورية مصر العربية

**طرف أول- محتكمون**

**ضـــــد**

**ثانيا** :- كيانات شيفرون ( شركة شيفرون الأمريكية ، وشركة شيفرون
العربية السعودية ' وشركة أرامكو ) والكائن مقرهم الرئيسي في ٦٠٠١
طريق بولينجة كانيون سان رومانو سي ايه ٩٤٥٨٣ . ٢٣٢٤ الولايات
المتحدة الأمريكية . ويمثلها السيد / كاري ايتش اندرياس بصفته السكرتير
المساعد المفوض قانونا .
ومحلهم المختار كل من مكتب الإبراشي وشركاه للمحاماة الكائن مقره
٤ ش السد العالي الدور الرابع الدقي القاهرة – ٧٢٣١١ جمهورية مصر
العربية – ومكتب ذو الفقار وشركاها للاستشارات القانونية ، المحاماة الكائن



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٧

مقــره فـــي أبـــراج النايـــل ســيتي – البــرج الجنــوبي – الــدور الثــامن
٢٠٠٥( أ ) كورنيش النيل – رملة بولاق القاهرة – مصر

طرف ثانى - محتكم ضدهم

## أولاً : الوقائع

١- بتاريخ ١٣٦٨/٩/٢٠هـ تملك مورثـو المحتكمـين وهـم المرحـوم الشـيخ /
عبدالله الســليمان الحمــدان ، والمرحــوم الشــيخ / حمــد بــن الســليمان الحمــدان ،
والمرحــوم الشــيخ خالــد ابــو الوليــد القرقنــي بموجــب الامــر الصــادر مــن
سـمو الأميـر / سـعود بـن جلـوي المعظـم رقـم ١٦٨٧ / ٥٠٢٢ وتـاريخ
١٣٦٨/٩/٢٠ هـ ، مسـاحة مـن الأرض مبينـة الحـدود والمعـالم فـي صـك
الملكيـة رقـم ١٢٤ الجلـد النـاني ١٣٦٨ هـ ، وفـي الخريطـة المرفقـة بـالأمر
الكـريم المـذكور ، علـى أن يملـك المرحـوم الشـيخ / عبدالله السـليمان الحمـدان
والمرحوم الشيخ / حمد السليمان الحمدان نسبة ثلاثة ارباع من هذه المساحة
مـن الأرض ، ويتملك المرحـوم / خالد أبو الوليد القرقني الربع الباقي منها .
وتم النص في صك الملكية رقم ١٢٤ الجلد الناني ١٣٦٨ هـ سالف الذكر :
- " الأرض محـل هـذه المبايعـة قـد أصـبحت ملكـا خالصـا وحقـا
صـرفا لكـل مـن صـاحبي المعـالي / عبدالله وحمـد بـن السـليمان الحمـدان وخالـد
ابـو الوليـد القرقنـي باعتبـار النلانـة أربـاع ملكـا لكـل مـن صـاحبي المعـالي
الشـيخ / عبدالله والشـيخ / حمـد السـليمان الحمـدان والربـع الرابـع لخالـد أبـو الوليـد
يتصـرفون فـي ذلـك تصـرف الملاك فـي أملاكهـم وذوي الحقـوق فـي حقـوقهم لا
معارض لهم في ذلك ولا منازع ......... "

٢- بتـاريخ ٢٩ يوليــو ١٩٣٣ م أبرمـت الحكومــة الســعودية ممثلــة فــي
معـالي / عبدالله الســليمان الحمـدان بصـفته وزيـر الماليـه مـع شـركة الزيـت
العربيــة الأمريكيــة ( ستاندارد أويـل اوف كاليفورنيــا ) ، اتفاقيــة البتــرول الأولــى
( اتفاقيـة الامتيـاز ) ، ووفقـا للمـادة الأولـى منهـا : " منحـت الحكومـة الشـركة
الحـق المطلـق لمـدة ٦٠ سـنة مـن تـاريخ سـريان مفعـول للتحـري والتنقيـب



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٨

والحفر واستخراج ومعالجة وصنع ونقل ومعاملة وأخذ وتصدير البترول والأسفلت والنفط والشحومات الطبيعية والشمع الكريه والسوائل الكربونية الأخرى ومستخرجات جميع هذه المحصولات ، وذلك بالنسبة للمساحة المحددة بملحق هذه الأتفاقية " . وأطلق على تلك الأتفاقية مسمى اتفاقية امتياز استخراج البترول .

٣- بتاريخ غرة جمادى الثانى ١٣٦٨ هـ الموافق ١٩٤٩/٣/٢٠ م أرسل ممثل شركة الزيت العربية الأمريكية ( ستاندارد أويل أوف كليفورنيا ) ، سلف المحتكم ضدهم، خطابا الى مالكى الأرض محل صك الملكية رقم ١٢٤ الجلد الثانى ١٣٦٨ هـ ، يحدد فيه مساحات الأرض التى تحتاجها الشركة من الأراضى المملوكة لهم لتنفيذ التزاماتها الواردة فى اتفاقية الامتياز المبرمة مع الحكومة السعودية بتاريخ ٢٩ يوليو ١٩٣٣ م

٤- ورد فى صك الملكية سالف الذكر رقم ١٢٤ الجلد الثانى ١٣٦٨ هـ ، وتحت عنوان " نقل لشركة الزيت العربية الأمريكية " ما نصه :-

" مقابل التعويض الحسن القيم الذى سيدفع لنا نحن الموقعين أدناه بما خولناه من __ملك__ بموجب الصك رقم ١٥٤ / ٨ لقطع الأراضى الوارد ذكرها بـه نعطى وتنقل كل عن نفسه وورثته وأوصيائه وممثليه الشرعيين لشركة الزيت العربية الأمريكية الشركة المشار اليها فى الصك المذكور أو __من__ __يخلفها__ ومن تعينه __الحق فى استعمال وشغل__ قطع الأراضى المذكورة لكل أغراض الأمتياز العربية السعودية فى ٤ صفر ١٣٥٢ هـ الموافق ٢٩ يوليو ١٩٣٣ م وأى اتفاقيات اضافية تلحق بها ونقرر بهذا ونثبت أن حقوق الشركة المذكورة __فى استعمال وشغل__ الاراضى المذكورة قد جاءت طبقا لمقتضى المادة الخامسة والعشرين من الامتياز المذكور وبهذا أيضا نوافق على أن __نحمى الشركة المذكورة ومن يخلفها ومن تعينه من جميع__ __الدعاوى ما كان منها هى ما هوكائن عن اى مدعى لملك__ __أو مصلحه فى أى من هذه الأراضى المذكورة__ " (( ويوقع كل من خالد أبو الوليد وحمد السليمان و عبدالله اسليمان ))



٥- بتاريخ ١٣٧٥/٧/٨ هـ تنازل ، وفقا للوارد في صك المبايعة رقم ١٢٨ سالف الذكر ، معالي الشيخ / حمد السليمان الحمدان عما يخصه من الأرض المذكورة في الصك المشار اليه لأخيه الشيخ / عبدالله السليمان ، بموجب الصك الصادر من كاتب عدل مكة المكرمة رقم ٧٦٥ في ١٣٧٥/٧/٨ هـ

وبذلك أصبح ملاك الأرض محل صك المبايعة رقم ١٢٤ المذكورة هما الشيخ / عبدالله السليمان بواقع ثلاثة أرباع وخالدأبو الوليد براقع الربع

٦- نصت المادة ٢٥ من اتفاقية الامتياز المبرمة بتاريخ ٢٦ يوليو ١٩٣٣ م على ان :-

" تفوض الحكومة السعودية شركة الزيت العربية الأمريكية ( استاندارد أويل اوف كاليفورنيا ) في الحصول من مالك الأرض على الحقوق السطحية من الأراضي التي ترى الشركة ضرورة لإستعمالها في أعمالها المتعلقة بهذا المشروع على شرط ان تدفع الشركة لشاغل الارض بدل تخليه عن استعمال تلك الأراضي اما المبلغ الذي تدفعه نه فيجب أن يكون عادلا ومبنيا على اساس الفائدة التي يتحصل شاغل الارض منها . تقدم الحكومة للشركة كل مساعدة معقولة في حالة وقوع صعوبات ناشئة عن الحصول على حقوق شاغل سطح الأرض ......... " .

٧- هناك العديد من الخطابات والمراسلات المقدمة والمودعة ملف هذه الدعوى صادرة من المحتكمين لجميع الجهات المسئولة في المملكة العربية السعودية يطالبون فيها بالحصول على حقوقهم المتمثلة في ثمن الأرض محل هذا التحكيم وقيمتها الأيجارية وتعويضهم عن عدم الانتفاع بها لسنوات طويلة

الا أن المحتكمين لم يتلقوا ردا من أية جهة في هذا الخصوص ، الأمر الذي حدا بهم الى اللجوء الى التحكيم الماثل اعمالا لنص المادة ٣١ من اتفاقية الامتياز المبرمة بتاريخ ٢٩ يوليو ١٩٣٣ .





## ثانياً : الإجراءات

١- بتاريخ ٢٤ /٥ / ٢٠١٤ م تقدم السيد / أحمد عبدالله السليمان عـن نفسـه وبصفته وكيلاً عـن السيد / وليد بن خالد أبو الوليد القرقني وآخرين بطلب الـى مركز التحكيم الـدولي طالباً فيـه الموافقـة علـى ان تـتم اجـراءات التحكيم والفصـل فـي النـزاع النـاشـئ بينـهم وبـين شركـة شيـفرون العربيـة السـعودية وكياناتها ( محتكم ضدهم ) ، عـن طريـق مركز التحكيم الـدولي ، وذلك نفـاذا لحكم المادة ٣١ من عقد الامتياز المؤرخ ٣١ يوليو ١٩٣٣ م

٢- بتاريخ ٢٠١٤/٥/٢٧ أرسل مركز التحكيم الـدولي كتابـا الـى السيد / وليـد بـن خالـد الوليـد القرقنـي وآخرين ( محتكمين )، يخطـرهم بموجبـه بموافقتـه علـى اجـراء التحكيم فـي النـزاع المشـار اليـه واتخـاذ اجـراءاتـه وفقـا للوائحـه . وطلب مركز التحكيم الدولي من المحتكمين في هذا الكتاب اختيار محكم لهم

٣- بتـاريخ ٢٨/ ٥ / ٢٠١٤ م ارسـل المحتكمـون خطابـا الـى مركـز التحكيم الـدول يطلبـون فيـه ان يختـار المركـز محكمـا لهـم مـن قائمـة المحكمين المعتمدين لديه .

٤- بتـاريخ ٢٠١٤/٦/٢ م أرسل مركز التحكيم الـدولي خطابـاً الـى المحتكمين يخطـرهم بموجبـه باختيـار الـدكتور / أحمـد صـادق القشيري محكمـا عنهم وهو أحـد المحكمـين المعتمـدين بقائمتـه ، وأخطـرهم المركـز بانـه قـد تـم اخطـار سيادته بهذا الاخطار، ووافق تليفونيا على ذلك

٥- بتـاريخ ٢٠١٤/٦/٥ م أرسل مركز التحكيم الـدولي كتابـا الـى شـركة شيـفرون العربية السـعودية وكياناتهـا يطالبهم بموجبـه ان يعينـوا محكـم عـنهم فـي النـزاع النـاشـئ بينـهم وبـين المحكمـين وذلـك فـي مـدة أقصـاها ٣٠ يومـا مـن تـاريخ تسلمهم هذا الخطاب ، وفـي حالـة انقضـاء تلـك المـدة دون تعيين محكمـا لهم يتولى المركز تسميته طبقا للوائح المركز ويبدأ في اجراءات التحكيم





Certified True Copy
From The Original document
Egymark for Certified Translation Services

٦- بتـاريخ ٢٠١٤/٧/٥ م أرسـل مكتـب الابراشـي وشـركاه للمحامـاة ، كمحـل مختـار لشـركة شـيفرون العربيـة السـعودية وكيلاتهـا ، خطابـا تضـمن الاعتراض على اختصاصـه بنظر التحكيم المشار اليه وفقا للوائحه .

وجـاء بـذات الخطـاب ان شـركة شـيفرون وكيانـاتها تقـوم ، كـاجراء وقـائي ، بترشـيح الـدكتور / محمـد عبد الوهـاب محكمـا عنهـا وعنوانـه هـو : مبنى النايـل سيتى - البرج الجنوبى - الدور الثامن - مصري الجنسية

٧- بتـاريخ ٢٠١٤-٨-١٩ أرسـل مركـز التحكـيم الـدولي أخطـارا الـى الاسـتاذ الـدكتور / محمـد صـلاح عبدالوهاب يخطـره بموجبـه بقيـام شـركة شـيفرن وكيانـاتها بتعيينه كمحكـم عنهـا وفقـا للخطـاب المـؤرخ ٢٠١٤/٧/٥ والمرسـل مـن شـركة شـيفرون الـى مركـز التحكـيم الـدولي ويخطـر سـيادته ايضـا بـأن المحتكمين قد اختاروا محكما عنهم الاستاذ الدكتور أحمد صادق القشيري .

٨- بتـاريخ ٢١ / ٨ / ٢٠١٤ م أرسـل الاسـتاذ الـدكتور / محمـد صـلاح عبد الوهاب خطابـا الـى مركـز التحكيم الدولي يخطـره بموافقتـه علـى تعيينـه محكمـا من شركة شيفرون وكياناتها

٩- بتـاريخ ٢٠١٤/٨/٢٦ م أرسـل مركـز التحكـيم الـدولي خطابـا الـى الـدكتور / محمـد صـلاح عبد الوهـاب المحكـم المعـين عـن المحتكـم ضـدهم متضمـن ترشـيح عـدد مـن السـادة المحكمـين المقيـدين بقـوائم المركـز ليختـار سـيادته أحـدهم ليكـون محكمـا مرجحـا ، وتضمـن هـذا الخطـاب أيضـا بأنـه قـد تـم عـرض هـذه الأسـماء علـى الاسـتاذ أحمـد صـادق القشـيري لاختيـار احـدهم كمحكم مرجح .

١٠- بتـاريخ ٢٠١٤/٨/٣١ م أرسـل مركـز التحكـيم الـدولي خطابـا الـى الاسـتاذ الـدكتور / محمـد صـلاح عبد الوهـاب يفيد بموجبـه بـأن الاسـتاذ الـدكتور / أحمـد صـادق القشـيري قـد رشـح الـدكتور المستشـار / محمـد أحمـد علـى الغـالي ، سوداني الجنسية - مساعد وزير العدل بالسودان - محكما مرجحا





Certified True Copy From The Original document Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ١٢

١١- بتاريخ ٢٠١٤/٨/٣١ م ارسل الاستاذ الدكتور / محمد صلاح عبد الوهاب خطابا الى مركز التحكيم الدولي يفيد بموجبه بأنه بصدد التنسيق مع الاستاذ الدكتور / أحمد صادق القشيري بخصوص تعيين المحكم المرجح

١٢- بتاريخ ٢٠١٤/٩/١ م أرسل مركز التحكيم الدولي خطابا الى الاستاذ الدكتور / محمد صلاح عبدالوهاب ، يكرر فيه بأن الاستاذ الدكتور / أحمد صادق القشيري قد اختار الدكتور المستشار / محمد أحمد على الغاني محكما مرجحا ، وطلب المركز في هذا الخطاب من الاستاذ الدكتور / محمد صلاح عبد الوهاب الموافقة على اختيار المحكم المرجح المذكور

١٣- بتاريخ ٢٠١٤/٩/٢ م أرسل كل من الاستاذ الدكتور / أحمد صادق القشيري ، و الأستاذ الدكتور / محمد صلاح عبد الوهاب ، خطابا مشتركا يقرران فيه بانسحابهما من القضية التحكيمية المشار اليها

١٤- بتاريخ ٢٠١٤/٩/٤ م أرسل السيد / وليد بن خالد أبو الوليد القرقني عن نفسه وبصفته وكيلا عن باقي المحتكمين ، خطابا الى السيد الاستاذ / محمد ارشيد عبدالله الديري . المحامي ، اردني الجنسية ، يعينه بموجبه محكما عنهم بدلا من الاستاذ الدكتور / أحمد صادق القشيري الذي قرر الانسحاب من التحكيم وإخطار المحتكمين بهذا الانسحاب ، وتضمن هذا الخطاب التأكيد على أن الاستاذ الدكتور / محمد صلاح عبد الوهاب لا زال المحكم عن المحتكم ضدهم لعدم ارسالهم اية خطابات تفيد اعتذاره عن التحكيم

١٥- بتاريخ ٢٠١٤/٩/٥ م ارسل السيد الاستاذ / محمد ارشيد الديري ، كتابا الى المحتكمين يخطرهم بموجبه على اختياره محكما عنهم في القضية التحكيمية المذكورة

١٦- بتاريخ ٢٠١٤/٩/٧ م ارسل المحتكمون خطابا الى شركة الزبت العربية السعودية وشركة شيفرون ركياناتها وبشركة شيفرون العربية السعودية يخطرون بموجبه بتسمية السيد الاستاذ / محمد ارشيد الديري



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ١٣

محكما عنهم بدلا من الاستاذ الدكتور / أحمد صادق القشيري الذي اعتذر عن عدم الاستمرار في القضية لتحكيمية .

