UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)
*Waleed Bin Khalid Abu Al-Waleed Al-Qarqani, et. al., v. Chevron Corporation, et. al.*
Case Number: 4:18-cv-03297-JSW

# EXHIBIT G

August 30, 2018 Legal Retainer by and Between Gibson, Dunn & Crutcher, LLP's Partner and
September 7, 2018 Form NSD-3 Registration with the U.S. State Department to Serve as Agent of Saudi Embassy



CHUNG, MALHAS & MANTEL
A PROFESSIONAL LIMITED LIABILITY COMPANY

Received by NSD/FARA Registration Unit 09/07/2018 6:18:49 PM

| | |
|---|---|
| U.S. Department of Justice<br>Washington, DC 20530 | OMB No. 1124-0006; Expires May 31, 2020<br>**Exhibit A to Registration Statement**<br>**Pursuant to the Foreign Agents Registration Act of 1938, as amended** |

INSTRUCTIONS. Furnish this exhibit for EACH foreign principal listed in an initial statement and for EACH additional foreign principal acquired subsequently. The filing of this document requires the payment of a filing fee as set forth in Rule (d)(1), 28 C.F.R. § 5.5(d)(1). Compliance is accomplished by filing an electronic Exhibit A form at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required by the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 et seq., for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide this information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .49 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

1. Name and Address of Registrant
   Gibson, Dunn & Crutcher LLP
   333 South Grand Avenue, Los Angeles CA 90071

2. Registration No.
   6589

3. Name of Foreign Principal
   Embassy of the Kingdom of Saudi Arabia

4. Principal Address of Foreign Principal
   601 New Hampshire Avenue, NW
   Washington, DC 20037

5. Indicate whether your foreign principal is one of the following:
   ☒ Government of a foreign country [1]
   ☐ Foreign political party
   ☐ Foreign or domestic organization: If either, check one of the following:
      ☐ Partnership     ☐ Committee
      ☐ Corporation     ☐ Voluntary group
      ☐ Association     ☐ Other (specify) _____
   ☐ Individual-State nationality _____

6. If the foreign principal is a foreign government, state:
   a) Branch or agency represented by the registrant
      Embassy of the Kingdom of Saudi Arabia
   b) Name and title of official with whom registrant deals
      Ambassador Prince Khalid bin Salman bin Abdulaziz, Ambassador to the United States

7. If the foreign principal is a foreign political party, state:
   a) Principal address
      N/A
   b) Name and title of official with whom registrant deals
   c) Principal aim

---

[1] "Government of a foreign country," as defined in Section 1(e) of the Act, includes any person or group of persons exercising sovereign de facto or de jure political jurisdiction over any country, other than the United States, or over any part of such country, and includes any subdivision of any such group and any group or agency to which such sovereign de facto or de jure authority or functions are directly or indirectly delegated. Such term shall include any faction or body of insurgents within a country assuming to exercise governmental authority whether such faction or body of insurgents has or has not been recognized by the United States.

FORM NSD-3
Revised 05/17

Received by NSD/FARA Registration Unit 09/07/2018 6:18:49 PM

8. If the foreign principal is not a foreign government or a foreign political party:
   a) State the nature of the business or activity of this foreign principal.

   N/A

   b) Is this foreign principal:

   | | |
   |---|---|
   | Supervised by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
   | Owned by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
   | Directed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
   | Controlled by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
   | Financed by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |
   | Subsidized in part by a foreign government, foreign political party, or other foreign principal | Yes ☐ No ☐ |

9. Explain fully all items answered "Yes" in Item 8(b). *(If additional space is needed, a full insert page must be used.)*

   N/A

10. If the foreign principal is an organization and is not owned or controlled by a foreign government, foreign political party or other foreign principal, state who owns and controls it.

    N/A

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit A to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit A | Name and Title | Signature |
|---|---|---|
| 9/7/18 | Amir C. Tayrani, Partner | [signed] |

OMB No. 1124-0004; Expires May 31, 2020

**U.S. Department of Justice**
Washington, DC 20530

**Exhibit B to Registration Statement Pursuant to the Foreign Agents Registration Act of 1938, as amended**

INSTRUCTIONS. A registrant must furnish as an Exhibit B copies of each written agreement and the terms and conditions of each oral agreement with his foreign principal, including all modifications of such agreements, or, where no contract exists, a full statement of all the circumstances by reason of which the registrant is acting as an agent of a foreign principal. Compliance is accomplished by filing an electronic Exhibit B form at https://www.fara.gov.