١٧- بتاريخ ٢٠١٤/٩/٧ م أرسل مركز التحكيم الدولي خطابا الى الاستاذ الدكتور / محمد صلاح عبد الوهاب يخطره بموجبه بأن المحتكمين قد اختاروا السيد الاستاذ / محمد أرشيد الديري ، محكما عنهم بدلا من الاستاذ الدكتور / أحمد صادق القشيري الذي اعتذر عن عدم الاستمرار في القضية التحكيمية .

١٨- بتاريخ ٢٠١٤/٩/١٥ م أرسل السيد الأستاذ / محمد ارشيد الديري خطابا الى مركز التحكيم الدولي يخطره بموجبه انه قد اتفق تليفونيا مع الاستاذ الدكتور / محمد صلاح عبد الوهاب المحكم عن المحتكمين على مقابلته بالقاهرة يوم ٢٠١٤/٩/١٤ م لاختيار المحكم المرجح ، الا ان سيادته قد اعتذر عن مقابلته وأخطره بذلك يوم ٢٠١٤/٩/١٣ م ونتيجة لذلك فقد طلب السيد الاستاذ / محمد أرشيد الديري من مركز التحكيم الدولي بتطبيق لوائحه واختيار محكم مرجح من بين السادة المحكمين المقيدين بقوائم المركز ، نظرا لتعذر اتفاقه مع الاستاذ الدكتور / محمد صلاح عبد الوهاب على اختيار المحكم المرجح

١٩- بتاريخ ٢٠١٤/٩/١٦ م أرسل مركز التحكيم الدولي خطابا الى الاستاذ الدكتور / حمدي عبد الرحمن احمد يخطره بموجبه بأن المركز قد رشحه كمحكم مرجح في القضية التحكيمية المذكورة باعتباره أحد السادة المحكمين المقيدين بقوائم المركز نظرا لاختلاف المحكمان الأخران على اختيار المحكم المرجح

٢٠- بتاريخ ٢٠١٤/٩/١٧ م أرسل الاستاذ الدكتور / حمدي عبد الرحمن أحمد خطابا الى مركز التحكيم الدولي يوافق بموجبه على تعيينه محكما مرجحا في القضية التحكيمية المذكورة ، وأقر سيادته بحياديته واستقلاله عن طرفي هذا القضية



Certified True Copy
From The Original document
Egymark for Certified Translation Services

٢١- بتاريخ ٢٠١٤/٩/١٨ م أرسل مركز التحكيم الدولي خطابا الى السيد الاستاذ / محمد أرشيد الديري ، المحكم المسمى عن المحتكمين ، يخطره بموجبه بحضوره اجتماع هيئة التحكيم المشكلة من الاستاذ الدكتور / حمدي عبدالرحمن أحمد محكما مرجحا ، والاستاذ الدكتور / محمد صلاح عبد الوهاب المحكم المسمى عن المحتكم ضدهم ، وسيادته ، والمزمع عقده بمقر المركز يوم ٢٠١٤/٩/٢٠ م لتحديد موعد جلسة الاجراءات

٢٢- بتاريخ ٢٠١٤/٩/١٨ م أرسل الاستاذ الدكتور / حمدي عبد الرحمن أحمد المحكم المرجح ، خطابا الى السيد الاستاذ الدكتور / محمد صلاح عبد الوهاب والاستاذ / محمد أرشيد الديري يدعوهما الى الاجتماع بمقر مركز التحكيم بمصاحقتهما محكمين يوم ٢٠١٤/٩/٢٠ م لتحديد موعد جلسة الاجراءات ،

وبذات التاريخ أرسل مركز التحكيم الدولي كتابا الى الاستاذ الدكتور / محمد صلاح عبد الوهاب والى الاستاذ / محمد ارشيد الديري بمضمون الخطاب المشار اليه المرسل لسيادتهما من الاستاذ الدكتور / حمدي عبد الرحمن أحمد المحكم المرجح .

٢٣- بتاريخ ٢٠١٤/٩/٢٠م عقدت هيئة التحكيم اجتماعا بمقر مركز التحكيم الدولي الساعة ١٢ ظهرا ، و حضره كلا من الاستاذ الدكتور / حمدي عبد الرحمن أحمد المحكم المرجح ، و السيد الاستاذ / محمد أرشيد الديري ، المحكم المسمى عن المحتكمين و لم يحضر الاستاذ الدكتور / محمد صلاح عبد الوهاب المحكم المسمى عن المحتكم ضدهم تلك الجلسة رغم اعلانه بها اعلانا قانونيا صحيحا و حددت هيئة التحكيم جلسة ٢٠١٤/٩/٢٣م لنظر الدعوى التحكيمية و اخطار الاستاذ الدكتور / محمد صلاح عبد الوهاب بمحضر جلسة ٢٠١٤/٩/٢٠م و بموعد الجلسة المحدد في ٢٠١٤/٩/٢٣م

٢٤- بتاريخ ٢٠١٤/٩/٢٣م عقدت هيئة التحكيم جلسة حضرها الاستاذ الدكتور / حمدي عبدالرحمن أحمد المحكم المرجح و المجيد / الاستاذ محمد أرشيد الديري ، المحكم المسمى عن المحتكمين و تخلف عن حضور تلك



Certified True Copy
From The Original document
Egymark for Certified Translation Services

الجلسة الاستاذ الدكتور / محمد صلاح عبد الوهاب المحكم المسمى عن المحتكم ضدهم رغم اعلانه بها اعلاناً قانونياً صحيحاً وتم تأجيل نظر الـدعوى لجلسـة ٢٠١٤/١٠/١٨ م ، ويـتم اعـلان الطـرفين والاسـتاذ الدكتور / محمد صلاح عبد الوهاب بتاريخ الجلسة .

٢٥- بتـاريخ ٢٠١٤/٩/٢٤ م أعلـن مركـز التحكيم الـدولي السـادة المحـتكم ضدهم بجلسة ٢٠١٤/١٠/١٨ م

٢٦- بتــاريخ ٢٠١٤/٩/٣٠ م أعلـــن مركـــز التحكيـــم الـــدولي الاسـتاذ الدكتور / محمد صـلاح عبـد الوهـاب المحكم المسمى عـن المحتكم ضدهم بجلسة ٢٠١٤/١٠/١٨ م

٢٧- بتـاريخ ٢٠١٤/١٠/١٨م عقـدت هيئـة التحكيم جلسـة حضـر هـا كـل مـن الاستاذ الدكتور / حمدي عبدالرحمن احمد المحكم المرجح و السيد الاستاذ / محمد أرشيد الديري ، المحكم المسمى عن المحتكمين و تخلف عن حضور تلك الجلسة الاستاذ الدكتور / محمد صلاح عبد الوهاب المحكم المسمى عن المحتكم ضدهم رغم اعلانه بها اعلاناً قانونياً صحيحاً ، وحضـر وكـلاء عن المحتكمين بتـوكيلات تـم اثباتهـا وتبـين أنهـا تجيـز لهـم الحضـور أمـام هيئـات التحكيم واطلعـت الهيئـة علـى أصـولها وردتهـا لمقـدميها وأخـذت منهـا صـورة مودعـة ملـف الـدعوى بمحضـر الجلسـة ،وقـد ذكرت هيئـة التحكيم فـي محضـر تلك الجلسة ان الاستاذ الدكتور / محمد صلاح عبد الوهـاب قـد أكـد اعتذاره عن عدم المشـاركة فـي القضية التحكيمية الماثلة ، فقررت هيئـة التحكيم تعيين السـيد المستشـار / عبدالناصر محمد عبد الحميد خطـاب نائب رئيس هيئـة النيابـة الاداريـة محكمـا عـن المحتكم ضدهم بـدلا مـن الاستاذ الدكتور / محمد صـلاح عبـد الوهـاب ، واخطـار سـيادته بالجلسـة القادمـة المحـدد لهـا يـوم ٢٠١٤/١١/١٥ م

٢٨- بتـاريخ ٢٠١٤/١٠/٢٨ م أرسل مركز التحكيم الـدولي خطابا الـى السـيد الاسـتاذ المستشـار رئيس هيئـة النيابـة الاداريـة يخطـر سـيادته بموجبـه أن المركز قـد اختار السـيد المستشـار / عبدالناصر محمد عبد الحميد خطـاب نائب





Certified True Copy
From The Original document
Laymark for Certified Translation Services

رئيس هيئة النيابة الادارية محكما عن المحتكم ضدهم ، ويلتمس المركز من سيادة الاستاذ المستشار رئيس هيئة النيابة الادارية الموافقة بالاذن بتعيين السيد المستشار / عبدالناصر محمد عبد الحميد خطاب بأن يكون محكماً عن المحتكم ضدهم .

٢٩- بتـاريخ ٢٠١٤/١٠/٣٠م ارسل مركز التحكيم الدولي خطابـا الـي ( كيانـات شيفرون المحـتكم ضـدهم ) يخطـرهم بموجبـه باختيـار المركـز للاستاذ المستشار / عبدالناصر محمد عبد الحميد خطاب محكما عنهم بدلا من الاستاذ الدكتور / محمد صلاح عبدالوهاب

٣٠- بتـاريخ ٢٠١٤/١٠/٣٠ م قـام مركـز التحكيم الدولي بـاعلان المحتكمين و المحتكم ضدهم بجلسة ٢٠١٤/١١/١٥م

٣١- بتـاريخ ٢٠١٤/١١/١ م أصـدر سـيادة المستشار وزيـر العـدل قـرار رقم ٨٨٦٦ لسـنة ٢٠١٤ م نـدب فـي المـادة الرابعـة منـه السـيد المستشـار / عبدالناصر محمد عبد الحميد خطاب نائب رئيس هيئة النيابة الادارية محكما مختـارا عـن كيانـات شيفرون كمحـتكم ضـدهم فـي الـدعوى الـدعوى التحكيميـة المرفوعة من السيد / خالد ابو الوليد القرقاني وآخرين بصفتهم محتكمين

٣٢- بتـاريخ ٢٠١٤/١١/١٥م عقـدت هيئـة التحكيم جلسة بمقـر مركـز التحكيم الدولي حضـرها الاسـتاذ الـدكتور / حمـدي عبـد الـرحمن ، المحكم المـرجح ، والسـيد الاسـتاذ / محمـد ارشـيد الـديري ، المحكم المسـمى عـن المحتكمـين ، و السيد المستشار / عبدالناصر محمد عبد الحميد خطاب المحكم المعين عن المحتكم ضدهم وحضر المحتكمون بتـوكيلات طلبتهـا الهيئـة وأثبتتهـا بمحضر الجلسـة ولـم يحضـر أحـد عـن المحـتكم ضـدهم رغـم اعلانهـم اعلانـا صـحيحا بموعـد تلـك الجلسـة ، وقـررت هيئـة التحكيم التأجيـل لجلسة ٢٠١٤/١٢/٦ م لتقـديم صـور المسـتندات الخاصـة بجلسـة اليـوم والتـي اطلعـت الهيئـة علـى اصولها ، وتقديم مذكرة بكافة التوكيلات تفصيلا ومطابتها بمحضر الجلسة

٣٣- بتـاريخ ٢٠١٤/١١/١٦ م تـم اعـلان المحتكمين والمحـتكم ضـدهم بجلسـة ٢٠١٤/١٢/٦م الساعة الواحدة بعد الظهر .





Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ١٧

٣٤- بتاريخ ٢٠١٤/١٢/٦م عقدت هيئة التحكيم جلسة بمقر مركز التحكيم الدولي حضرها الاستاذ الدكتور / حمدي عبد الرحمن ، المحكم المرجح ، والسيد الاستاذ / محمد ارشيد الديري ، المحكم المسمى عن المحتكمين ، و السيد المستشار / عبدالناصر محمد عبد الحميد خطاب المحكم المعين عن المحتكم ضدهم ، كما حضر المحتكمون بتوكيلات طالعتها الهيئة ، وتأكدت من صفة الحضور وصفة الورثة ، ولم يحضر أحد عن المحتكم ضدهم رغم اعلانهم اعلانا قانونيا صحيحا بموعد تلك الجلسة و بهذه الجلسة قررت الهيئة التحكيم التأجيل لجلسة ٢٠١٥/٢/٢١م لتقديم المستندات والمذكرات والمرافعة الشفوية واعلان المحتكم ضدهم بهذه الجلسة ، ونوهت الهيئة الى ان هناك انذارين موجهين لمركز التحكيم الدولي وللسادة أعضاء هيئة التحكيم من المحتكم ضدهم وتم احاطة الحاضرين علما بهما .

٣٥- بتاريخ ٢٠١٤/١٢/٧م قام مركز التحكيم الدولي باعلان المحتكم ضدهم بمحضر جلسة ٢٠١٤/١٢/٦ م وبموعد الجلسة المحدد لها يوم ٢٠١٥/٢/٢١م .

٣٦- بتاريخ ٢٠١٥/٢/٢١م عقدت هيئة التحكيم جلسة بمقر مركز التحكيم الدولي حضرها المحتكمون وهيئة التحكيم ولم يحضر المحتكم ضدهم رغم اعلانهم اعلانا صحيحا بموعدها . وقررت هيئة التحكيم التأجيل لجلسة ٢٠١٥/٣/٢٨م للمرافعة والتعقيب والمذكرات لمن يشاء وإخطار المحتكم ضدهم بقرار التأجيل وبما قدم في جلسة اليوم من مستندات ومذكرات

٣٧- بتاريخ ٢٠١٥/٢/٢٢م قام مركز التحكيم الدولي باعلان المحتكم ضدهم بمحضر جلسة ٢٠١٥/٢/٢١ م وبموعد الجلسة المحدد لها يوم ٢٠١٥/٣/٢٨م .

٣٨- بتاريخ ٢٠١٥/٣/٨م قام مركز التحكيم الدولي بأعلان المحتكم ضدهم بالتقارير التي أعدها الخبراء بشأن نزاع مماثل لقطعة ارض مجاورة لقطعة الارض موضوع النزاع التي يمثلها المحتكمون بشأن النزاع الماثل ، والمتعلقة بتقدير القيمة الايجارية والثمن المستحق للمتر المربع في الارض موضوع النزاع ، وذلك للرد منهم على تلك التقارير وتلك التقارير قد تم اعدادها من قبل خبراء مثمنين بناء على طلب المحتكمين



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ١٨

٣٩- بتاريخ ٢٠١٥/٣/٢٨م عقدت هيئة التحكيم جلسه حضرها من أعضاء الهيئة كلا من ، الاستاذ الدكتور / حمدي عبد الرحمن ، المحكم المرجح ، و السيد المستشار / عبدالناصر محمد عبد الحميد خطاب المحكم المعين عن المحتكم ضدهم ولم يحضر الاستاذ / محمد ارشيد الديري المحكم المعين عن المحتكمين بسبب ظروفه الصحية والتي دخل على اثرها المستشفى ، وحضر المحتكمون ، ولم يحضر المحتكم ضدهم رغم اعلانهم اعلانا صحيحا بميعاد تلك الجلسة ' وقد قررت هيئة التحكيم في هذه الجلسة التاجيل لجلسة ٢٠١٥/٤/٦ م نظرا لمرض السيد الاستاذ / محمد ارشيد الديري ، المحكم المسمى عن المحتكمين .