Privacy Act Statement. The filing of this document is required for the Foreign Agents Registration Act of 1938, as amended, 22 U.S.C. § 611 *et seq.*, for the purposes of registration under the Act and public disclosure. Provision of the information requested is mandatory, and failure to provide the information is subject to the penalty and enforcement provisions established in Section 8 of the Act. Every registration statement, short form registration statement, supplemental statement, exhibit, amendment, copy of informational materials or other document or information filed with the Attorney General under this Act is a public record open to public examination, inspection and copying during the posted business hours of the Registration Unit in Washington, DC. Statements are also available online at the Registration Unit's webpage: https://www.fara.gov. One copy of every such document, other than informational materials, is automatically provided to the Secretary of State pursuant to Section 6(b) of the Act, and copies of any and all documents are routinely made available to other agencies, departments and Congress pursuant to Section 6(c) of the Act. The Attorney General also transmits a semi-annual report to Congress on the administration of the Act which lists the names of all agents registered under the Act and the foreign principals they represent. This report is available to the public in print and online at: https://www.fara.gov.

Public Reporting Burden. Public reporting burden for this collection of information is estimated to average .33 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to Chief, Registration Unit, Counterintelligence and Export Control Section, National Security Division, U.S. Department of Justice, Washington, DC 20530; and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, DC 20503.

| 1. Name of Registrant | 2. Registration No. |
|---|---|
| Gibson, Dunn & Crutcher LLP | 6589 |

3. Name of Foreign Principal
Embassy of the Kingdom of Saudi Arabia

Check Appropriate Box:

4. ☒ The agreement between the registrant and the above-named foreign principal is a formal written contract. If this box is checked, attach a copy of the contract to this exhibit.

5. ☐ There is no formal written contract between the registrant and the foreign principal. The agreement with the above-named foreign principal has resulted from an exchange of correspondence. If this box is checked, attach a copy of all pertinent correspondence, including a copy of any initial proposal which has been adopted by reference in such correspondence.

6. ☐ The agreement or understanding between the registrant and the foreign principal is the result of neither a formal written contract nor an exchange of correspondence between the parties. If this box is checked, give a complete description below of the terms and conditions of the oral agreement or understanding, its duration, the fees and expenses, if any, to be received.

7. Describe fully the nature and method of performance of the above indicated agreement or understanding.

Registrant is to provide legal advice to the foreign principal in connection with certain proposed legislation, including written analyses for publication. As required, registrant may undertake specific advocacy assignments with regard to the legislation.

FORM NSD-4
Revised 05/17

8. Describe fully the activities the registrant engages in or proposes to engage in on behalf of the above foreign principal.

   See item 7 above.

9. Will the activities on behalf of the above foreign principal include political activities as defined in Section 1(o) of the Act and in the footnote below? Yes ☒ No ☐

   If yes, describe all such political activities indicating, among other things, the relations, interests or policies to be influenced together with the means to be employed to achieve this purpose.

   Registrant's activities may include specific advocacy assignments, including preparation of written materials for publication, with regard to U.S. government officials, members of Congress and their staffs, representatives of media organizations, and other individuals involved in legislative matters in connection with the legal and policy issues raised by certain proposed legislation.

## EXECUTION

In accordance with 28 U.S.C. § 1746, the undersigned swears or affirms under penalty of perjury that he/she has read the information set forth in this Exhibit B to the registration statement and that he/she is familiar with the contents thereof and that such contents are in their entirety true and accurate to the best of his/her knowledge and belief.

| Date of Exhibit B | Name and Title | Signature |
|---|---|---|
| 9/7/18 | Amir C. Tayrani, Partner | [signed] |

Footnote: "Political activity," as defined in Section 1(o) of the Act, means any activity which the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign political party.

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Theodore B. Olson
Direct: 202.955.8668
Fax: 202.530.9575
TOlson@gibsondunn.com

August 29, 2018

Ambassador Prince Khalid bin Salman bin Abdulaziz
Embassy of the Kingdom of Saudi Arabia
601 New Hampshire Avenue, N.W.
Washington, D.C. 20037

Re: *Representation of the Embassy of the Kingdom of Saudi Arabia*

Dear Ambassador:

We are pleased to welcome the Embassy of the Kingdom of Saudi Arabia ("the Embassy") as a client of Gibson, Dunn & Crutcher LLP. This letter and the attached Terms of Retention set forth the terms of our engagement.