٤٠- بتاريخ ٢٩ /٢٠١٥/٣ م اعلن مركز التحكيم محضر جلسة ٢٠١٥/٣/٢٨م والقرار الصادر فيها بالتأجيل لجلسة ٢٠١٥/٤/٦م الى المحتكم ضدهم .

٤١- بتاريخ ٢٠١٥/٤/٦ م عقدت هيئة التحكيم جلسة حضرها أعضاؤها الثلاثة ، والمحتكمون ، ولم يحضر المحتكم ضدهم رغم اعلانهم اعلانا صحيحا بمحضر الجلسة المنعقدة بجلسة ٢٠١٥/٣/٢٨ م وما تضمنته من قرار التأجيل بجلسة اليوم الموافق ٢٠١٥/٤/٦م وبتلك الجلسة قررت هيئة التحكيم تطبيق قانون التحكيم السعودي ( لعدم وجود اتفاق بين طرفي الخصومة بشأن القانون الواجب التطبيق على موضوع النزاع وذلك على أساس أن القانون السعودي هو القانون الأكثر صلة بالنزاع ) مكملا بقواعد مركز التحكيم الدولي على اجراءات النزاع ، وحجز الدعوى للحكم بجلسة ٢٠١٥/٥/١١م.

٤٢- بتاريخ ٢٠١٥/٥/٦ م أرسل السيد المستشار / عبد الناصر محمد عبدالحميد خطاب المحكم عن المحتكم ضدهم خطابا الى مركز التحكيم الدولي يعتذر بموجبه عن الاستمرار في القضية التحكيمية نظرا لارتباطه بانهاء أعمال أسرة المرحوم المستشار / عناني عبد العزيز رئيس النيابة الادارية ، وأعباء وظيفته التي لا تمكنه من انجاز مهمته كمحكم في التحكيم المماثل .

Certified True Copy From The Original document Denmark for Certified Translation Services

٤٣- بتـاريخ ٢٠١٥/٥/٧م وجـه الســيد المستشــار / عبـد الناصـر محمد عبدالحميد خطاب انـذارا علـى يـد محضـر لمركـز التحكـيم الـدولي وتـم تسـليمه بتـاريخ ١٢/ ٥/ ٢٠١٥ م يخطـره بموجبـه بانسـحابه مـن مباشـرة مهـام عملـه كمحكم عن شـركة شيفرون وكياناتهـا وأنـه لـم يقـم بأيـة مناولـة او اتفـاق علـى شكل الحكم فـي النـزاع المطـروح لا سـيما وان السـيد الاستاذ محمـد أرشـيد الديري متواجد خارج مصر لانه أردني الجنسية

٤٤- بتـاريخ ٢٠١٥/٥/١١م عقدت هيئة التحكيم جلسـة النطـق بـالحكم بحضور كـلا مـن الاسـتاذ الـدكتور / حمـدي عبـد الـرحمن أحمـد ،المحكـم المـرجح ، والاسـتاذ / محمـد أرشـيد الـديري ، المحكـم المسـمى عـن المحتكمـين ، ولـم يحضـر الاسـتاذ المستشـار / عبدالناصـر محمـد عبـد الحميـد خطـاب المحكـم عـن المحـتكم ضـدهم ، واطلعـت الهيئـة علـى خطـاب اعتـذار سـيادته عـن عـدم الاسـتمرار فـي التحكـيم الماثـل الـوارد الـى مركـز التحكـيم الـدولي المـؤرخ ٢٠١٥/٥/٦م وظلـت الجلسـة منعقـدة حتـى السـاعة الواحـدة والنصـف ظهـرا انتظـارا لحضـور السـيد المستشـار / عبدالناصـر محمـد عبـد الحميـد خطـاب ، رغـم إعلانـه بتلـك الجلسـة ، الا ان سيادته لـم يحضـر ، فقـررت هيئـة التحكيم مـد أجل الحكم لجلسـة ٢٠١٥/٥/١٨م السـاعة الواحدة ظهـرا .

٤٥- بتـاريخ ٢٠١٥/٥/١٨م أخطر مركـز التحكـيم الـدولي الاسـتاذ الـدكتور / حمـدي عبـد الـرحمن أحمـد والاسـتاذ / محمـد أرشـيد الـديري ، بالانـذار الـوارد من المحكـم الثالـث السـيد المستشـار / عبـد الناصـر خطـاب الـذي يؤكـد فيـه تنحيـه عـن التحكيم الماثـل ، وانـه لـم يتـداول فـي هـذا التحكـيم ولـم يتفـق علـى اي شـكل للحكم الـذي سـيصدر فيـه ، وأن المركـز قـد عـين بـدلا مـن سـيادته محكمـا جديـدا وهو الاسـتاذ الـدكتور / أبـو العـلا علـى ابـو العـلا النسـر عـن المحـتكم ضـدهم ، الاسـتاذ ورئـيس قسـم القـانون الـدولي الخـاص بكليـة الحقـوق جامعـة عـين شـمس ، والمحـامي بـالنقض ، وقـد تـم تسـليم سـيادته إخطـارا بتعيينـه محكمـا بـديلا بتـاريخ ٢٠١٥/٥/١٤م وأخطـر سـيادته مركـز التحكـيم الـدولي بتبولـه للمهمـة وحيادتـه واسـتقلاله بتاريخ ٢٠١٥/٥/١٨م





٤٦- بتـاريخ ٢٠١٥/٥/١٨ م حضـر الـى مقـر مركـز التحكيـم الاسـتاذ الـدكتور / حمـدي عبـد الـرحمن أحمـد المحكـم المرجـح ، والاسـتاذ / محمد أرشيد الـديري المحكـم المسـمى عـن المحتكمين والاسـتاذ الـدكتور / أبـو العـلا علـي أبـو العـلا النمـر المحكـم المعين عـن المحتكم ضـدهم وتـم الاجتمـاع فـي قاعـة المداولـة بمقـر مركـز التحكيم الـدولي ، وتحـرر بهـذا التاريخ محضـر جلسـة ثابـت بـه حضـور الاجتمـاع كـلا مـن الاسـتاذ الـدكتور / حمـدي عبـد الـرحمن المحكـم المرجـح ، والاسـتاذ / محمد أرشيد الـديري المحكـم المسـمى عـن المحتكمين ، ووقـع علـى المحضـر بتلـك الجلسـة كليهمـا بالاضـافة الـى الاسـتاذ الـدكتور / ابـو العـلا علـي ابـو العـلا النمـر المحكـم المعين عـن المحتكم ضـدهم لحضـوره الجلسـة وموافقـة رئيس التحكيم الاسـتاذ الـدكتور/ حمـدي عبدالـرحمن علـى ذلـك حيـث قـدم المحكـم المعين عـن المحتكم ضـدهم الاخطـار بتعينـه محكمـا بالاضـافة الـى الإقـرار بقبولـه مهمـة التحكيم كتابـة والإقـرار بحيدتـه واسـتقلاله وقـد وافـق رئيس هيئـة التحكيم علـى انضمـام الـدكتور/ أبـو العـلا النمـر لهيئـة التحكيم واسـتأم منـه المسـتندات سـالفة الذكر وتم ابداعهـا بمحضـر الجلسـة وقد اسـتمرت هذه الجلسـة لمدة سـاعة و عشر دقائق .

وناقشـت الهيئـة موضـوع انضمـام الاسـتاذ الـدكتور / ابـو العـلا علـى ابـو العـلا النمـر الـى هيئـة التحكيم بـدلا مـن السـيد المستشـار / عبـد الناصـر محمـد عبـد الحميـد خطـاب الـذي تنحـى عـن نظـر الـدعوى التحكيميـة الماثلـة ، ووافق السـيد الاسـتاذ / محمد أرشيد الـديري المحكـم عـن المحتكمين علـى تعيين هذا المحكم البـديل ، بينمـا اعتـرض علـى تعيينـه الاسـتاذ الـدكتور / حمـدي عبـد الـرحمن أحمـد المحكـم المرجـح (بعد فتـرة مـن التـداول جـاوزت سـاعة و عشـر دقـائق ) وطلـب المحكـم عـن المحتكمين مـن المحكـم المرجـح عـدم ايداع الحكـم نظـرا لانضمـام عضـو جديـد يجـب ان يسـمع المرافعـة ، وفتـح بـاب المرافعـة حتـى جلسـة لاحقـة لكـي يسـمع العضـو الجديـد المرافعـة فـي الـدعوى وفقـا للمسـتقر عليـه فـي اجـراءات التقاضـي سـواء امـام التحكيم او امـام القضـاء حيـث مـن المقـرر قانونـا ان يصـدر الحكـم مـن سـمع المرافعـة ، الا ان المحكـم المرجـح قـد رفـض ذلـك وأصـر علـى أنـه سـوف يصـدر الحكـم ، واسـتند فـي ذلـك كمـا هو



Certified True Copy
From The Original document
Baymark for Certified Translation Services

ثابت في محضر جلسة ٢٠١٥/٥/١٨ م الى أن الإنذار الذي قدمه مركز التحكيم الدولي على انه مرسل من السيد المستشار / عبد الناصر محمد عبد الحميد خطاب قد جاء مجهلاً ، وأنه محكم وازع من حقه اصدار الحكم وحده وفقاً لاتفاق التحكيم الوارد في المادة / ٣١ من الاتفاقية المؤرخة ١٩٣٣ ، وكذلك تمسك بأنه أعد الحكم وجاءت أسبابه في أربع ورقات فقط واطلع عليها المحكم عن المحتكمين . وفي نهاية الاجتماع قرر المحكم المرجح انه قد أدى مهمته وانصرف من مقر مركز التحكيم الدولي دون أن يسلم الحكم الى إدارة مركز التحكيم الدولي قانوناً حيث أنه لم يقم بعمل محضر إيداع قانوني لتسليم الحكم .

٤٧- بتاريخ ٢٠١٥/٥/١٨ م تحرر محضر جلسة حضرها كلاً من الاستاذ / محمد ارشيد الديري المحكم المسمي عن المحتكمين ، والاستاذ الدكتور / أبو العلا علي ابو العلا النمر المحكم المعين عن المحتكم ضدهم ، للنظر في اتخاذ الاجراءات القانونية اللازمة للسير في نظر الدعوى التحكيمية الماثلة على ضوء تنحي السيد المستشار / عبد الناصر محمد عبد الحميد خطاب عن نظر هذا التحكيم ، وعلى ضوء رفض الدكتور حمدي عبدالرحمن أحمد ، المحكم المرجح ، فتح باب المرافعة نظراً لتعيين محكم جديد ، وكذلك النظر في اختيار محكم مرجح بدلا من الاستاذ الدكتور حمدي عبد الرحمن أحمد ، وقرر الحاضران بهذا الاجتماع اختيار الاستاذ / محمد الشحات السيد حسانين ، المحامي بالنقض ، محكما مرجحاً ، وتكليف مركز التحكيم الدولي اخطار سيادته بهذا الاختيار ، وتحديد جلسة ٢٠١٥/٥/١٩ م الساعة الثانية ظهرا كجلسة اجرائية لاستكمال تشكيل هيئة التحكيم .

٤٨- بتاريخ ٢٠١٥/٥/١٨ م تم اخطار الاستاذ / محمد الشحات السيد حسانين ، المحامي بالنقض ، بقرار تعيينه محكماً مرجحاً في التحكيم الماثل .

٤٩- بتاريخ ٢٠١٥/٥/١٩م قبل الاستاذ / محمد الشحات السيد حسانين قرار اختياره محكماً مرجحاً واقر بحيدته و استقلاله عن طرفي النزاع .

٥٠- بتاريخ ٢٠١٥/٥/١٩م عقدت هيئة التحكيم جلسه اجراءات حضرها كلاً من الاستاذ / محمد الشحات السيد حسانين ، المحكم المرجح ، الاستاذ/ محمد



ارشيد الديري المحكم المسمى عن المحتكمين ، والاستاذ الدكتور / أبو العلا على ابو العلا النمر المحكم المعين عن المحتكم ضدهم ، و بتلك الجلسة قررت هيئة التحكيم فتح باب المرافعة لجلسة ٢٠١٥/٥/٢٧م و تكليف مركز التحكيم الدولي باخطار طرفي التحكيم لحضور هذه الجلسة لابداء دفاعهم و دفوعهم المكتوبة و الشفوية

٥١- بتاريخ ٢٠١٥/٥/١٩م قام مركز التحكيم الدولي باعلان المحتكم ضدهم بقــــرار فــــــتح بـــــــاب المرافعـــــة لجلســـــة ٢٠١٥/٥/٢٧م و بالتشكيل الجديد لهيئة التحكيم

## ثالثاً : إتفاق التحكيم

ورد اتفاق التحكيم في المادة الواحدة والثلاثين من اتفاقية البترول الأولى المؤرخة ٢٩ يوليو لسنة ١٩٣٨ م ، وجاء نص هذه المادة على النحو الآتي " اذا نشأ شك او اشكال أو خلاف بين الحكومة والشركة في تنفيذ هذه الاتفاقية أو تنفيذها أو تفسير شئ منها او تنفيذه أو فيما له علاقة بها او في حقوق أحد الفريقين أو تبعاته ، فعجز الفريقين عن الاتفاق على تسوية ذلك بطريقة أخرى ، تحال القضية الى حكمين اثنين يختار كل فريق واحد منهما وعلى وازع يختاره الحكمان قبل الشروع في التحكيم ويعين كل فريق حكمه في خلال ثلاثين يوما من تاريخ طلب الفريق الآخر ذلك خطيا منه . واذا عجز الحكمان عن الاتفاق على تعيين الوازع فعلى الحكومة والشركة حينئذ ان يعينا بالاتفاق واز عا واذا عجزنا عن الاتفاق فيما بينهما عليهما ان يطلبا من رئيس محكمة العدل الدولية الدائمة ان يعين وازعا ويعتبر حكم الحكمين في القضية باتا ، وأما اذا لم يتفقا بينهما في الرأي فيعتبر حكم الوازع في القضية نهائيا ، اما مكان التحكيم فيتفق عليه الفريقان ، واذا عجزا على الاتفاق على ذلك يكون في لاهاي ( هولندا ) .