You are retaining us to assist in defeating passage of the No Oil Producing and Exporting Cartels Act ("NOPEC"). The relationship between Gibson, Dunn & Crutcher LLP (the "Firm" or "we") and the Embassy is limited to the matter just described, and we have not been retained generally, or for other matters. We will endeavor to keep you informed of the progress of your matter and respond to your inquiries. You acknowledge the need to provide us with accurate and complete information and the need to cooperate and keep us informed of any developments related to our representation of the Embassy. Unless otherwise agreed in writing, the terms of this letter and the attached Terms of Retention will also apply to any additional matters that we handle on the Embassy's behalf.

<u>Fees and Billing</u>

The Embassy has agreed to pay a flat fee of $250,000, which is payable in full at the commencement of this engagement upon execution of this letter. The flat fee is the property of the Firm upon receipt and will not be placed in a trust account. By signing this agreement, you acknowledge that Rule 1.15(d) of the D.C. Rules of Professional Conduct would otherwise require the Firm to hold the flat fee in a trust account until the fees are earned.

The flat fee will encompass (1) preparation of a concise white paper, suitable for public dissemination, opposing NOPEC; (2) preparation of a more in-depth legal analysis of NOPEC; and (3) preparation of an op-ed opposing NOPEC. In the event that you wish to expand the scope of the engagement to include meetings between myself and members of Congress regarding NOPEC, there will be an additional flat fee of $100,000 per month to cover my time preparing for, and attending, such meetings. If you wish to expand the engagement to encompass other matters (*e.g.*, congressional testimony), we will negotiate at that time a mutually acceptable supplemental fee.

Costs (such as printing costs, travel costs, and electronic research) are not encompassed by the flat fee and will be billed separately on a monthly basis.

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

Received by NSD/FARA Registration Unit 09/07/2018 6:18:40 PM

# GIBSON DUNN

Page 2

This flat-fee arrangement does not affect your right to terminate this representation. In the event that the representation is terminated before completion, you may be entitled to a refund of a portion of the flat fee. In such event, the Firm will be entitled to retain all fees for completed work.

<u>Waiver of Prospective Conflicts on Unrelated Matters</u>

We are not aware of any conflict of interest implicated by our representation of the Embassy in this matter, but wish to emphasize that we represent many other clients. It is possible that during or after the time we represent the Embassy, other present or future clients will ask us to represent them in disputes or transactions with or involving the Embassy as to legal matters not substantially related to our representation of the Embassy. In such a situation, the Firm could be tempted to balance the interests between its clients rather than vigorously assert a single client's interest on an issue. We do not believe, however, that our simultaneous representation of the Embassy in the present matter, and our representation of another client in an unrelated matter adverse to the Embassy, will compromise our ability to adequately represent the Embassy.

We wish to clarify our mutual understanding with the Embassy as to the extent to which our present representation both will affect, and will not affect, our ability to represent other existing or future clients in other legal matters, whether or not the Embassy is adverse or otherwise involved in those matters. As a condition of our undertaking this matter, the Embassy agrees that:

- we can continue to represent, or can in the future represent, existing or new clients in any matter, including litigation or other adversarial proceedings (which includes bankruptcy or insolvency proceedings, including instances where the Embassy is a creditor or equity holder in such a proceeding) ("Other Matters"), so long as the Other Matters are not substantially related to our representation of the Embassy in connection with this matter, even if those other clients' interests are adverse to the Embassy's interests in the Other Matters;

- we might obtain confidential information of interest to the Embassy in these Other Matters that we cannot share with the Embassy; and

- the Embassy waives any conflict of interest that might arise from the Firm's engagement in the Other Matters, and will not seek to disqualify the Firm or any of the Firm's lawyers in, or assert a conflict with respect to, the Firm's engagement in the Other Matters.

If for any reason, including repudiation of consent to the potential conflict by the Embassy, your consent and waiver of potential conflicts is not effective in the circumstances, the Embassy consents to our resignation from our representation of the Embassy, and agrees to support a motion, if filed by the Firm, to withdraw from our representation of the Embassy

# GIBSON DUNN

Page 3

if resignation at that time is otherwise permissible under applicable professional rules. In that case, the Embassy would need to engage, at its expense, separate counsel to represent the Embassy's interests. Under such circumstances, the Embassy consents to our continued representation of the client(s) whose interests created the potential conflict, and/or any other clients the representation of which is permissible under applicable professional rules.

Of course, without your further prior written consent, we cannot and will not represent another client in a matter adverse to the Embassy if we have obtained confidential information of a nonpublic nature from the Embassy, as a result of our representation of the Embassy, that, if known to the other client, could be used in the Other Matters by the other client to the Embassy's material disadvantage unless we have imposed in advance of that subsequent engagement an ethical screen that assures the preservation of the Embassy's confidences. The ethical screen would prevent attorneys who participated in Gibson Dunn's representation of the Embassy from representing the other client in the matter adverse to the Embassy, from discussing their representation of the Embassy with the attorneys representing the other client, and from providing any documents, files, or other materials generated in connection with Gibson Dunn's representation of the Embassy to the attorneys representing the other client.