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٢٣

## رابعاً : مذكرات ودفاع ومستندات الخصوم

تعرض هيئة التحكيم لبيان المذكرات والمستندات المقدمة من المحتكمين

رابعاً / أولاً ـ مذكرات ومستندات المحتكمين ودفاعهم وطلباتهم :

### ١ـ مذكرات المحتكمين ودفاعهم

قدم المحتكمون بيان الدعوى التحكيمية ومذكرة ختامية بدفاعهم ، عرضوا فيها لوقائع النزاع الماثل والمراحل التي مر بها منذ ابرام عقد الامتياز بين حكومة المملكة العربية السعودية وشركة ستاندارد اويل اوف كاليفورنيا وتملك مورثوا مالكي الأرض محل هذا التحكيم عن طريق منحة من جلالة الملك وثبتت لهم تلك الملكية بموجب الصك رقم ١٢٤ الجلد الثاني عام ١٣٦٨ هـ ، وعرضوا لعقد الايجار الذي تضمنه الصك المذكور بين مورثو المحتكمين والمحتكم ضدهم ، حيث بلغت مساحة الارض المؤجرة ( ٣٩٨٨٥٠٠٠ ) متر مربع ( تسعة وثلاثون مليون وثمانمائة وخمسة وثمانون الف متر مربع ) . وقرر مورثو المحتكمين بأن عقد الإيجار قد انتهى سنة ٢٠٠٥ م بنهاية عقد الامتياز السالف الذكر ، وعدم تسليم المحتكم ضدهم الارض محل هذا التحكيم الى ورثة مالكي هذا الارض حتى الان . وقد أقام المحتكمون دعواهم الماثلة ، وفقا لما جاء في بيان دعواهم ومذكرة دفاعهم الختامية ، على عدة اسانيد قانونية وقضائية تمثلت في ١ـ اختصاص هيئة التحكيم بنظر النزاع حيث تختص هيئة التحكيم بنظر النزاع بناء على توافر حالة شرط التحكيم بالاشارة في عقد الملكية للسليمان وشركاه ، اذ ان عقد الايجار الذي ابرم بين مورثوا المحتكمين والمحتكم ضدهم قد أشار الى عقد الامتياز المبرم بين الحكومة السعودية وشركة الزيت العربية الأمريكية في ٢٩يوليو ١٩٣٣ م والمتضمن في المادة / ٣١ منه شرط التحكيم ، فتكون تلك الاشارة بمثابة اتفاق تحكيم واستند دفاع المحتكمين الى نصوص نظام التحكيم السعودي رقم ٣٤وتاريخ ٢٤/٥/١٤٣٣هـ خصوصاً المادة ٩ منه ، وكذلك قانون التحكيم المصري رقم ٢٧ لسنة ١٩٩٤ م في المادة العاشرة



Certified True Copy
From The Original document
Enymark for Certified Translation Services

منه ، واستندوا في ذلك ايضا الى أحكام قضائية صدرت في مصر وفي الدول العربية في شأن التحكيم بالاحالة ، واستندوا كذلك على أراء الفقه العربي والغربي في هذا الخصوص ، ٢- مد شرط التحكيم من عقد الامتياز الى عقد الايجار لانهما يمثلان مجموع عقدي واحد ، حيث ان وجود شرط التحكيم في أحدهما يمتد الى العقد الآخر ، واستند المحتكمون في ذلك الى أحكام قضائية صادرة من القضاء الفرنسي والمنشورة في مجلة التحكيم التي تصدر باللغة الفرنسية ، خصوصا ما نشر في تلك المجلة سنة ١٩٨٤م ص ٣٦٣ ، و ١٩٨٩ م ص ٦٩١ . ٣- عدم أحقية المحتكم ضدهم بعدم حضور جلسات التحكيم بمبرر عدم وجود التحكيم ، واستند دفاع المحتكمين في هذه الخصوص لقاعدة الاختصاص بالاختصاص التي تعطي هيئة التحكيم الاختصاص بالفصل في اختصاصها او الدفوع المتعلقة بوجود اتفاق من عدمه ، وأسسوا دفاعهم في هذا الخصوص على نص المادة / ٢٢ من قانون التحكيم المصري رقم ٢٧ لسنة ١٩٩٤ م " ونص المادة / ٢٠ من نظام التحكيم السعودي رقم ٣٤ بتاريخ ١٤٣٣/٥/٢٤هـ . وتمسك في هذا الشأن كذلك ببعض أراء الفقه المصري وبعض الأحكام الصادرة من محكمة النقض المصرية . واستطرد دفاع المحتكمين في بيان دعواهم ومذكرة دفاعهم الختامية شرحين تكييف العقد المبرم بين المحتكمين والمحتكم ضدهم وقالوا ان العقد سند الدعوى من العقود المجتمعة ، والصك ( العقد المسجل ) من قبل كتابات العدل ( جهة التوثيق بالمملكة العربية السعودية ) والرقيم ١٢٤ قد تضمن عقدين هما عقد ملكية مورثو المحتكمين لقطعة الارض البالغ مساحتها اربعة آلاف وربعمائة وخمسة وتسعون هكتار ونصف هكتار ، وعقد الايجير المبرم بين مورثوا المحتكمين والمحتكم ضدهم والمنصب على مساحة الارض المذكورة والمنصوص عليها في الصك رقم ١٢٤ الجلد الثاني في خاص ١٣٦٨هـ ، وذكر دفاع المحتكمين النصوص الوارد بخصوص هذين العقدين في الصك المذكور وعرض دفاع المحتكمين للعديد من الأدلة التي تثبت قيام علاقة ايجارية بين مورثيهم والمحتكم ضدهم ، وستعرض هيئة التحكيم المستندات المتضمنة لتلك الأدلة عند سردها



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٢٥

للمستندات المقدمة من المحتكمين ، وتمسك دفاع المحتكم بانتهاء عقد الايجار المبرم بين مورثيهم والمحتكم ضدهم لانتهاء مدة الامتياز في عام ٢٠٠٥ م بعد انقضاء مدة الستين عاماً المتفق عليها سريان عقد الامتياز المبرم في ٢٩ يوليو عام ١٩٣٣م وعرضوا للنصوص الواردة في الصك ( العقد المسجل ) ١٢٤ الجلد الثاني خاص ١٣٦٨ هـ بخصوص أحكام عقد الايجار المشار اليه

وطالب دفاع المحتكمين بحقهم في التعويض عن الاضرار التي اصابتهم جراء عدم تسليمهم الارض موضوع النزاع بعد انتهاء مدة عقد الايجار ، واستند في ذلك الى آراء بعض الفقه المصري ونصوص القانون المدني المصري وبعض الاحكام الصادرة في هذا الخصوص من ديوان المظالم بالمملكة العربية السعودية .

## ٢- مستندات المحتكمين

تقدم المحتكمون بالعديد من المستندات المؤيدة لدعواهم ، ستسردها هيئة التحكيم اجمالاً اذ ان اصولها مودعة ملف الدعوة ، وتلك المستندات هي :
- اتفاقية البترول الاولى الموقعة بين الحكومة السعودية وشركة استاندارد اويل اوف كاليفورنيا بتاريخ ٢٩/ يوليو ١٩٣٣م

- عقد ملكية مورثو المحتكمين لقطعة الارض محل النزاع ، وهو الصك ( العقد المسجل ) ١٢٤ الجلد الثاني ١٣٦٨ هـ .

- خطاب مؤرخ ١٣٨٨/٥/٤ هـ صادر من شركة الزيت العربية الامريكية تقر فيه صراحة بأن الارض محل الصك ١٢٤ الجلد الثاني ١٣٦٨ هـ قد تم استئجارها من ملاكها خالد أبو الوليد والمرحومان حمد وعبدالله السليمان طوال مدة اتفاقية الامتياز .

- خطاب مؤرخ في ١٣٨٨/٥/٢٦ هـ صادر من شركة الزيت العربية الامريكية يتضمن اقرار بواقعة تأجير الاراضي موضوع الصك ( العقد ) ١٢٤ موضوع النزاع .





- خطـاب مـؤرخ فـي ١٣٨٩/٢/٥ هــ صـادر مـن شـركة الزيـت العربيــة الامريكيــة الــى ورثــة الســليمان والــذي يتضــمن اقــرار بواقعــة تــأجير الارض موضوع الصك ١٢٤ موضوع النزاع .

- خطـاب مـؤرخ فـي ١٣٨٩/٣/٥هــ صـادر مـن شـركة الزيـت العربيــة الامريكيـة يتضـمن اقـرار منهـا بواقعـة تـأجير الاراضـي موضـوع الصـك رقـم ١٢٤ موضوع النزاع .

- خطـاب مـؤرخ فـي ١٣٩/١١/٣ هــ صـادر مـن شـركة الزيـت العربيــة السـعودية موجـه لورثــة الســليماني المحـتكم تقـر فيـه بأنهـا مسـتأجرة لـلارض موضوع النزاع ملك هؤلاء الورثة .

- خطـاب مـؤرخ فـي ٢٣ رمضـان ١٤٠٧هــ مرسـل مـن الشـركة المحـتكم ضدها الـى ورثـة المحتكمين تقـر فيـه بأنهـا مسـتأجرة لـلارض المملوكـة للورثـة محل صك الملكية رقم ١٢٤ الجلد الثاني ١٣٦٨ هـ الارض موضع النزاع

- محضـر لجنـة ازالـة التعديـات التابـع لادارة المنطقـة الشـرقية بـوزارة الداخليـة ، المـؤرخ ١٤١٤/٥/١٥هــ ، أقـرت فيـه تلـك اللجنـة بـأن الارض موضـوع النزاع مملوكـة لورثـة الســليمان و مسـتأجرة منـه لشـركة ارامكـو و وقـع علـى هذا المحضر ممثل من ورثة السليمان وممثل من شركة أرامكو .

- خطـاب مـؤرخ فـي ١٤١٧/٤/١٣ هــ صـادر مـن أميـر المنطقـة الشـرقية الموجـه مـن ولـي العهـد نائـب رئيـس مجلـس الـوزراء يقـرر فيـه ملكيـة عائلـة الســليمان للأرض محل هذا النزاع ، وأنها مؤجرة لشركة أرامكو

- خطـاب بـدون تـاريخ مرسـل مـن شـركة أرامكـو الـى الشـيخ عبدالعزيـز عبدالله الســليمان أحـد ورثـة عبـدالله الســليمان مـورث المحتكمـين أقـرت فيـه بأنهـا مسـتأجرة لقطعـة الارض المملوكـة لورثـة السـليمان حيـث ذكـرت شـركة أرامكـو في الخطـاب المـذكور عبـارة " ان شـركة أرامكـو لـم تتهـاون في الـدفاع عـن حقهـا كمستأجر وحقكم كمالك "

- خطـاب بـدون تـاريخ موجـه مـن شـركة ارامكـو الـى مـورث المحتكمين يتضـمن اقـرارا بموافقـة اسـتئجارها لـلارض موضـوع النـزاع مـن ملاكهـا ورثـة المحتكمين



Certified True Copy From The Original document Earmark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٢٧

- خطاب بدون تاريخ صادر من شركة أرامكو الى ورثة عبدالله السليمان تقر فيه بأن الأرض موضوع النزاع مؤجرة لها من ملاكها مورثين المحتكمين وهم المرحوم عبدالله السليمان والمرحوم حمد السليمان والمرحوم خالد ابو الوليد .

كما قد المحتكمون عدة مستندات تفيد تملك مورثوهم الأرض محل النزاع ، وهي :

بتاريخ ١٣٧٦/٧/٥ هـ صدر حكم في الدعوى رقم ٤٩٧ بتاريخ ١٣٧٦/٧/٥ هـ قضى فيه " بأن الأرض محل الصك رقم ١٢٤ بتاريخ ١٣٦٨/٩/٢٣ هـ مملوكة لابن السليمان وشركاه ومؤجرة لشركة أرامكو .

- خطاب مؤرخ في ٢٤ صفر ١٤٠٧ هـ مرسل من شركة أرامكو الى ورثة المحتكمين والذي تقر فيه بملكية الأرض محل النزاع للمحتكمين بموجب الصك رقم ١٢٤ المؤرخ في ٢٠ رمضان ١٣٦٨ هـ .

- الحكم النهائي رقم ٢٠/٢٠٠/١٧١ صادر بتاريخ ١٤٠٧/٧/١٨ هـ يثبت أن الأراضي موضوع النزاع مملوكة لمكاخلاصا لورثة عبدالله السليمان في دعوى قسمة التركة المرفوعة من ورثة حمد السليمان .

- الأمر الصادر من صاحب السمو الملكي الأمير نايف بن عبد العزيز آل سعود ، رحمه الله ، ولي العهد ، ووزير الداخلية ، ونائب رئيس مجلس الوزراء بالمملكة العربية السعودية بموجب البرقية رقم ٣٢٣٤٦ بتاريخ ١٤٣٣/٣/٢٢ هـ والمعمم على ثلاث جهات حكومية بالتوجيه لشركة أرامكو بسداد الايجار المتأخر منذ انتهاء عقد الامتياز وتسليم الاراضي لمورثي المحتكمين أو تعويضهم عنها .

- وقدم المحتكمون أيضا عدة مستندات تؤيد مقدار التعويض الذي يطالبون به نظير عدم رد الأرض المملوكة اليهم وهي موضوع هذا النزاع ، وتلك المستندات هي : -

- دراسة علمية من البنوك السعودية تقدر نمو قيمة الأراضي في المملكة العربية السعودية ما بين ٧ % الى ٩ % سنويا في العشر سنوات الماضية " والمستندات باللغة الانجليزية "





Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٢٨

- خطـاب نـزع ملكيـة أرض زراعيـة تمثـل حالـة مثـل الارض المملوكـة للمحتكمين .

- خطـاب مـؤرخ فـي ١٤٣٣/٣/٢٢ هــ مرسـل مـن وزيـر البتـرول الـى جلالـة ملـك المملكـة العربيـة السـعودية يقـر فيـه بملكيـة عائلـة السـليمان للأرض محـل النـزاع ، وان تعويضـهم عـن عـدم اسـتردادهم لهـا سـيكلف الدولـة مليـارات الريالات .

- مجموعـة خطابـات بتواريخ مختلفـة مرسلة مـن المحتكمين الـى شـركة ارامكو والـى العديـد مـن الجهـات المختصـة بالمملكـة بالمطالبـة بالقيمـة الايجاريـة للـأرض محـل النـزاع الماثـل وبالتعويض عـن عـدم اسـتردادهم كمـلاك لتلـك الاراضـي وهي : -

- خطاب لمعالي وزير البترول مؤرخ في ١٤٢٨/٢/٧هـ

- خطــاب مرسـل لصـاحب السـمو الملكـي الاميـر نـايف بـن عبـدالعزيز وزيـر الداخليـة ونائـب رئـيس الـوزراء والنائـب الثـاني لخـادم الحرمين الشريفين بالمملكة العربية السعودية مؤرخ في ٢٠١١/٤/٧ م

- خطــاب مرسـل لصـاحب السـمو الملكـي الاميـر نـايف بـن عبـدالعزيز وزيـر الداخليـة ونائـب رئـيس الـوزراء والنائـب الثـاني لخـادم الحرمين الشريفين بالمملكة العربية السعودية مؤرخ في ٢٠١٢/١/٨ م

- خطــاب مرسـل لصـاحب السـمو الملكـي الاميـر نـايف بـن عبـدالعزيز وزيـر الداخليـة ونائـب رئـيس الـوزراء والنائـب الثـاني لخـادم الحرمين الشريفين بالمملكة العربية السعودية مؤرخ في ٢٠١٢/٤/٢٦ م

- تقـارير الخبـراء العقـاريين بالمملكـة العربيـة السـعودية مقـدم مـن المحتكمـين الـى مركـز التحكيـم الـدولي يـوم ٢٠١٥/٣/٧م وتـم تسـليم صـور طبـق الاصـل منهـا الـى المحـل المختـار للمحتكمـين بالقـاهرة وتـم اعـلان المحتكـم ضـدهم بهـا بتـاريخ ٢٠١٥/٢/١١ م عـن طريـق البريـد السـريع ( DHL ) وذلـك بشـأن تقـييم القيمـة الإيجاريـة للمتـر المربـع للـأرض موضـوع النـزاع وقدمـت هـذه التقـارير بحافظـة مسـتندات لهيئـة التحكيـم بجلسـتها المنعقـدة بتـاريخ ٢٠١٥/٣/٢٨ م .



Certified True Copy
From The Original document
Egi mark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٢٩

- تقارير الخبراء العقاريين بالمملكة العربية السعودية مقدمة من المحتكمين الى مركز التحكيم الدولي بتاريخ ٢٠١٥/٥/٧ م وتم تسليمها المحل المختار للمحتكم ضدهم بالقاهرة وإعلانهم بها بتاريخ ٢٠١٥/٣/١١ م عن طريق البريد السريع ( DHL ) وذلك **بشأن تقييم سعر البيع للمتر المربع للأرض موضوع النـزاع** ، وتم تقديمهم بحافظة مستندات لهيئة التحكيم بجلسة ٢٠١٥/٣/٢٨ م .

- خريطة للموقع ثابت بها حدود قطع الاراضي موضوع النزاع .

- فتوى صادرة من دار الافتاء بجمهورية مصر العربية عن العلاقة الايجارية في الشريعة الاسلامية بتاريخ ١٩٩٨/٦/٢م مقدمة لمركز التحكيم الدولي بتاريخ ٢٠١٥/٣/١٩م ، وتم تسليمها للمحتكم ضدهم بمحلهم المختار بالقاهرة وتم اعلانهما بها بتاريخ ٢٠١٥/٣/٢١م عن طريق البريد السريع ( DHL )

- عناصر عقد الايجار للأرض موضوع النـزاع وإيصال استلام القيمة الايجارية عن الفترة الزمنية التي استأجرتها شركة أرامكو من مورث المحتكمين .