Arbitration

We appreciate the opportunity to serve as your attorneys and look forward to a productive and mutually rewarding relationship. If you become dissatisfied with our charges or services, we encourage you to bring that to our attention immediately. We believe that most problems of this nature can be resolved through good faith discussion. In the event that we cannot resolve a dispute through discussion, we believe that binding and confidential arbitration offers a more expeditious and less expensive alternative than court action.

By signing this engagement letter agreement, the Embassy agrees to binding and confidential arbitration of any dispute, claim, or controversy regarding our services as set forth in the attached Terms of Retention, subject to the exceptions stated therein. You are also agreeing that the Embassy is waiving its right to a jury or court trial, and is waiving any right it might have to collect punitive damages. This waiver of punitive damages applies only to the maximum extent permitted by law. If the Embassy does not wish to agree to arbitration, you should advise us before signing this letter. If you have any questions or concerns regarding the advisability of arbitration, we encourage you to discuss them with us, independent counsel, or your other advisors.

Confirmation of Agreement

You should review and familiarize yourself with the attached Terms of Retention, which are incorporated into this engagement letter agreement. If this letter and the Terms of Retention accurately reflect your understanding of our agreement, please acknowledge your

# GIBSON DUNN

Page 4

approval and acceptance of these terms by signing and returning to me the enclosed copy of this letter. I would be pleased to answer any questions you might have.

On behalf of Gibson, Dunn & Crutcher LLP, I look forward to a mutually rewarding relationship.

Very truly yours,

*Theodore B. Olson /ACT*

Theodore B. Olson
of GIBSON, DUNN & CRUTCHER LLP

Agreed to this 30 day of August, 2018.

*Samut*

Embassy of the Kingdom of Saudi Arabia

# TERMS OF RETENTION
# OF
# GIBSON, DUNN & CRUTCHER LLP

Except as modified in writing, the following provisions will apply to the relationship between Gibson, Dunn & Crutcher LLP (the "Firm" or "we") and the client ("you"), as identified in the accompanying letter agreement:

1. <u>Professional Fees</u>. Please see page 1 of the engagement letter of August 29, 2018, for a description of our fee arrangement.

2. <u>Costs and Ancillary Services</u>. The Firm will invoice you for the cost of certain ancillary services incurred on your behalf. Generally, we will not charge you for certain services, such as word processing and regular secretarial time. Other costs (such as printing costs, travel costs, and electronic research) will be invoiced on a monthly basis. The Firm will request pre-approval from the Embassy in writing before incurring any costs. By signing the engagement letter, the Embassy grants pre-approval to the Firm to incur reasonable electronic research costs in connection with its representation of the Embassy. Whenever practicable, discounts obtained from vendors will be passed on to you. Under certain circumstances, we may ask you to advance anticipated costs or to pay outside vendors directly for their services. Our charges for these costs and ancillary services are subject to change from time to time.

3. <u>Estimates Not Binding</u>. It is often impractical to determine in advance the amount of effort that will be needed to complete all the necessary work on a matter or the total amount of fees and costs which may be incurred. Obviously, any estimates or budgets may need to be adjusted upwards or downwards as changes occur. Moreover, these estimates and budgets are not intended to be binding; are subject to unforeseen circumstances, and by their nature are inexact.

4. <u>Billing and Payment</u>. Fees and expenses will generally be billed monthly and are payable upon presentation, but in no event to exceed 30 days from presentation of our statement. We expect prompt payment, and our experience indicates that prompt billing and prompt payment enhances the working relationship. We reserve the right to postpone or defer providing additional services or to discontinue our representation, to the extent legally permissible, if billed amounts are not paid when due. You also agree that you will promptly review our statements and raise any questions regarding the amounts and items billed within 30 days of presentation. If you object to only a portion of the charges on a statement, then you agree to pay the remainder of the charges, which will not constitute a waiver of your objection.

5. <u>Termination of Representation</u>.

    5.1 <u>Termination By You</u>. You have the right to terminate our services at any time. If you decide to terminate our services, you agree to give us prompt written notice of such termination. Upon our termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf prior to the date of such

1

termination or which are reasonably necessary thereafter. If we are attorneys of record in any proceeding, you agree to execute and return to us a Substitution of Attorney promptly upon receipt from us.