- تفاصيل ميناء رأس تنورة والذي يقع داخل الارض موضوع النزاع .

- حجم النفط السعودي من اجمالي حجم النفط العالمي .

### ٣- طلبات المحتكمين

تمثلت الطلبات الختامية للمحتكمين الواردة في مذكرة دفاعهم الختامية فيما يلي :-

**أولا:** الزام الشركة المحتكم ضدها ومن يخلفها متضامنين بدفع مبلغ وقدره ( ٣٥,٨٩٦,٥٠٠,٠٠٠ ريال سعودي) (خمسة وثلاثون مليار وثمانمائة وستة وتسعون مليون وخمسمائة الف ريال سعودي) تعويضا عن قيمة الأرض محل النـزاع والبالغ مساحتها ٨٥٠,٠٠٠ مائـ متر مربـع



Certified True Copy
From The Original document
Egymark for Certified Translation Services

(تسعة وثلاثون مليون وثمانمائة وخمسة وثمانون ألف متر مربع) لاستحالة تسليمها للمحتكمين.

**ثانياً:** إلزام الشركة المحتكم ضدها ومن يخلفها متضامنين بدفع مبلغ وقدره (٣,٥٨٩,٦٥٠,٠٠٠ ريال سعودي) (ثلاثة مليارات وخمسمائة وتسعه وثمانون مليون وستمائة وخمسون ألف ريال سعودي) سنوياً تعويض مقابل القيمة الايجارية لحق الاستعمال منذ عام ٢٠٠٥ تاريخ نهاية العقد وحتى تمـام التنفيذ وعليـه فتكـون **القيمـة الاجماليـة عـن عشـر سـنوات** (٣٥,٨٩٦,٥٠٠,٠٠٠ ريال سعودي) (خمسة وثلاثون مليار وثمانمائة وستة وتسعون مليون وخمسمائة الف ريال سعودي)

**ثالثاً:** إلزام الشركة المحتكم ضدها ومن يخلفها متضامنين بدفع مبلغ وقدره (٣,٥٨٩,٦٥٠,٠٠٠ ريال سعودي)( ثلاثة مليارات وخمسمائة وتسعه وثمانون مليون وستمائة وخمسون الف ريال سعودي) سنويا وعليه فتكون **القيمـة الاجماليـة عـن عشـر سـنوات** (٣٥,٨٩٦,٥٠٠,٠٠٠ ريال سعودي) (خمسة وثلاثون مليـار وثمانمائة وستة وتسعون مليون وخمسمائة الف ريال سعودي) تعويض مقابل حق استغلال جزء قدره ٣,٢٠٠,٠٠٠(ثلاثة مليون ومائتان ألف متر مربع) ويمثل مساحة ميناء راس تنورة وهو القدر المتبقي استغلاله من الأرض منذ عام ١٩٤٩ تاريخ عقد الايجار وحتى تمام التنفيذ لعدم اشتمال عقد الايجار على منح المحتكم ضدهم سلطة الاستغلال.

**رابعاً:** إلزام الشركة المحتكم ضدها ومن يخلفها متضامنين بدفع مبلغ وقدره (١٠٠٠,٠٠٠,٠٠٠ ريال سعودي) (مليار ريال سعودي) مقابل التعويضـات الجابرة للأضرار المادية والمعنوية .

**خامساً:** بطلان ايه تصرفات تمت بناء على وجود الشركة في الارض منذ تاريخ عقد الايجار وحتى تمام التنفيذ.

**سادساً:** سريان الحكم بكافة اركانه في مواجهة خلف الشركة المحتكم ضدها.

**سابعاً:** إلزام الشركة المحتكم ضدها بسداد كامل اتعاب التحكيم والمحاماة.

## رابعاً / ثانياً - مذكرات ومستندات ودفاع المحتكم ضدهم وطلباتهم

### ١- مذكرات ودفاع المحتكم ضدهم ومستنداتهم

لـم يحضـر المحـتكم ضـدهم اي مـن جلسـات التحكيـم رغـم اعلانهـم بكـل الجلسـات ومحاضـرها ومـا قـدم فيهـا مـن مذكرات دفـاع ومستندات ، الا انهـم قـد



Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٣١

قــدمـوا مــذكرة بــدفاعهم ، ولــم يـقـدمـوا ايـة مسـتندات مـزيـدة لـدفاعهم . وتـلـك المـذكرات هي : -

- بتاريخ ٢٠١٤/٧/٥ م قـدم مكتـب الإبراشـي وشـركاه للمحـاة مـذكرة بـدفاع المحـتكم ضـدهم ، اعتـرض فيـه عـلى مقبولـية المطالبـات واختصـاص هيئـة التحكيم التـي سـيتم اختيارهـا طبقـا لاخطـار التعيين الصـادر بتاريخ ٢٠١٤/٧/٥ م واستند المكتـب المـذكور فـي هـذا الـدفع عـلى ان الاخطـارات المرسـلة للمحـتكم ضـدهم لـم تحـدد مـن هـم المـدعون المعروضـون فـي هـذا التحكيم ، وعـلى ان المحتكمين قـد استعملو أوراق مركـز التحكيم الـدولي فـي مراسـلاتهم ، ويطلـب مـن المركـز المـذكور التاكيـد عـلى حيـاديتـه واسـتقلاله وعـدم نحيـزه لأي طـرف مـن طرفـي النـزاع ، كمـا تمسـك دفـاع المحـتكم ضـدهم فـي هـذه المـذكرة عـلى ان الاخطـارات الـواردة اليـه لـم تحـدد الحقـوق التعاقديـة المزعومـة ولـم يقـدم أي دنـيل عليهـا ، وأضـاف الـدفاع المشـار اليـه انـه لـم يتم تـوفير أي معلومـات اتصـال تخـص المـدعين أو مستشـاريهم القانونيين وكـذلك ان المـدعين لـم يرسـلوا لكيـانـات شـيفرون أي طلـب مسـبب للتحكيم ، واستطرد هـذا الـدفـع أن المـدعين لـم يقـدمـو مـع الاخطـارات عقـد الامتيـاز ١٩٣٣/٥/٣م ولا عقد الايجـار المزعـوم ، واعتـرض الـدفـاع عـلى دخـول كيانـات شـيفرون فـي اتفـاق تحكيم مـع هـؤلاء المـدعين ، ولـم يـتم التوصـلا الـى اتفـاق حـول مكـان التحكيم أو لغتـه أو القواعـد التي تطبـق عليـه ، وان كيانـات شـيفرون لـم تكـن فـي أي وقـت طـرف فـي النـزاع .

وأضـاف دفـاع المحـتكم ضـدهم فـي البنـد رقـم ٩ مـن المـذكرة سـالفة البيـان تحـت عنـوان : " تعيـين محكـم " .. ان كيانـات شـيفرون تقـوم كـاجراء وقـائي ، بترشـيح الاستـاذ الـدكتور محمد عبدالوهاب محكمـا عنهـا مدونة عنوانـه وبريـده الالكتـروني وتليفونـاته .

وتلك المذكرة ممهورة باسم " محمد مدكور "

- بتـاريخ ٢٠١٤/٨/٢١ م ارسـل مكتـب ذو الفقـار وشـركاه للاستشـارات القانونيـة والمحامـاة خطابـا الـى مركـز التحكيـم الـدولي موقعـا مـن الاستـاذ الـدكتور محمد صـلاح الـدين عبد الوهـاب ، المحكـم المعـين مـن قبل المحـتكم





Certified True Copy
From The Original document
Egymark for Certified Translation Service

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٣٢

ضدهم ، كيانـات شـيفرون ، ووافـق فيـه علـى تعيينـه محكمـا عـن المحـتكم ضـدهم ، وطلـب مـن مركز التحكيم الدولي المشار اليه بعض الايضاحات هي :

- توضيـح القواعـد الاجرائيـة والقـانون الموضـوعي واجـب التطبيـق علـى النـزاع
- ارسـال اخطـار التحكيـم ومرفقاتـه ، وأي رد تقـدم بـه المحـتكم ضـدهم ، وايضـاح ولغـة التحكيـم ومقـرة ، وايضـاح مـا اذا كـان الـدكتور أحمـد صـادق القشيري قد وافق على تعيين سيادته محكما عن المحتكمين .

- بتـاريخ ٣١ اغسـطس ٢٠١٤ م أرسـل مكتـب ذو الفقـار وشـركاه للاستشـارات القانونيـة والمحامـاة خطابـا الـى مركز التحكيم الـدولي ممهـورا بتوقيـع الاسـتاذ الـدكتور محمـد صـلاح الـدين عبـد الوهـاب المحكـم المعـين عـن النحـتكم ضـدهم، افـاد بموجبـه أنـه بصـدد الاطـلاع علـى الاخطـار المرسـل لسـيادته مـن مركز التحكيم الـدولي ، وسـيتم اخطـار هـذا المركـز بتعيـين المحكـم المرجـح فـي حينـه بعـد التنسـيق مـع الاسـتاذ الـدكتور أحمـد صـادق القشـيري محكـم المحتكمين
ولم يقدم دفاع المحتكم ضدهم اية مستندات

## ٢- طلبات المحتكم ضدهم

احتوت مذكرات المحتكم ضدهم المشار اليهـا علـى طلـب شـكلي وهـو التمسـك بـأن كيانـات شـيفرون ليسـت طرفـا فـي اتفـاق التحكيم ولا فـي العقـود المطروحـة علـى هيئـة التحكيـم ، وأن مركـز التحكيـم الـدولي غير مختص بهذا النزاع .

<span style="border:1px solid">خامساً : هيئة التحكيم</span>

بعـد الاطـلاع علـى المـذكرات والمسـتندات المودعـة ملـف الـدعوى ، وسـماع المرافعـة الشـفوية ، والمداولـة قانونـا ، أصـدرت هيئة التحكيم الحكم الآتـي :-
ففيمـا يتعلـق بشـكل الـدعوى التحكيميـة الماثلـة ، فـان هيئـة التحكيم سـتتعرض لنطـاق سـريان شـرط التحكيـم الـوارد فـي المـادة )... ( مـن اتفاقيـة الامتيـاز



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٣٣

المبرمــة فيمــا بــين الحكومــة الســعودية وشــركة الزيــت العربيــة الســعودية ( ســتاندارد اويــل اوف كاليفورنيــا ) ، مــن حيــث الاشــخاص ومــن حيــث الموضوع وتفصل فيه .

وكــذلك ســتعرض هيئــة الحكــم لأطــراف الخصومــة التحكيميــة المطروحــة عليها لتحديدهم .

- كمـا ان هيئـة التحكـيم سـتتناول القـانون واجـب التطبيـق علـى اجـراءات وموضـوع هـذه القضـية التحكيميـة ولغـة التحكـيم ومكـان انعقـاد هيئـة التحكيم لتقضي فيهما قبل الفصل في موضوع الدعوى .

فبالنسـبة لسـريان شـرط التحكـيم المشـار اليـه علـى طرفـي التحكـيم ، فيمـا يخـص سـريانه علـى المحتكمـين ، فـان هيئـة التحكـيم تمهـد لقضـائها بعـرض موقف القضاء في هذا الخصوص .

فقـد اسـتقرت أحكـام القضـاء وأحكـام التحكـيم علـى ان شـرط التحكـيم يمتـد الـى كـل شـخص اشـترك فـي تنفيـذ العقـد الـذي تضـمنه ولـم يوقـع عليـه ماديـا ، فاشـترك الشـخص فـي تنفيـذ هـذا العقـد بعـد رضـاء كـاملا منـه وموافقـة علـى شـرط التحكيم الـوارد فيه ( حكم محكمة غرفة التجارة الدولية الصـادر في ٢٣ ســبتمبر ١٩٨٢ م منشــور فــي مجلــة التحكـيم باللغـة الفرنسـية ١٩٨٤ م ص١٣٧) (حكم محكمة اسـتئناف بـاريس الصـادر فـي ٢١ أكتـوبر ١٩٨٣ م ، منشور في مجلة التحكيم باللغة الفرنسية ١٩٨٤ م ص ٩٨ )

( الحكم الصـادر فـي القضـية التحكيميـة رقـم ١٠٩ لسـنة ١٩٨٨ م الصـادر مـن مركـز القـاهرة الاقليمـي للتحكـيم التجـاري الـدولي بجلسـة ١٩٩٩/٣/١١ م مجلـة التحكـــيم العربـــي ١٩٩٩ العـــدد الثـــاني - ص ٢٢٤ - ٠ ، ) ( نقـض مصـري رقـم الطعنـان رقمـي ٤٧٢٩ لسـنة ٧٢ ق و ٤٧٣٠ لسـنة ٧٢ ق جلسـة ٢٠٠٤/٦/٢٢ م س٥٥ ص ٦٣٨ ) ( المبـادئ القانونيـة لمحكمـة الـنقض في التحكيم التجاري نادي القضاة طبعة ٢٠١٤ ص ٥٨ ) .

وقـد أيـد الفقـه هـذا القضـاء حيـث ذهـب الـى ان الاشـتراك فـي تنفيـذ العقـد المتضمن شرط التحكيم مـؤداه تـوافر الارادة الحقيقيـة لأطـراف هـذا العقـد فـي قبـول سـريان الشـرط المـذكور علـى مـن اشـترك فـي تنفيـذه دون ان يوقـع عليـه





Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٣٤

ماديـا ، وفـي ذات الوقـت تـوافر الإرادة الحقيقية للشخص المشـترك فـي التنفيذ ورضـاه بالانضمام الـى شـرط التحكيم وقبولـه بـه ( د/ فتحي والـي . التحكيم بين النظرية والتطبيق طبعة ٢٠٠٧ ص ١٠٠ دار المعارف بالاسكندرية )

وبـانزال مبـدأ مـد شـرط التحكيم الـوارد فـي عقـد الـى شـخص اشـترك فـي تنفيذه علـى واقعات النزاع الماثل يبين بوضوح مـن خـلال الثابـت بـالاوراق ، أن مـورثي المحتكمين قـد اشـتركوا اشـتراكا فعليـا وحقيقيـا فـي تنفيـذ اتفاقيـة الامتيـاز المتضمنة شرط التحكيم فـي مادتهـا الحاديـة والثلاثـين ، حيـث أنهـم قـد تخلـوا للشـركة صـاحبة الامتيـاز عـن اسـتعمال الارض محـل الامتيـاز لكـي تـتمكن تلك الشركة مـن تنفيذ التزاماتهـا عـن عقـد الامتيـاز ، كمـا هـو ثابـت فـي البنـد الخـامس والعشـرين مـن الاتفاقيـة المـذكور وكمـا هـو ثابت فـي العقـد السجل (صـك الملكيـة) رقـم ١٢٤ الجلـد الثـاني عـام ١٣٦٨ هـ ، حيـث لـولا هـذا التخلـي مـا اسـتطاعت الشركة صلاحية الامتياز تنفيذ التزاماتهـا .

وهـذا الاشـتراك الفعلـي والحقيقـي مـن مـورث المحتكمـين فـي تنفيـذ اتفاقيـة الامتيـاز المتضـمنة شـرط التحكيم يـؤدي الـى مـد هـذا الشـرط الـى هـذا المـورث ومنـه الـى ورثتـه ، الامـر الـذي يسـري معـه الشـرط المـذكور علـى المحتكمين ، وتقضـي هيئة التحكيم بذلك دون ذكـره فـي المنطـوق .