5.2     Termination By Us. We also have the right to withdraw from this representation if, among other things, you fail to honor the terms of our engagement letter and these Terms of Retention, you fail to make payment of any of our statements in a timely manner, you fail to cooperate or to follow our advice on a material matter, or any fact or circumstance occurs that would, in our view, render our continuing representation unlawful or unethical, and we determine that we are permitted to withdraw our representation. If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such termination, you will remain obligated to pay us for all services provided and to reimburse us for all costs and expenses paid or incurred on your behalf.

5.3     Date of Termination. Our representation of you will be considered terminated at the earlier of (a) our termination of our representation, (b) your termination of our representation, (c) our withdrawal from our representation of you, or (d) the substantial completion of our work for you. In the event there has been no work performed by our attorneys on your behalf for a period of six consecutive months, we agree that our attorney-client relationship will have been terminated.

5.4     Duties Upon Termination. Upon termination of our involvement in a particular matter for which we were engaged, we will have no duty to inform you of future developments or changes in law which may be relevant to such matter. Further, unless you and the Firm agree in writing to the contrary, we will have no obligation to monitor renewal or notice duties or similar deadlines which may arise from the matters for which we had been engaged. If your matter involves obtaining a judgment and such judgment is obtained, we will only be responsible for those post-judgment services (such as recording abstracts, filing judgment liens, and calendaring renewals of judgments) as are expressly agreed to by you and the Firm in writing, and for which you will be obliged to pay.

6.     ARBITRATION.

6.1     ARBITRATION OF ALL DISPUTES, CLAIMS OR CONTROVERSIES. EXCEPT AS SET FORTH IN SECTION 6.5 BELOW, AS A MATERIAL PART OF OUR AGREEMENT, YOU AND THE FIRM AGREE THAT ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING OUT OF OR RELATING TO THIS AGREEMENT, OUR RELATIONSHIP, OR THE SERVICES PERFORMED OR ANY OTHER MATTER OR THING, SHALL BE DETERMINED EXCLUSIVELY BY CONFIDENTIAL, FINAL AND BINDING ARBITRATION AS FOLLOWS:

(A)     THE MATTERS SUBMITTED TO ARBITRATION SHALL BE HEARD AND DETERMINED BY A SINGLE ARBITRATOR IN WASHINGTON D.C. OR ANOTHER MUTUALLY AGREED UPON

2

VENUE, IN ACCORDANCE WITH THE THEN EXISTING COMPREHENSIVE ARBITRATION RULES OR, IN THE EVENT NO DISPUTED CLAIM OR COUNTERCLAIM EXCEEDS $250,000, NOT INCLUDING INTEREST OR ATTORNEYS' FEES, THE STREAMLINED ARBITRATION RULES OF THE JUDICIAL ARBITRATION AND MEDIATION SERVICES ("JAMS").

(B)   ANY PARTY TO THE ARBITRATION MAY REQUEST JAMS TO IDENTIFY PANELS OF RETIRED OR FORMER JURISTS QUALIFIED AND ABLE TO SIT AS ARBITRATORS OF THE MATTERS SUBMITTED FOR ARBITRATION, AND THE ARBITRATOR DETERMINING THE SUBMITTED MATTERS SHALL BE SELECTED FROM SUCH PANELS PURSUANT TO JAMS RULES.

(C)   DISPUTES, CLAIMS AND CONTROVERSIES SUBJECT TO FINAL AND BINDING ARBITRATION UNDER THIS AGREEMENT INCLUDE, WITHOUT LIMITATION, ALL THOSE THAT OTHERWISE COULD BE TRIED IN COURT TO A JUDGE OR JURY IN THE ABSENCE OF THIS AGREEMENT. SUCH DISPUTES, CLAIMS AND CONTROVERSIES INCLUDE, WITHOUT LIMITATION, CLAIMS FOR PROFESSIONAL MALPRACTICE, DISPUTES OVER OUR FEES AND EXPENSES, ANY DISPUTES OVER THE QUALITY OF SERVICES WHICH WE RENDER, ANY CLAIMS RELATING TO OR ARISING OUT OF YOUR OR OUR PERFORMANCE UNDER THIS AGREEMENT, AND ANY OTHER CLAIMS ARISING OUT OF ANY ALLEGED ACT OR OMISSION BY YOU OR US.

(D)   EXCEPT AS OTHERWISE DETERMINED BY THE ARBITRATOR, THE FEES OF THE ARBITRATION INITIALLY WILL BE PAID EQUALLY BY BOTH THE FIRM AND YOU. HOWEVER, THE ARBITRATOR SHALL HAVE THE RIGHT TO ORDER EITHER PARTY TO PAY ALL FEES AND COSTS AS PART OF THE AWARD.