و بالنسـبة لسـريان شـرط التحكيم الـوارد فـي المـادة ٣١ مـن اتفاقيـة الامتيـاز المبرمـة فـي ٢٩ يوليـو ١٩٣٣ م بـين الحكومـة السـعودية وشـركة الزيـت العربيـة السـعودية ( سـتاندارد اويـل اوف كاليفورنيـا ) علـى المحـتكم ضـدهم ، فـان الثابـت فـي العقـد السـجل ( صـك الملكيـة ) رقـم ١٢٤ الجلـد الثـاني عـام ١٣٦٨ هـ ، الـذي أفـرغ فيـه حقـوق الشـركة صـاحبة الامتيـاز ، ان الشـركة هـي شـركة الزيـت العربيـة الامريكيـة ، فقـد جـاء بالصـك المـذكور تحـت عنـوان "نقـل شركة الزيت العربية الامريكي" مـا نصـه :

" مقابـل التعـويض الحسـن القيم الـذي سـينفع لنـا نحـن الموقعين أدنـاه لمـا خولونـاك مـن ملك بموجـب الصـك رقـم ١٥٤ /٨ لقطـع الاراضـي الـوارد ذكرهـا بـه - نعطـي وننقـل كـلا عـن نفسـه وورثتـه واوصـيائه وممثليـه الشـرعيين لشـركة الزيـت العربيـة الامريكيـة المشـار اليهـا فـي الملكـك المـذكور أو مـن



Certified True Copy
From The Original document
Daymark for Certified Translation Services

<u>يخلفها ومن تعينه الحق في استعمال وشغل قطع الاراضي المذكورة</u> لكل أغراض الامتياز العربية السعودية في ٤ صفر ١٣٥٢ هـ الموافق ٢٩ يوليو ١٩٣٣ م ورأي اتفاقيات اضافية تلحق بها وتقرر بهذا وثبتت ان حقوق الشركة ( شركة الزيت العربية الامريكية ) في استعمال وشغل الاراضي المذكورة قد جاءت طبقا لمقتضى المادة الخامسة والعشرون من الامتياز المذكور ....... "

وبموجب هذا النص فان شركة ستاندارد اويل اوف كاليفورنيا هي نفسها شركة الزيت العربية الامريكية (أرامكو) أي ان اتفاقية الامتياز مبرمة بين الحكومة السعودية وشركة الزيت العربية السعودية ومن ثم يسري عليها شرط التحكيم الوارد في المادة ٣١/ من تلك الاتفاقية ، ويسري كذلك على من يخلفها .

لما كان ذلك ، <u>وكان الثابت بالموقع الرسمي لشركة شيفرون</u> أنه :

" نظرا لأن شركة الزيت العربية الامريكية قد بدأت قرنها الثاني ، فانها أصبحت إحدى الشركات الكبرى في الولايات المتحدة الامريكية ومالكة للعلامة التجارية " شيفرون" التي أصبحت مشهورة بجميع أنحاء العالم ، وأصبحت شركة شيفرون بحلول ١٩٩٣ م أول شركة نفط غربية كبرى "

، فان مؤدى ذلك ان شركة شيفرون قد نشأت وضمت عدة كيانات منها شركة الزيت العربية الأمريكية (أرامكو) وشركة شفرون العربية السعودية وشركة شيفرون ، حيث أن الثابت بالصك رقم ١٢٤ الجلد الثاني ١٣٦٨ هـ أن ملاك الارض محل هذا الصك قد أعطوا شركة الزيت العربية الامريكية أو من يخلفها حق استعمال الارض محل الصك المذكور ، فان كيانات شيفرون ، باعتبارها تشمل الكيانات المذكورة تعد طرفا في شرط التحكيم الوارد في المادة ٣١/ من الامتياز المشار اليه .

فمن المستقر عليه وقضاء ان شرط التحكيم الذي يرد في عقد مبرم مع شركة ما يمتد الى الشركات الأخرى المرتبطة بها والتي تدخل ضمن كياناتها إذا كانت كل تلك الكيانات قد اشترك في تنفيذ هذا العقد .





Certified True Copy
From The Original document
Egymark for Certified Translation Services

( د. محمد نور شحاتة . مفهوم الغير في التحكيم . طبعة ٢٠٠١ م ص ١٣٠ دار النهضة العربية )

(حكم محكمة النقض الفرنسية الصادر في ٢٧ مارس ٢٠٠٧ م ، ومنشور في المجلة الفصلية للقانون التجاري ٢٠٠٧ ص ٦٧٧ )

وقد أقرت كيانات شيفرون صراحة بأنها طرف أصيل في التحكيم الماثل ، حيث أنها حررت توكيلا بتاريخ ١٥ أكتوبر ٢٠١٤م تحرر عنه محضر ايداع يحمل رقم ١٤٠٨/أ بتاريخ ٢ فبراير ٢٠١٥م توثيق شيرا ، لمجموعة من المحامين بمكتب الإيراشي وشركاه ، وجاء نص هذا التوكيل على النحو الآتي .. " أنـه في يوم الأربعاء الموافق ١٥ أكتوبر ٢٠١٤م نحن شركة <u>شيفرون كوربوريشن شركة مؤسسة وفقا لقوانين ولاية ديلاوير بالولايات المتحدة الأمريكية (الموكل) وتعمل في مجال الطاقة في الولايات المتحدة الأمريكية ومقرها الرئيسي في ٦٠٠١طريق بولينجق كانيون سان رومانو سي أيه ٩٤٥٨٣ ٢٢٢٤ الولايات المتحدة الأمريكية ويمثلها السيد / كاري ايش اندريش بصفته السكرتير المساعد المفوض قانونا باصدار هذا التوكيل وقـد وكلنـا وأنبنـا السـادة الأسـاتذة / أشـرف حسـن زكـي الإيراشـي والأستاذ / طارق محمد ياسر جاد الله والأستاذ / محمد أحمد هاني مدكور والأستاذة / ديمية زياد عبد القتاح هيجر والاستاذة / دينا طارق محمد الجنزوري والاستاذ حاتم حسن طلبة محمد بمكتبهم الكائن ٤ش السد العالي ، الدقي ، الجيزة ١٢٣١١ ، مصر مجتمعين أو منفردين في تمثيل الموكل والحضور نيابة عنه في الدعوى التحكيمية المقامة من القرشي وآخرين ضد أرامكو وشفرون وشيفرون العربية السعودية وآخرين ...."</u>

وتوكيل كيانـات شيفرون لمحامين يمثلـونهم ويحضـرون عنهم فـي الـدعوى التحكيمية المقامة من القرشي وآخرين ضد أرامكو وشيفرون وشيفرون العربية السعودية وآخرين يعني أمرين هما :

الأمر الأول : - أن كيانات شيفرون قد أقرت صراحة بأنها طرف أصيل في التحكيم الماثل ، لأن إصدار توكيل منها لمحامين يمثلونهم ويحضروا عنهم في تلك الدعوى التحكيمية لا يعني سوى أن تلك الكيانات تقر وتعترف






بأنهـا طـرف أصـيل فـي الـدعوى التحكيميـة المـذكورة ، لأنـه وفقـا للمبـادئ المستقرة فـي التقاضـي تحكيمـيا لا يجـوز التـدخل أو الأدخـال فـي التحكـيم ويقتصـر الحضـور فـي القضـايا التحكيميـة حصـراً علـى أطـراف شـرط التحكـيم ويقصـد بكيانـات شـيفرون كمـا أوضـحت هيئـة التحكـيم سـلفا هـي شـيفرون الأمريكية وشيفرون شيفرون العربية السعودية وأرامكو .

الأمـر الثـاني :- أن هـذا التوكيـل يكلـف المحـامين بالحضـور فـي القضـية التحكيميـة المـذكورة والمرافعـة عـن كيانـات شـيفرون والتـي مـن بينهـا أرامكـو وشـيفرون الأمريكيـة وشـيفرون العربيـة السـعودية طبقـا للـنص الـوارد بالتوكيـل المنكور ، لأن تلك الدعوى مرفوعة ضدهم جميعا .

وهـذا يعنـي أن تلـك الكيانـات هـم ذو صـفة أصـيلة كمحـتكم ضـدهم فـي هـذه الدعوى التحكيمية .

وبالابتنـاء علـى مـا سـبق ، فـان شـركة شـيفرون بكياناتهـا ( كيانـات شـيفرون ) قـد أصـبحت طرفـا أصـيلا فـي شـرط التحكـيم الـوارد فـي المـادة / ٣١ مـن اتفاقيـة الامتيـاز الموقعـة فـي ٢٩ يوليـو ١٩٣٣ م ، ويسـري عليها ، وتلتزم به ، وتقضي هيئة التحكيم بذلك دون ذكره في منطوق الحكم

وهـذا القضـاء يعـد ردا علـى دفـع شـركة شـيفرون الـوارد بمـذكرتها المرسـلة الـى مركـز التحكيم الـدولي بتـاريخ ٢٠١٤/٧/٥م والتـي تـدعي فيهـا بأنهـا ليسـت طرفـا فـي أي عقـد مـن العقـود المطـروح فـي التحكـيم ولا طرفـا فـي شرط التحكيم المشار الية .

وتقضي هيئة التحكيم برفض هذا الدفع دون الحاجة الى تكرار هـذا القضـاء في منطوق الحكم .

وفيمـا يتعلـق بتحديد أشـخاص المحتكمين فـان الثابـت فـي " صـك الملكيـة" ١٢٤ الجلـد الثـاني لعـا ١٣٦٨ هـ أن معـالي الشـيخ حمـد السـليمان الحمـدان قـد تنـازل عمـا يخصـه مـن الأراضـي المـذكورة فـي هـذا الصـك لأخيـه الشيخ عبدالله السليمان الحمدان بموجب الصك الصـادر مـن كاتـب عـدل مكة رقم ٨٦٥ خ في ١٣٧٥/٧/٨ هـ




Certified True Copy
From The Original document
Denmark for Certified Translation Services

وبذلك أصبح ثلاثة أرباع الأرض محل الصك رقم ١٢٤ الجلد الثاني عام ١٣٦٨هـ مملوكة للشيخ عبدالله السليمان الحمدان والربع الباقي مملوك لخالد أبو الوليد القرقني ( مورث المحتكمين ) ، الأمر الذي أصبح معه المحتكمين في هذا التحكيم هم ورثة المرحوم خالد أبو الوليد القرقني وورثة المرحوم عبدالله السليمان الحمدان

وقد قدم المحتكمون بيانا تفصيليا كورثة للمرحوم عبدالله السليمان وورثة المرحوم خالد وقدمو كذلك صكوك باعلامات الوراثة الشرعية التي تثبت ميراثهما وحضورهم بأنفسهم وبصفاتهم وقدموا توكيلات الحضور في هذا التحكيم ، وجميع المحتكمين مذكورين بأسمائهم في صدر هذا الحكم ، ومرفق كل ما يخصهم من بيانات

اما عن اختصاص مركز التحكيم الدولي بنظر النزاع الماثل ، فقد اتفق طرفا النزاع على اختصاصه حيث قامت الشركة المحتكم ضدها بتعيين محكما لها هو الاستاذ الدكتور محمد صلاح عبد الوهاب وقد قبل سيادته هذا التعيين ومما يؤكد هذه الواقعة من قبل المحتكم ضدهم أن موافقة سيادته وردت على أوراق مكتب المحاماة وهو مكتب ذو الفقار وشركاه وهو محامي المحتكم ضدهم ، ولا ينال من ذلك الاعتراضات التي أبداها دفاع المحتكم ضدهم في مذكرته المرسلة لمركز التحكيم الدولي بتاريخ ٢٠١٤/٧/٥م

فضلا عن أن تعيين الاستاذ الدكتور محمد صلاح الدين عبد الوهاب محكما من قبل المحتكم ضده وقبوله هذا التعيين وطلب مستندات من مركز التحكيم الدولي ، يعد تنازلا منهم عن كل تلك الاعتراضات ، فان الاعتراضات المشار اليها نعلقت جميعها بالادعاء بأن المحتكم ضدهم ليس طرفا في شرط التحكيم ولا في أي من العقود المطروحة على هيئة التحكيم ، وسبق وان رفضت هيئة التحكيم كل هذه الدفوع فتحيل على قضائها السابق دون الحاجة لتكراره في المنطوق

وفيما يتعلق بتحديد القانون واجب التطبيق على الاجراءات وعلى الموضوع فالأمر مستقر في جميع التشريعات المقارنة على ان الامر يتوقف







Certified True Copy From The Original document Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٣٩

على اتفاق الاطراف ، وفي حالة اختلافهم تقوم هيئة التحكيم بتحديد هذين القانونين .

فتقضي المادة / ٢٥ / فقرة ٢ من نظام التحكيم السعودي الصادر بالمرسوم الملكي رقم (م/٣٤) وتاريخ ١٤٣٣/٥/٢٤ هـ " بأنه اذا لم يوجد اتفاق على اجراءات التحكيم كان لهيئة التحكيم أن تختار اجراءات التحكيم التي تراها مناسبة .

" لما كان ذلك ، ولم يتفق الطرفان ، على الاجراءات ، وقامت هيئة التحكيم باختيار الاجراءات الواردة في نظام التحكيم السعودي المذكور مكملة بلوائح مركز التحكيم الدولي باعتبارها الاجراءات الانسب لحكم هذا النزاع حيث أن اطرافه سعودي الجنسية والارض محل النزاع تقع بالمملكة العربية السعودية ، فان قرارها بهذا الخصوص قد جاء متفقا وصحيح القانون ، حيث ارتأت الهيئة أن تلك القواعد الاجرائية مناسبة .وكذلك تقضي المادة ٢٨ / من نظام التحكيم السعودي المشار اليه بانه في حالة عدم اتفاق الطرفين على مكان التحكيم فان هيئة التحكيم هي التي تعين هذا المكان، وقد عينت هيئة التحكيم مدينة القاهرة بجمهورية مصر العربية كمكان للتحكيم ، فجاء قرارها في هذا الخصوص متفقا وصحيح في حكم القانون .

أما عن تحديد لغة التحكيم فان الماد / ٢٩ من نظام التحكيم السعودي تقضي بأن التحكيم يجري باللغة العربية ما لم تقرر هيئة التحكيم أو يتفق طرفا التحكيم على لغة أخر ،

ولما كان ذلك ، وجرى التحكيم الماثل باللغة العربية فقد جاء ذلك متفقا مع الاصل العام الوارد في المادة / ٢٩ المشار اليها التي قضت بأن الاصل العام في لغة التحكيم هي اللغة العربية

و اما بخصوص تحديد القانون واجب التطبيق علي موضوع التحكيم الماثل فقد قررت هيئة التحكيم تطبيق احكام القانون السعودي نظراً لعدم اتفاق طرفا التحكيم على هذا القانون، باعتبار ان تلك الاحكام هي الاكثر اتصالاً بموضوع النزاع ، حيث ان المحتكمين و المحتكم ضدهم سعودي الجنسية و




[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤٠

يقع محل النزاع بالمملكة العربية السعودية ، و ذلك اعمالا لحكم المادة / ٣٨ فقرة ٣ من نظام التحكيم السعودي و التي تنص علي انه :-

" اذا لم يتفق طرفـا التحكيم علي القواعد النظامية و اجبة التطبيق علي موضوع النزاع طبقت هيئة التحكيم القواعد الموضوعية في النظام الذي تري انه الاكثر اتصال بموضوع النزاع .."