(E)   BY AGREEING TO SUBMIT ALL DISPUTES, CLAIMS AND CONTROVERSIES TO BINDING ARBITRATION, YOU AND THE FIRM EXPRESSLY WAIVE ANY RIGHTS TO HAVE SUCH MATTERS HEARD OR TRIED IN COURT BEFORE A JUDGE OR JURY OR IN ANOTHER TRIBUNAL. YOU AND THE FIRM FURTHER AGREE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, TO WAIVE ANY RIGHT YOU OR THE FIRM MAY HAVE TO PUNITIVE DAMAGES.

(F)   THE ARBITRATOR SHALL BE AUTHORIZED TO DETERMINE ALL ISSUES IN ARBITRATION AS IF THE ARBITRATOR WERE SITTING AS A JUDGE WITHOUT A JURY, AND THE ARBITRATOR SHALL RENDER A WRITTEN REASONED AWARD WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW SUFFICIENT TO SUPPORT SUCH JUDICIAL REVIEW AS IS

PROVIDED BY APPLICABLE STATUTES GOVERNING ARBITRATIONS.

(G) ANY ARBITRATION AWARD SHALL BE FINAL, BINDING AND CONCLUSIVE UPON THE PARTIES, SUBJECT ONLY TO JUDICIAL REVIEW PROVIDED BY STATUTES GOVERNING ARBITRATIONS, AND A JUDGMENT RENDERED ON THE ARBITRATION AWARD MAY BE ENTERED IN ANY STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF.

6.2 WAIVER OF RIGHT TO JURY OR COURT TRIAL. YOU UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT YOU AND THE FIRM ARE WAIVING ANY RIGHT TO A JURY OR COURT TRIAL.

6.3 WAIVER OF RIGHT TO RECEIVE PUNITIVE DAMAGES. YOU UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT, YOU AND THE FIRM ARE WAIVING, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ANY RIGHT YOU OR THE FIRM HAVE TO AN AWARD OF PUNITIVE DAMAGES.

6.4 OTHER ARBITRATION SERVICE PROVIDERS. NOTHING HEREIN SHALL LIMIT THE RIGHT OF THE PARTIES TO STIPULATE AND AGREE TO CONDUCT THE ARBITRATION BEFORE AND PURSUANT TO THE THEN EXISTING RULES OF ANY OTHER AGREED-UPON ARBITRATION SERVICES PROVIDER.

6.5 UNREPRESENTED D.C. CLIENTS. IF YOU ARE A CLIENT OF THE D.C. OFFICE AND ARE NOT REPRESENTED BY OTHER COUNSEL (E.G. IN-HOUSE COUNSEL OR OTHER COUNSEL REPRESENTING YOU IN CONNECTION WITH OUR RETENTION), THE FOLLOWING TWO EXCEPTIONS OPERATE TO LIMIT MANDATORY ARBITRATION UNDER THIS AGREEMENT:

(a) NOTWITHSTANDING SECTIONS 6.1 – 6.4, ANY DISPUTE OVER THE FIRM'S FEES WHICH WE ARE NOT ABLE TO RESOLVE SHALL BE SUBMITTED TO AND PROCESSED IN ACCORDANCE WITH THE PROCEDURES OF THE DISTRICT OF COLUMBIA BAR ATTORNEY-CLIENT ARBITRATION BOARD (ACAB). COUNSELING AND A COPY OF THE ACAB'S RULES ARE AVAILABLE THROUGH THE ACAB STAFF AND YOU ARE ENCOURAGED TO CONTACT THE ACAB FOR COUNSELING AND INFORMATION PRIOR TO DECIDING WHETHER TO SIGN THIS AGREEMENT. NOTWITHSTANDING THIS EXCEPTION, YOU MAY ELECT TO SUBMIT TO PROCEDURES SET FORTH IN SECTION 6.1, ABOVE, BUT SHOULD DO SO ONLY AFTER CONSULTATION WITH OTHER COUNSEL.

(b) SECTIONS 6.1 – 6.4 DO NOT APPLY TO ANY CLAIMS YOU MAKE REGARDING AN ALLEGATION OF PROFESSIONAL

MALPRACTICE ARISING FROM THE SERVICES PERFORMED BY US AND THUS ARBITRATION IS NOT MANDATORY FOR SUCH CLAIMS. YOU MAY, BUT ARE NOT REQUIRED, TO SUBMIT SUCH CLAIMS TO ARBITRATION BEFORE THE ACAB AS SET FORTH IN SECTION 6.5(a) ABOVE, OR TO THE PROCEDURES SET FORTH IN SECTION 6.1 ABOVE, BUT SHOULD DO SO ONLY AFTER CONSULTATION WITH OTHER COUNSEL.