و بشأن اجراءات الدعوي التحكيمية الماثلة ، فان هيئة التحكيم تقرر ان تلك الاجراءات قد تمت وفقاً لصحيح القانون ، حيث انه من المقرر قانونـاً و المستقر عليه قضاء انه في حالة تغيير احد اعضاء هيئة التحكيم و استبداله بمحكم اخر ابان فترة حجز الدعوي للحكم ، يتعين علي هيئة التحكيم ان تقرر فتح باب المرافعة اعمالاً للقاعدة القانونية المنصوص عليها في جميع التشريعات المقارنه ، و التي تقضي بان من يصدر الحكم يجب ان يكون قد سمع المرافعة ، و هذا حكم نص عليه نظام المرافعات الشرعية السعودي الصادر بالمرسوم الملكي ( رقم م / ١ ) و تاريخ ١٤٣٥/٣/٢٢هـ في المادة ١٦٠ منه حيث يجري نصها علي انه : " اذا تعدد القضاة فتكون المداوله في الاحكام سرية ، و باستثناء ما ورد في المادة / ٦٢ من هذا النظام ، لا يجوز ان يشترك في المداولة غير القضاه الذين سمعوا المرافعة "

و كذلك فقد ورد هذا الحكم في المادة / ١٦٧ من قانون المرافعات المصري ، اذ تنص علي انه : " لا يجوز ان يشترك في المداولة غير القضاه الذين سمعوا المرافعة و الا كان الحكم باطلاً "

و بانزال هذا المبدأ المقرر قانونـا و المستقر عليه فقهـا و قضاء علي واقعات النزاع الماثل ، يبين ممـا هـو ثابت في اوراق الـدعوي الماثلـه و مـا دون بمحضـــر جلســـتها المـــؤرخ ٢٠١٥/٥/١٨م ، ان السيد المستشـــار عبد الناصر محمد عبد الحميد خطاب قد ارسل انذارا الي مركز التحكيم الدولي قبل النطق بالحكم في الدعوي التحكيمية الماثلة يخطره بموجبه بانه تنحي عن نظر تلك الدعوي و انه لم يتداول بشأنها مـع اعضاء هيئة التحكيم الاخرين و لم يتفق معهم علي شكل الحكم و مضمونه لا سيما و ان احد اعضاء الهيئة اردني الجنسية و يقطن في الاردن خارج جمهورية مصر



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤١

العربيـة ، الأمـر الـذي كـان يتعين معـه علـي هيئـة التحكيم ان تقـرر فتح بـاب المرافعـه و عـدم اصـدار الحكـم لكـي يسـمع المحكم البـديل المرافعـة ، خصوصـا و ان هـذا المحكـم البـديل و هـو الأسـتاذ الـدكتور ابـو العـلا علـي ابـو العـلا النمـر ، قـد تـم تعيينـه و اقـر بقبولـه المهمـة و بحيدتـه و اسـتقلاله قبـل انعقـاد جلسـة ٢٠١٥/٥/١٨ م و علمـــــت هيئـــــة التحكـــــيم و رئيســــها بكـــل ذلـــك . الا ان رئيـس هيئـة التحكيم قد خـالف القاعـدة الأمـره الـوارده فـي جميـع قـوانين المرافعـات المقارنـة فـي هـذا الخصـوص و اصـدر الأسـتاذ الـدكتور رئيـس هيئـة التحكيم الحكـم رغـم اطلاعـه علـي الانـذار المرسـل مـن السـيد المستشـار عبدالناصـر محمـد خطـاب و السالف الاشـارة عليـه و رغـم علمـه بتعيـين المحكم البـديل و قبولـه للمهمـه قبـل جلسـة ٢٠١٥/٥/١٨م ، و كـل تلـك الوقـائـع ثابتـه بمحضـر الجلسـة المـؤرخ ٢٠١٥/٥/١٨م و الممهـور بتوقيـع جميـع اعضـاء الهيئـة بمـن فـيهم المحكـم المعـين عـن المحـتكم ضـدهم و هـو الأسـتاذ الـدكتور ابـوالعلا النمـر ، و مـن ثم فقد اصبح الحكم الذي اصدره السيد الاستاذ الـدكتور رئيـس الهيئـة منفـرداً هـو و العـدم سـواء ولا ينـتج اي اثـر قـانوني و لا تنتهـي بصـدورة اجـراءات التحكـيم ، هـذا فضـلا عـن ان هـذا الحكـم لـم يـتم ايداعـه بمركـز التحكـيم الـدولي وفقـاً للاجـراءات المتبـعه قانونـا لايـداع احكـام التحكيم و المنصوص عليها في المادة ٤٤ من نظام التحكيم السعودي سالف الذكر
هـذا و قـد قـام المحكمـان الاخـران بعقـد جلسـة ٢٠١٥/٥/١٨م اختـارا فيهـا المحكـم المرجح و هـو السـيد الاسـتاذ محمـد الشـحات السـيد حسـاتين ، المحـامي بـالنقض ، وعقـدت هيئـة التحكـيم بكامـل تشـكيلها الجديـد جلسـة بتـاريخ ٢٠١٥/٥/١٩ قـررت فيهـا فـتح بـاب المرافعـة لجلسـة ٢٠١٥/٥/٢٧م ، و بتلـك الجلسـة قـررت هيئـة التحكـيم قفـل بـاب المرافعـه و حجـز الـدعوي للحكـم لجلسة ٢٠١٥/٦/٣م

و بالتـالي و بالبنـاء علـي كل مـا سبق فـان هيئـة التحكيم تقضـى بصـحة اجراءات سـير خصـومة التحكيم و اختصاصـها بنظـر الـدعوي التحكيمـية الماثلـه نفـاذاً لمبـدأ الاختصـاص بالاختصـاص ، و الـذي بموجبـه تخـتص هيئـة التحكـيم فـي الفصل في اختصاصها ، و ذلك حسبما سيرد في المنطوق .



و امـا بخصـوص عـدم حضـور المحـتكم ضـدهم جلسـات التحكيـم ، فـان الثابـت بالمستندات المقدمـه و المودعـه ملـف الـدعوي انهـم قـد اعلنـوا اعـلان قانونيـاً صحيحاً بجميع تلك الجلسات و المستندات المقدمة فيها و لم يحضروا .

و حيث تـنص المـادة ٢/٣٤ مـن نظـام التحكيـم السـعودي واجـب التطبيـق علـي اجـراءات هـذا التحكيـم ، علـي انـه : " اذا لـم يقـدم المـدعي عليـه جوابـاً مكتوبـاً بدفاعـه وفقـاً للفقـرة ٢ مـن المـادة ثلاثين مـن هـذا النظـام وجـب علـي هيئـة التحكيـم الاسـتمرار فـي اجـراءات التحكيـم مـا لـم يتفـق طرفـا التحكيـم علـي غيـر ذلـك . واذا تخلـف احـد الطـرفين عـن حضـور احـدي الجلسـات - بعـد تبليغـه - او عـن تقديم مـا طلبـه منـه مـن مسـتندات ، جـاز لهيئـة التحكيـم الاسـتمرار فـي اجـراءات التحكيـم و اصـدار حكـم فـي النـزاع اسـتناد الـي عناصـر الاثبـات الموجـوده امامهـا ." فاعمـالا لهـذا الـنص فـان هيئـة التحكيـم ، بعـد ان تأكـدت مـن اعـلان المحـتكم ضـدهم اعلانـا صـحيحاً بجميـع جلسـات التحكيـم و بكـل مـا قـدم فيهـا مـن مسـتندات ، قـررت الاسـتمرار فـي اجـراءات التحكيـم و اصـدار الحكـم فيـه اسـتناد لعناصـر الاثبـات الموجـوده امامهـا . و مـن ثـم تقضـي هيئـة التحكيـم بصـحة اسـتمرارها فـي الاجـراءات و بسـلامة اسـتنادها لعناصـر الاثبـات الموجـوده امامهـا دون الحاجه لذكر ذلك في المنطوق

و فيمـا يخـص قابليـة النـزاع الماثـل للتحكيـم ، فـان الطلبـات المبـداه مـن المحتكمـين تتمثـل فـي التعـويض عـن عـدم اسـتردادهم لـلارض محـل هـذه الـدعوي و عـدم سـداد المحـتكم ضـدهم الاجـرة المسـتحقة عليهم نظيـر استعمالهم لتلـك الارض ، و هـي مطالبـات ماليـة يجـوز الصـلح فيهـا ، و بالتـالي يجـوز فيهـا التحكيـم عمـلاً بحكـم المـادة ٢/ مـن نظـام التحكيـم السـعودي التـي تـنص علـي انـه : " لا تسـري احكـام هـذا النظـام علـي المنازعـات المتعلقـة بـالاحوال الشخصـية و المسـائل التـي لا يجـوز فيهـا الصـلح " . و بمفهـوم المخالفـه فـان المسـائل الـذي يجوز فيها الصلح يجوز فيها التحكيم .

امـا بالنسـبة للطلـب الخـامس مـن طلبـات المحتكمـين ، و المتمثـل فـي طلـب بطلان ايـة تصرفـات تمـت بنـاء علـي وجـود الشـركة فـي الارض منـذ تـاريخ عقـد الايجـار و حتـي تمـام التنفيـذ ، فهـذا الطلـب يتعلـق بحقـوق عينيـة عقاريـة لا



Certified True Copy
From The Original document
Reymark for Certified Translation Services

يجـوز الصـلـح فيهـا ، و بالتـالي لا يجـوز التحكـيـم بشـأنها ، و تقـضـي هيئـة التحكيم بعدم قبول هذا الطلب حسبما سيرد في المنطوق

امـا عن موضوع الدعوي و الطلبات المقدمه فيها ، فـان المطروح علـي هيئـة التحكيم بشـأن هذا الموضوع و تلك الطلبات هو التعويض عن اخلال المحتكم ضـدهم بالتزامـاتهم الـوارده فـي عقدين همـا :- عقد ملكية المحتكمـين للـارض محل الدعوي الماثله ، و عقد الايجار المبرم بينهم و بين المحتكم ضدهم

و هيئـة التحكيم تفصـل اولاً فـي وجود هذين العقدين و مدي صحتهما قبل ان تفصل في الطلبات المقدمه من المحتكمين و المتعلقه بهذين العقدين

فبالنسـبة لعـقـد الايجـار المـذكور ، فهـو مـن العقـود الرضـائية التـي لـم تسـتلزم احكـام الشـريعة الاسلامية افراغـه فـي شـكل معـين ، و مـن ثـم فانه يجوز اثباتـه بكافة طـرق الاثبـات ، و الثابت بالمستندات المودعـة ملف هذه الدعوي ان هذا العقـد موجـود و قـائم و صـحيح و استجمع كـل اركانـه و شـروطه ، حيث ابرم هذا العقـد بـين المحتكمـين و المحتكم ضـدهم فـي صـك ملكيـة الارض المـؤجره رقم ١٢٤ الجلـد الثاني ١٣٦٨هـ ، فقـد جـاء بهـذا الصك و تحـت عنـوان : " نقل لشركة الزيت العربية الامريكية " ما نصه :-

" مقابل التعويض الحسـن القيم الذي سينفع لنـا نحـن الموقعـون ادنـا بمـا خولنـا مـن ملـك بموجـب الصـك رقـم ٨/١٥٤ لقطـع الاراضـي الـوارد ذكرهـا بـه نعطـي و نقـل كـل عـن نفسـه و ورثتـه و اوصـيانه و ممثليـه الشـرعيين بشـركة الزيت العربيـة الامريكيـة الشـركة المشـار اليهـا فـي الصـك المـذكور او مـن يخلفهـا و مـن تعينـه الحـق فـي استعمال و شـغل الاراضـي المـذكورة لكـل اغـراض الامتيـاز العربية السعودية فـي ٤ صفر ١٣٥٢هـ الموافـق ٢٩ يوليـو ١٩٣٣م ، و اي اتفاقيـات اضـافية تلحـق بهـا ، و نقـرر بهـذا و نثبـت ان حقـوق الشـركة المـذكورة فـي استعمال و شـغل الاراضـي المـذكورة قـد جـاءت طبقـاً لمقتضـي المـادة ٢٥ مـن الامتيـاز المـذكور . و بهـذا ايضـاً نوافـق ان نحمـي الشـركة المـذكورة و مـن يخلفهـا و مـن تعينـه مـن جميـع الـدعاوي مـا كـان منهـا و مـاهو كـان او مـا سيكون مـن اي مـدع لملـك او مصـلحة فـي اي مـن قطـع الاراضي المذكورة "



Certified True Copy
From The Original document
Daymark for Certified Translation Services

فهذا النص قد تضمن كل عناصر و بنود عقد الايجار المبرم بين المحتكمين و المحتكم ضدهم من حيث اطرافه و محله و الاجره المستحقة و الالتزمات الملقاه علـــى عـاتق طرفيـــه . فحــدد اطرافـــه و هـــم مورثـو المحتكمـــين ( مؤجرين ) و شركة الزيت العربية الامريكيـة ( مستأجرة ) ، و انتقـل عقـد الايجار المذكور الى المحتكم ضدهم .

و علـى تلك فطرفـا هـذا العقـد همـا مورثو المحتكمين و المحـتكم ضـدهم، و محلـه هـي قطـع الاراضـي المـذكورة فـي صـك الملكية رقم ١٢٤ الجلد الثـاني ١٣٦٨ هـ ، و الاجـره المتفـق عليهـا هـي الاجر الحسن القيم ، و هـي اجره قابلـة للتقـدير ، فمـن المقـرر فـي احكـام الشـريعة الاسـلامية ان الاجـره قـد تكون مقـدره او قابلـة للتقـدير ، امـا مـدة سـريان العقـد فتبـداء مـن تـاريخ ١٩٤٩/٣/٢٠م حسبما ورد فـي صـك الملكية المـذكور و ينتهـي سـنة ٢٠٠٥م و هـي نهايـة مـدة اتفاقـة الامتيـاز . وكـذلك تضـمن عقـد الايجـار المشـار اليـه تحديـد التـزام مورثو المحتكمين بضمان عدم التعرض القانوني للشركة المستأجرة .

كمـا ان جميـع المراسـلات المتبادلـة بـين الحتكمـين والمحـتكم ضـدهم تقطـع بـان سلـفهما هـي شـركة الزيـت العربيـة الامريكيـة ، هـي المسـتأجرة . فقـد أقرت تلـك الشـركة الاخيـرة بصـفتها كمستأجرة فـي العديـد مـن المكاتبـات الصـادرة والموقعة منهـا ، وكل تلك المستندات تـم سردها عندما عرضها هيئة التحكيم للمستندات المقدمة مـن الطرفين ، فضلا عن اقرار جميع الجهات الرسمية فـي المملكة العربية السـعودية بوجـود عقـد الايجـار المشـار اليـه وقيامـه ، وتحيل هيئة التحكيم فـي هـذا الخصوص الـى المسـتندات التـي سـردتها فـي هـذا الحكـم منعا من التكرار .

وعلى ذلك فـان عقـد الايجـار المبـرم بـين مورثي المحتكمين والمحـتكم ضـدهم قـد اسـتجمع كـل عناصـر وجـوده وتـوافرت لـه جميـع الشـرائط الشـرعية والقانونية لصحته .

لما كـان ذلك وكـان عقـد الايجار المذكور قـد ابرم صـحيحا فـي كل اركانـه فـان هيئـة التحكيم تقضـي بصـحته ونفـاذ بنـوده دون ذكـر ذلـك فـي منطـوق الحكـم ، على ان يكون هذا القضاء مكملا ومتمما للمنطوق وجزء لايتجزأ منه .



Certified True Copy
From The Original document
Egymark for Certified Translation Services

## وفيما يتعلق بالطلب الاول للمحتكمين

بشان ملكية المحتكمين لقطع الاراضي محل هذه القضية التحكيمية ، فالثابت بالعقد المسجل ( صك الملكية ) رقم ١٢٤ الجلد الثاني ١٣٦٨ هـ انهم يمتلكون تلك القطع ملكية كاملة ، و طبقا للمراسلات المتعلقة بهذه الملكية المودعة ملف الدعوى ، فالثابت بها ان ملكية المحتكمين لقطع الاراضي المذكورة لا زالت قائمة حتى تاريخه ، فيوجد العديد من المراسلات بين المحتكمين وعدة جهات حكومية بالمملكة العربية السعودية يطالبون بالتعويض عن عدم استردادهم لتلك القطع ، ووجهت تلك الجهات للاطراف ذات الصلة بانهاء وحل هذا الموضوع ، ولكن لم يحدث ذلك . وهناك كتاب صدر من وزير البترول السعودي مؤرخ في ٢٠١٢/٢/٤م ، مودع ملف الدعوى ، لا ينكر فيها ملكية المحتكمين لقطع الاراضي المشار اليها ولا بحقهم في التعويض نتيجة عدم استردادهم لها ، وانما رفض هذا التعويض على سند واحد مذكور صراحة في الكتاب سالف الذكر ، وهو ان التعويض عن هذه القطع من الارض سيكلف الدولة مليارات الريالات.