7. Waiver of Potential Conflicts Between You and the Firm. The occasion might arise for us to consult with our own counsel – our General Counsel or other firm lawyers working with our General Counsel or with our own outside counsel – regarding our engagement for you. This will be done at our expense, of course. To the extent that we are addressing our own rights or responsibilities, a conflict of interest might be deemed to exist between the Firm and you as to such consultation or resulting communications, particularly if a dispute were to arise between the Firm and you. A condition of this engagement is that, in such circumstances, you hereby consent to such consultation occurring, and waive any claim of conflict of interest based on such consultation or resulting communications and agree that such communications are protected by our own attorney-client privilege from disclosure to anyone, including you.

8. Identity of the Client. The Firm's client for purposes of this engagement is only the person(s), entity or entities identified in the accompanying letter agreement. Unless expressly agreed, we are not undertaking the representation of any related or affiliated person or entity, nor any family member, parent corporation or entity, subsidiary, or affiliated corporation or entity, nor any of your or their officers, directors, agents, partners or employees (collectively, "Related Entities"). We generally will not be precluded from representing other existing clients or future clients in legal matters relating or adverse to the Related Entities or any of them.

9. Market Abuse Directive. Companies with securities admitted to trading on a regulated market for the purposes of the European Union's Market Abuse Directive 2003/6/EC ("the Directive"), and the legislation implementing the Directive in the relevant EU member states, and persons acting on behalf of such Companies are required to prepare and maintain a list of those persons working for the Company who have access to certain inside information (whether on a regular or occasional basis) relating directly or indirectly to you ("Your Inside Information"). In this connection, you agree to notify the Firm in writing if you are subject to the Directive. Upon receipt of such written notice, we will draw up and maintain a list of those persons working for Gibson, Dunn & Crutcher LLP who have access to Your Inside Information (the "List"). If you have any questions relating to the List or related issues, please contact the Partner who signed this Engagement Letter.

10. Insurance Matters. You should consider whether you have insurance coverage for any of the claims or liabilities arising out of this matter or for related fees and expenses incurred. You have not retained us to provide advice about or represent you or any of your agents or affiliates concerning any such insurance coverage or notice of claims. Our work for a number of insurance companies might raise actual or potential conflicts of interest, or "issue" conflicts, for us were we to address insurance coverage matters for you.

5

Accordingly, we may not be able to provide advice or representation to you with respect to the issue of actual or potential claims for insurance coverage for liability or losses arising out of or related to this matter (whether arising at the outset or during the course of that matter) that you or any of your agents or affiliates may be entitled to assert under policies issued to any of these entities or other parties in interest. You should be aware that strategic decisions with respect to this matter may affect insurance and coverage, and that coverage concerns may affect strategy, particularly in adversarial proceedings.

We recommend that you consult with other counsel concerning such matters, including any possible or actual claims or disputes against or with any insurer or other parties who may have applicable insurance. We are not undertaking to represent you in these insurance-related matters without a further express agreement to that effect in writing, after appropriate consideration of any potential conflict of interest issues.

11. <u>Conflicts of Interest</u>. To assist in avoiding representation of parties with conflicts of interest, we maintain a computerized conflict of interest index. The Firm will not represent any party with an interest that may be adverse to that of a person or entity included in the index without an examination to determine whether a conflict of interest would actually be created. To allow us to conduct a conflicts check, you represent that you have identified for us all persons and entities that are or may become involved in this matter, including all persons and entities that are affiliated with you and the other involved or potentially involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals). You also agree that you will promptly notify us if you become aware of any other persons or entities that are or may become involved in this matter.

12. <u>Consent to Electronic Communications</u>. In order to maximize our efficiency, we intend to use state of the art communication devices to the fullest extent possible (e.g., e-mail, document transfer by computer, cellular telephones, facsimile transfers and such other devices which may develop in the future). The use of such devices under current technology may place your confidences and privileges at risk. However, we believe the efficiencies involved in the use of these devices outweigh the risk of accidental disclosure. By agreeing to these terms you consent to the use of these electronic communication devices.

13. <u>Related Proceedings and Activities</u>. If any claim is brought against the Firm or any of its personnel based on your negligence or misconduct, if we are asked to testify as a result of our representation of you, or if we must defend the confidentiality of your communications in any proceeding, you agree to pay us for any resulting costs, including for our time, calculated at the hourly rate for the particular individuals involved, even if our representation of you has ended.

14. <u>Limitations on Liability</u>.