فملكية المحتكمين لقطع الاراضي محل هذه الدعوى ثابتة بالمستندات ولا منازع لهما في تلك الملكية ونظرا لأن هناك استحالة مطلقة لرد تلك الاراضي للمحتكمين لما أقيم عليها من مباني ونفذ عليها من مشروعات بترولية ضخمة وهائلة ، فقد طلب المحتكمون التعويض عن رد تلك الاراضي اليهم ، وقدروا هذا التعويض وفق طلباتهم الختامية بمبلغ ٣٥,٨٩٦,٥٠٠,٠٠٠ ريال سعودي (فقط خمسة وثلاثون مليار وثمانمائة وستة وتسعون مليون وخمسمائة الف ريال سعودي ) ثمن مساحة قدرها ٣٩,٨٨٥,٠٠٠ متر مربع (تسعة وثلاثون مليون وثمانمائة وخمسة وثمانون الف متر مربع) وحيث لم ينازع أحد في ملكية المحتكمين للمساحة المذكورة ، فتفصل هيئة التحكيم في الثمن المستحق عن تلك المساحة كتعويض لهم عن استرداد هذه المساحة .

وحيث أن المحتكم ضدهم لم يقوموا برد الاراضي المذكورة الى المحتكمين حتى تاريخه ، فانها تكون قد أخلت بالتزاماتها الواردة في عقد الايجار المبرم



Certified True Copy
From The Original document
Egymark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤٦

بينهما بتاريخ ٢١ مارس ١٩٤٩م وتعتبر مغتصبة لهذه الارض ، وتلتزم من ثم بدفع ثمنها .

وحيث أن المادتين ١٧، ١٨ من النظام الاساسي للحكم في المملكة العربية السعودية تقضيان بأن الملكية مصونه لا تمس ، فان طلب المحتكمين بالتعويض عن استردادهم للاراضي المملوكة لهم قد صادف صحيح الشريعة الاسلامية والنظام الاساسي السعودي .

وقد قدم المحتكمون ثلاثة تقارير من خبراء عقاريين بالمملكة العربية السعودية ، مودعة جميعها ملف الدعوى الماثلة ، قدر أحدهم سعر بيع المتر المربع بمبلغ ١٠٠٠ ريال سعودي ، وقدر الثاني هذا السعر بمبلغ ٩٠٠ ريال سعودي ، والثالث قدر السعر بمبلغ ٨٥٠ ريال سعودي . ٠

وتأخذ هيئة التحكيم بالتقرير الذي قدر ثمن المتر المربع بثمانمائة وخمسين ريال سعودي ، وبضرب هذا السعر في اجمالي مساحة الارض البالغ ٣٩,٨٨٥,٠٠٠ متر مربع (تسعة وثلاثون مليون وثمانمائة وخمسة وثمانون الف متر مربع) يكون الثمن الاجمالي الذي يساوي التعويض عن عدم استرداد المساحة المذكورة هو مبلغ ٣٣,٩٠٢,٢٥٠٠٠٠ ريال سعودي ( ثلاثة وثلاثون مليار و تسعمائة و اثنين مليون ومائتين وخمسون الف ريال سعودي ) .

بناءا عليه تقضي هيئة التحكيم بالزام المحتكم ضدهم بأن يؤدوا الى المحتكمين مبلغ وقدره ٣٣,٩٠٢,٢٥٠٠٠٠ ريال سعودي ( ثلاثة وثلاثون مليار و تسعمائة و اثنين مليون ومائتين وخمسون الف ريال سعودي ) تعويضا عن عدم استرداد قطع الارض في محل هذه الدعوى حسبما سيرد في المنطوق .

## وفيما يتعلق بالطلب الثاني للمحتكمين

وبناءا على ما سبق فان هيئة التحكيم تقضي بأحقية المحتكمين في القيمة الايجارية المستحقة لهم في ذمة المحتكم ضدهم ( المستأجر) اعتبارا من سنة ٢٠٠٥ م وحتى تمام السداد ، حيث لم يثبت بالمستندات المقدمة في تلك الدعوى ما يفيد سداد المحتكم ضدهم لتلك الاجرة منذ ٢٠٠٥ م وحتى الآن ،



Certified True Copy From The Original document Ogmark for Certified Translation Services

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤٧

كمـا لـم يـرد دفـاع المحـتكم ضـدهم علـى هـذا الطلـب ، وهـو الامـر الـذي تقضـي
معه هيئة التحكيم بإلزام المحتكم ضدهم بسداد تلك الاجرة عن هذه المدة .

أمـا بخصـوص القيمـة الايجاريـة المسـتحقة للمحتكمـين فـي ذمـة المحـتكم ضـدهم
عـن الفتـرة مـن سـنة ٢٠٠٥ م وحتـى تمـام التنفيـذ فقـد قـدم المحتكمـون تقريـرا
صـادرا مـن مكتـب الابـراج الذهبيـة للتطـوير العقـاري بالمملكـة
( الخبـراء العقـاريين ) ثابـت بـه ان سـعر المتـر المربـع للإيجـار عـن الارض
المـؤجرة هـو حـوالي خمسـة وثمـانون ريـال سـعودي للمتـر المربـع سـنويا واودع
تقريـر آخـر مـن المحتكمـين بهـذا الخصـوص قـدر القيمـة الايجاريـة المـذكورة
بتسـعين ريـال سـعودي للمتـر المربـع سـنويا صـادر مـن مكتـب الخـزيم للخـدمات
العقاريـة ، وقـدموا تقريـرا ثالثـا مـن مكتـب ابـن عشـلان العقـاري قـدر ايجـار
المتـر المربـع بمبلغ مائة ريال سعودي سنويا .

وقـد تـم اعـلان المحـتكم ضـدهم بتلـك التقاريـر الثلاثـة ولـم يـردوا عليهـا ولـم يبـدوا
اية اعتراضات على ما ورد فيها من تقييم للقيمة الايجارية .

وهيئـة التحكـيم إذ تعمـل سـلطتها التقديريـة فـي هـذا الخصـوص باعتبار هـا
الخبيـر الأعلـى فإنهـا تأخـذ بـالتقرير الـذي قـدر القيمـة لإيجاريـة بخمسـة وثمـانين
ريال سعودي للمتر المربع سنويا محمولا على اسبابه .

لمـا كـان ذلـك وكـان اجمـالي المسـاحة المـؤجرة للمحـتكم ضـدهم
تبلـغ ٣٩,٨٨٥,٠٠٠ متـر مربـع ( تسـعة وثلاثـون مليـون وثمانمائة وخمسـة
وثمـانون الـف متـر مربـع ) فـإن اجمـالي الاجـرة المسـتحقة للمحتكمـين فـي ذمـة
المحـتكم ضـدهم عـن مـدة عشـر سـنوات تبـدأ مـن عـام ٢٠٠٥م وحتـى عـام
٢٠١٥م بواقـع خمسـة وثمـانين ريـال سـعودي للمتـر سـنويا فيكـون اجمـالي مبلـغ
الاجـرة المسـتحقة للمحتكمـين فـي ذمـة المحـتكم ضـدهم ٢٣,٣٩٠,٢٢٥,٠٠٠
ريال سـعودي ( فقـط ثلاثـة وثلاثـين مليـار وثلاثمائـة وتسـعون مليـون ومـائتي
وخمسة و عشرون الف ريال سعودي ) ، حسبما سيرد في منطوق الحكم .

## وفيما يتعلق بالطلب الثالث للمحتكمين

أمـا عـن طلـب المحتكمـين الحكـم بـإلزام المحـتكم ضـدهم بـأن يسـددوا للمحتكمـين
مبلـغ وقـدره ٣,٥٨٩,٦٥٠٠٠٠ ريـال سـعودي ( ثلاثـة مليـارات وخمسـمائة



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤٨

وتسعة وثمانون مليون وستمائة وخمسون ألف ريال سعودي ) تعويض مقابل عن استغلال جزء قدره ٣,٢٠٠,٠٠٠ متر مربع ( ثلاثة ملايين ومائتي الف متر مربع ) ويمثل مساحة ميناء رأس تنورة . فإن هيئة التحكيم ترفض هذا الطلب، لأن تلك القطعــة مـن الأرض تـدخل ضمـن المسـاحة الاجماليــة للأراضي المملوكـة للمحتكمين ، ويشمل التعويض عـن استغلالها مـن قبـل المحتكم ضدهم ، والمقضى بها سالفا ، التعويض عن هذا الجزء ، و ان الحكم بـالتعويض عن استغلال هذا الجزء استغلالاً ، يعد ازدواجية للتعويض ، وهو ما ترفضه هيئة التحكيم حسبما سيرد في المنطوق .

## وفيما يتعلق بالطلب الرابع للمحتكمين

و عـن طلب المحتكمين الـزام المحتكم ضـدهم بـان تسـدد لهـم مبلـغ مليـار ريال سـعودي مقابـل التعويضـات الجـابرة للأضـرار الماديـة والمعنويـة ، فتقضـي هيئـة التحكيم برفضـه تأسيسـا على ان المبلغ المقتضى بـه كتعويض على عـن اسـترداد المحتكمين للأراضـي يعـد جـابراً نكـل الأضـرار الماديـة والمعنويـة التـي لحقت بهـم نتيجــة عـدم اسـتردادهم للأراضـي التـي يمتلكونهـا لا سـيما ان قيمـة الاراضي تـم تقديرها بسـعر اليـوم ومـن ثـم تقضـي هيئة التحكيم بـرفض هذا الطلب كما سيرد في المنطوق .

## وفيما يتعلق بالطلب الخامس للمحتكمين

و عـن طلب المحتكمين الحكـم ببطلان ايـة تصـرفات نمـت بنـاءا على وجـود الشـركة فـي الارض منـذ تـاريخ عقـد الايجـار وحتى تمـام التنفيذ ، فتقضـي هيئـة التحكيم بعـدم قبولـه لأنـه مـن المسـائل التـي لا يجـوز فيهـا التحكيم لتعلقهـا بحقـوق عينيـة عقاريـة لا يجوز الصـلح فيهـا ومـن ثـم لا يجـوز التحكيم بشـأنها ، ومـن ثـم تقضـي هيئة التحكيم بعدم قبول هذا الطلب كما سيرد في المنطوق .

## وفيما يتعلق بالطلب السادس للمحتكمين

و عـن طلب المحتكمين الحكـم بسـريان الحكـم الماثـل بكافة اركانـه فـي مواجهـة خلـف الشـركة المحتكم ضـدها ، فهـذا الطلـب لـيس فـي حاجـة لصـدور حكـم مسـتقل بـه لعـدم وجـود خلـف للمحتكم ضـدهم ، وعنـدما يكـون هنـاك خلـف



[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٤٩

لهـم سيسـري علـيهم هـذا الحكـم إعمـالا للقواعـد العامـة فـي إنتقـال
الشـئ محل التحكيم بكل توابعه الـى خلـف مـن صـدر الحكـم ضـده ومن ثـم فـان
هذا الطلب حرياً بالرفض .

## وفيما يتعلق بالطلب السابع للمحتكمين

وعن طلب المحتكمين الحكم بـإلزام المحـتكم ضـدهم بسـداد كامـل أتعـاب التحكيم
والمحامـاة . فتقضـى الهيئـة بـإلزام المحـتكم ضـدهم والمحتكمـون بتحمـل اتعـاب
التحكيم مناصفة . وتقـدر علـى اسـاس (٨/١) ثمن فى المائـة مـن اجمـالى قيمـة
طلبـات المحـتكم  حسـبما سـيرد فى المنطـوق . امـا اتعـاب المحامـاة فيتحمـل كـل
طـرف اتعاب محاميه حسبما سيرد فى المنطوق .





٥٠ { حكم تحكيم صادر من مركز التحكيم الدولي }

## فلهذه الاسباب

### حكمت هيئة التحكيم بما يأتي :

**أولا** : الاختصاص بنظر الدعوى التحكيمية .

**ثانيا** : الــزام المحـتكم ضـدهم بـأن يــؤدوا للمحتكمـين مبلــغ وقــدره ٣٣,٩٠٢,٢٢٥,٠٠٠ ريـال سـعودي ( ثلاثـة وثلاثـون مليـار و تسـعمائة و اثنـين مليون ومائتين وخمسون الـف ريـال سـعودي ) تعـويض عـن عـدم اسـتردادهم لقطـع الاراضـي البـالغ مساحتها ٣٩,٨٨٥,٠٠٠ متـر مربـع (تسـعة وثلاثـون مليون وثمانمائة وخمسة وثمانون الف متر مربع) .

**ثالثا** : الــزام المحـتكم ضـدهم بـأن يــؤدوا للمحتكمـين مبلــغ وقــدره ٣٣,٣٩٠,٢٢٥,٠٠٠ ريـال سـعودي ( ثلاثـة وثلاثـون مليـار وثلاثمائـة وتسـعون مليون ومائتي وخمسة وعشرون الف ريال سعودي ) كقيمـة ايجاريـة مسـتحقة فـي ذمـة المحـتكم ضـدهم لصـالح المحتكمـين منـذ سـنة ٢٠٠٥م وحتـى تـاريخ صدور هذا الحكم .

**رابعا** : رفض الطلب الثالث الوارد بمذكرة الدفاع الختامية للمحتكمين .

**خامسا** : رفض الطلب الرابع الوارد بمذكرة الدفاع الختامية للمحتكمين .

**سادسا** : عدم قبول الطلب الخامس الوارد بمذكرة الدفاع الختامية للمحتكمين .

**سابعا** : رفض الطلب السادس الوارد بمذكرة الدفاع الختامية للمحتكمين .

**ثامنا** : الــزام المحتكمـين والمحـتكم ضـدهم بتحمـل أتعـاب التحكـيم مناصـفة و تقدر علي اساس (٨/١) ثمن في المائة من اجمالي قيمة طلبات المحتكم .

**تاسعا** : الزام كل من المحتكمين والمحتكم ضدهم بتحمل أتعاب محاميه .

**عاشرا** : رفض ما عدا ذلك من طلبات .

### هيئة التحكيم

الاستاذ / محمد ارشيد عبدالله الديري          اد / أبو العلا علي أبو العلا القمر          الاستاذ / محمد الشحات السيد حسانين

المحكم المسمي من المحتكمين          المحكم المعين عن المحتكم ضدهم          رئيس هيئة التحكيم

القاهرة / فى ٣ يونيو ٢٠١٥م الموافق ١٦ شعبان ١٤٣٦ هـ

Certified True Copy
From The Original document
Ranmark for Certified Translation Services

جمهورية مصر العربية
مركز التحكيم الدولي

[ حكم تحكيم صادر من مركز التحكيم الدولي ] ٥١

## <u>محتوى الحكم الصادر</u>

في الدعوى التحكيمية المرفوعة من

ورثة المرحوم السيد / خالد ابو الوليد القرقني وورثة المرحوم الشيخ / عبدالله السليمان الحمدان

( محتكمون )

<u>ضــــــد</u>

كيانات شيفرون ( أرامكو ، شيفرون الأمريكية ، شيفرون العربية السعودية )

( محتكم ضدهم )

| رقم الصفحة | المحتوي |
|---|---|
| ١ | ديباجة الحكم |
| ٧ | أولاً : الوقائع |
| ١٠ | ثانياً : الاجراءات |
| ٢٢ | ثالثاً : إتفاق التحكيم |
| ٢٣ | رابعاً : مذكرات و دفاع و مستندات الخصوم |
| ٢٣ | ١- مذكرات المحتكمين ودفاعهم |
| ٢٥ | ٢- مستندات المحتكمين |
| ٢٩ | ٣- طلبات المحتكمين |
| ٣٠ | رابعاً / ثانياً - مذكرات ومستندات ودفاع المحتكم ضدهم وطلباتهم |
| ٣٠ | ١- مذكرات ودفاع المحتكم ضدهم ومستنداتهم |
| ٣٢ | ٢- طلبات المحتكم ضدهم |
| ٣٢ | خامساً : هيئة التحكيم |
| ٥٠ | المنطوق |

القاهرة / في ٣ يونيو ٢٠١٥م الموافق ١٦ شعبان ١٤٣٦



Certified True Copy
From The Original document
Baymark for Certified Translation Services