14.1 <u>General Limitation on Liability</u>. You agree that the Firm shall not have any liability to you in connection with our representation of you except for liability for losses, claims, damages, liabilities or expenses incurred by you that result from our professional malpractice, gross negligence or willful misconduct.

6

14.2  **Registered Limited Liability Partnership.** Gibson, Dunn & Crutcher LLP is a California registered limited liability partnership. As a result, with certain possible limited exceptions, none of which may be applicable, the partners of the Firm are not liable or accountable, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations, or liabilities of or chargeable to the Firm or another partner in the Firm, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the Firm, by reason of being a partner or acting in the conduct of the business or activities of the Firm.

14.3  **Additional Rights.** The provisions of this Section 14 are in addition to any rights that we may have at common law or otherwise, including but not limited to any right of contribution.

14.4  **Indemnification.** You agree to indemnify and hold harmless the Firm and each current, former and future partner, associate and employee of the Firm, to the full extent permitted by law, from and against all claims, actions, liabilities or damages related to or arising out of our representation of you and you will reimburse us for all expenses as they are incurred by us in connection with investigating, preparing to defend or defending against such claims or actions (including attorneys' fees, experts' fees, disbursements and compensation for the time expended by attorneys of the Firm in connection with any such action or claim, calculated at the hourly rate for the particular individuals involved), whether or not in connection with pending or threatened litigation in which we are a party or potential party; provided, however, that you will not be responsible for any claims, actions, liabilities, damages, losses or expenses which are finally judicially determined to have resulted from our professional malpractice, gross negligence or willful misconduct.

15.  **No Guarantee of Outcome.** We do not and cannot guarantee the outcome in any matter. Our comments about the outcome of your matter are expressions of opinion only.

16.  **Document Retention and Destruction.** In the course of our representation of you, we are likely to come into possession of copies or originals of documents or other materials belonging to you or others (collectively, "materials"), and we will be producing a concise white paper, an in-depth legal analysis, and an op-ed for your use (collectively, "documents"). These materials and documents represent the Client File, which shall be and remain your property. Once the particular matter to which those materials relate has been concluded, we will make arrangements either to return the documents to you, retain them in our storage facilities or to dispose of the materials. In the absence of any other arrangements made with you, the Firm's records retention policy provides that upon the expiration of five years after a matter has been closed, all materials in the file may be destroyed or discarded without notice to you. Accordingly, if there are any documents or other materials you wish to have retrieved from your file at the conclusion of a matter, it will be necessary for you to advise us of that request to insure that they are not destroyed.

The Firm's files pertaining to the matter will not be delivered to you. You agree that the Firm's files include, for example, Firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records, as well as internal

7

lawyers work product (such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports and mental impressions prepared by us for our internal use). You agree that the Firm's files remain our property and for various reasons, including the minimization of unnecessary storage expenses, or for no reason, we may destroy or otherwise dispose of the Firm's files within a reasonable time after the conclusion of the matter.

17. <u>Application to Subsequent Matters</u>. The agreement reflected in these Terms of Retention, and in the accompanying letter, applies to our present representation of you and to any subsequent matters which we agree to undertake on your behalf, unless we agree in writing to some different arrangement.

You also agree to pay the Firm on the same basis as set forth above the Firm's fees, charges and expenses incurred in responding to subpoenas, in testifying (and preparing testimony) by deposition or otherwise, and otherwise responding with respect to claims or demands relating to or arising out of the matters in which we have represented or are representing you, whether or not related to our services and whether or not we are then representing you.

18. <u>Use of the Firm's Name</u>. The parties agree that they will not use the other's name for purposes of any marketing or publicity. Specifically, the parties agree that without prior express written consent from the other, they will not use the other's name in any press release, notice, website or any other marketing material.

19. <u>Entire Agreement</u>. These Terms of Retention and the accompanying letter agreement supersede all other prior and contemporaneous written and oral agreements and understandings between us and contain the entire agreement between the parties. This agreement may be modified only by subsequent written agreement of the parties. You acknowledge that no promises have been made to you other than those stated in this agreement.

20. <u>Applicable Law</u>. This agreement shall be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the District of Columbia.

21. <u>Compliance With Section 307 of the Rules of the Securities and Exchange Commission</u>. The Firm has adopted policies relating to compliance with the rules adopted pursuant to the Sarbanes-Oxley Act, and will provide a copy of these policies to you upon request.

22. <u>Severability</u>. If any section or portion of these terms is determined by any court or arbitrator to be illegal or invalid, the validity of the remaining terms shall not be affected therein and said illegal or invalid term shall be deemed not to be a part of this Agreement.