IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WALEED AL-QARQANI, ET AL.,

    Plaintiffs,

    v.

CHEVRON CORPORATION, ET AL.,

    Defendants.

No. C 18-03297 JSW

**ORDER GRANTING CHEVRON'S MOTION TO DISMISS THE PETITION TO CONFIRM ARBITRATION AWARD**

Now before the Court is the motion to dismiss the Petition to Confirm a Foreign Arbitral Award (the "Petition") filed by Respondents Chevron Corporation and Chevron U.S.A., Inc. ("Chevron" or "Respondents"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the Court GRANTS Chevron's motion to dismiss the Petition.

**BACKGROUND**

On June 1, 2018, Petitioners, a number of heirs of the late Sheikh Abdullah Al-Solaiman Al-Hamdan and Sheikh Khalid Abu Al-Waleed Al-Oarqani, purported beneficiaries and titleholders of land in Saudi Arabia ("Petitioners"), filed their Petition for an order to confirm a foreign arbitration award and for entry of judgment in conformity with the arbitral award.

Petitioners request that this Court confirm a purported arbitral award that was issued on June 3, 2015 in favor of more than 60 individual heirs to the two deceased Saudi nationals against several Chevron entities (Chevron Company of U.S.A., Chevron Saudi Arabia, and Aramco) for approximately $18 billion (the "Award"). The Award was issued under the auspices of an institution called the International Arbitration Center (the "IAC") located in Cairo, Egypt. Petitioner seek to have this Court "confirm and recognize the final arbitral Award dated June 3, 2015, involving the arbitration proceedings between Petitioners and Respondents, including all predecessors and related entities," enter judgment in Petitioners' favor in the amount of the Award, plus attorneys' fees and costs, and award such other and further relief as the Court just and proper. (Dkt. No. 1, Petition ("Pet.") ¶ 1.)

Petitioners contend the Award was entered between the parties and is binding within the meaning of the New York Convention on the Recognition of Foreign Arbitral Awards and its implementing legislation (the "Convention"). (*Id.* at ¶ 19.) Petitioners argue that because the Award was issued in Egypt, the United States is a "secondary jurisdiction" and can only refuse to confirm and enforce the Award on the limited grounds permitted under Article V(1) and (2) of the New York Convention.

On August 5, 2018, Respondents filed a motion to dismiss and an opposition to the Petition to confirm, alleging that the Award was the product of sham proceedings engineered to produce an award in Petitioners' favor, that there was never an agreement to arbitrate between the Petitioners and Respondents, that the arbitral proceedings violated the plain terms of the arbitration agreement the tribunal purported to rely upon, that the claims fell outside the arbitral agreement, and that the arbitral process was riddled with gross irregularities and criminal misconduct. Among other irregularities, they allege the selection of the arbitrators appears to have been engineered, there were resignations in protest, the presiding arbitrator issued an opinion that the forum was without jurisdiction to hear the dispute, and the newly-constituted tribunal issued the Award just sixteen days later, which was then apparently authenticated with stamps that inaccurately indicated the Award was reviewed by the United States Department of State and the Egyptian Ministry of Foreign Affairs. (*See* Dkt. No. 114-2, Brief of Amicus Curiae at 4-5.)

2

Petitioners unilaterally initiated arbitration proceedings pursuant to a Concession Agreement dated 1933 between the Kingdom of Saudi Arabia and Standard Oil Company of California. This 1933 Concession Agreement contained a limited arbitration clause permitting arbitration between the Government of Saudi Arabia and the oil company. (Pet., Ex. A, Art. 31, at 16.) Petitioners also rely upon a separate lease contract dated 1949 ("1949 Deed") in which they contend they were owed the rental value of another company, Aramco's, use of the land between 2005 and 2015 and compensation for the full value of the property. (*See* Pet., Ex. B at 25, 31; *see also* Pet. ¶ 17.) Petitioners contend that the limited agreement to arbitration in the 1933 Concession Agreement was incorporated by reference in the later 1949 Deed.

The record is extensive and the Court has thoroughly reviewed the parties' submissions. The Court shall additional address facts from the record as necessary in the remainder of this order.

**ANALYSIS**

**A.     The Court Lacks Jurisdiction to Conform the Arbitration Award.**

In order to confirm an award pursuant to the New York Convention, the Court must have subject matter jurisdiction over the dispute. *See* 9 U.S.C. § 207. In 1970, the United States ratified the Convention which "applies to an arbitration agreement arising out of a legal relationship, whether contractual or not, which is considered as commercial." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654 (9th Cir. 2009). "Courts generally address four factors to determine whether to enforce an arbitration agreement under the Convention." *Id.* These four factors require that: "(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Id.* at 654-55.

"An arbitration provision in an international commercial agreement . . . is governed by Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, which implemented the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards."

3

*Bothell v. Hitachi Zosen Corp.*, 97 F. Supp. 2d 1048, 1051 (W.D. Wash. 2000). "A court in the United States faced with a request to refer a dispute governed by Chapter Two to arbitration performs a 'very limited inquiry' into whether an arbitration agreement exists and falls within the Convention's coverage." *Id.* (citing *DiMercurio v. Sphere Drake Ins. Inc.*, 202 F.3d 71, 74 (1st Cir. 2000) (citations and footnotes omitted). Accordingly, the "framework of the Convention will guide the Court's analysis and determine if an arbitration agreement exists between the parties." *Id.*

Petitioners must carry the burden to demonstrate that they have met the Convention's jurisdictional requirements, including that there is an "arbitration agreement under the terms of the Convention." *Id.* at 1053. Pursuant to Article Two of the Convention, "the term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." 9 U.S.C. § 201. "The modifying phrase, 'signed by the parties or contained in a series of letters or telegrams' applies to both 'an arbitral clause in a contract' and 'an arbitration agreement.'" *Bothell*, 97 F. Supp. 2d at 1051 (citing *Kahn Lucas Lancaster Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 217 (2d Cir. 1999)). Accordingly, pursuant to the terms of the Convention, "both an arbitration clause in a contract or an arbitration agreement must be (a) signed by the parties or alternatively, (b) contained in a series of letters or documents to be enforceable." *Id.* at 1051-52 (citing *Lancaster*, 186 F.3d at 217-18).

"Article II [of the Convention] makes clear that arbitration is permissible only where there is 'an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between *them*' – not disputes between a party and a non-party." *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1001 (9th Cir. 2017) (quoting N.Y. Conv., Art. II(1)) (emphasis added by *Yang* court). Accordingly, before a party can obtain relief under the Convention, it must "prove the existence and validity of 'an agreement in writing within the meaning of the Convention,'" which the Convention defines to mean "'an arbitral clause in a contract . . . *signed by the parties* or contained in an exchange of letters or telegrams.'" *Id.* at 999 (quoting N.Y. Conv., Art. II(2)) (emphasis added by *Yang* court).

4

In the record before this Court, there is only an agreement to arbitrate contained in the 1933 Concession Agreement. Article 31 of the 1933 Agreement provides that

> [s]hould any doubt difficulty or difference arise between the Government and the Company in interpreting this Agreement, the execution thereof or the interpretation or execution of any of it or with regard to any matter that is related to it of the rights of either of the two parties or the consequences thereof, and the two parties fail to agree on the settlement of the same in another way, then the issue shall be referred to two arbitrators with each party appointing one of the two arbitrators and with the two arbitrators appointing an umpire prior to proceeding to arbitration. . . . The award passed by the two arbitrators in the case shall be final. As regards the place of arbitration, the two parties shall agree on it and if they fail to agree to that then it shall be in the Hague (Holland).

(Dkt. No. 1-2, 1933 Concession Agreement, Art. 31, at 13-14.)

Here, there is no dispute that the arbitration clause in the original agreement applies to the parties to that agreement: the Company, defined as Standard Oil of California Company and the Government, defined as the Government of Saudi Arabia. (*Id.* at 2.) The original agreement to arbitrate occurred between third parties, not the current parties before this Court. Petitioners here are numerous alleged heirs of two Saudi Arabian sheiks and Respondents are Saudi Arabian Chevron and Chevron Corporation.[1] Petitioners make no persuasive or legally coherent argument that the parties before the Court are legally obligated by the third party signatories to the original agreement.[2]

---

[1] Chevron USA, Inc., sued in the action, was not a named as a party in the arbitration proceedings. It is therefore dismissed on this basis alone. *See* 9 U.S.C. § 207 ("any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration."); *see also Orion Shipping & Trading Corp. v. Eastern States Petroleum Corp. of Panama, S.A.*, 312 F.2d 299, 301 (2d Cir. 1963). Petitioners also filed a separate petition to confirm an award against another unnamed party, Aramco Services Company, which was dismissed by the District Court in Texas because, *inter alia*, the party was not named in the arbitration proceedings. (*See* Dkt. No. 161-1, *Al-Qaraqani v. Arabian Am. Oil Co.*, No. 18-cv-01807 (S.D. Tex. Aug. 2, 2019).)

[2] Standard Oil Company of California was originally a party to the 1933 Concession Agreement. However, the record is clear that in December 1933, Standard Oil Company of California assigned away its rights and obligations under the Agreement to an entity called California Arabian Standard Oil Company. This company which ultimately became Aramco, and which then in 1988 became Saudi Aramco, was wholly owned by the Kingdom of Saudi Arabia. By 1990, as a fully-nationalized company, any rights held by Aramco or Chevron were fully extinguished. (*See* Dkt. No. 62, Declaration of Frank G. Soler at ¶¶ 6-16, Exs. 2, 3, 5, 6; *see also* Dkt. No. 108, Declaration of Amr Mohammed Al-Faisal bin Abdulaziz al Saud at ¶ 6; Dkt. No. 122, Supplemental Declaration of Christian Leathley at

In order to address the fact that the original agreement containing an arbitration clause is not signed by the parties before the arbitration proceeding, Petitioners contend that a 1949 Deed reflecting the transfer of property rights incorporated the provision to arbitrate contained in the 1933 Concession Agreement. This 1949 Deed in which their Petitioners' ancestors unilaterally granted land rights to Aramco does not specifically incorporate the arbitration provision of the 1933 Concession Agreement. The only reference to the 1933 agreement is a notation that the transfer of rights under the 1949 Deed "are based on the requirements of Article (25) of the [] Concession Agreement" which authorized Aramco to acquire the "surface rights of the lands which the Company deems necessary for use." (Pet., Ex. C at 6, Ex. A, Art. 25.)

Under clear precedent, incorporation of an arbitration agreement by reference must be "clear and unequivocal." *Socoloff v. LRN Corp.*, 646 Fed. App'x 538, 539 (9th Cir. 2016) (citing *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1172 (2007)). In order for the arbitral terms of another document to be incorporated into the parties' contract, "the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Shaw v. Regents of University of California* 58 Cal. App. 4th 44, 54, (1997) (quoting *Williams Constr. Co. v. Standard-Pacific Corp.* 254 Cal. App. 2d 442, 454 (1967)). The reference in the 1949 Deed to another provision in the earlier 1933 Agreement does not constitute a "clear and unequivocal" incorporation of a completely different provision of the original agreement which does not specifically contain the arbitration clause. *See, e.g., Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1075 (9th Cir. 1998) (vacating arbitration award where provision of contract agreeing to comply with terms of a different contract did not "clearly and unequivocally incorporate by reference" the arbitration procedures in the latter agreement). Furthermore, the Court is persuaded that the arbitration provision in the 1933 Agreement, by its express terms, does not "bind a non-party, notwithstanding words of incorporation or reference in a separate contract by

¶ 2, Ex. 49.)

6

which that non-party is bound." *Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993).

The Court finds that Petitioners have failed to meet their burden to demonstrate that there is an operative agreement to arbitrate between themselves and Respondents. The only agreement to arbitrate in the record is in Article 31 of the 1933 Concession Agreement between the Government of Saudi Arabia and the Standard Oil of California Company. Petitioners are unquestionably not parties to that agreement and are not entitled to invoke arbitration of their dispute under it. *See Yang*, 876 F.3d at 1001 (holding that where a party claiming the right to arbitration "failed to satisfy . . . [the] basic requirement that a litigant must be a 'party' to the agreement" under which it seeks relief). The mere reference to Article 25 of the 1933 Concession Agreement in the 1949 Deed does not permit Petitioners here to invoke the separate arbitration clause in Article 31 of the 1933 Agreement. *See Cariaga*, 154 F.3d at 1075. Therefore, Petitioners have not carried their burden to demonstrate that they have met the Convention's jurisdictional requirements, including that the parties to this proceeding were parties to a contract containing or unequivocally incorporating an agreement to arbitrate.[3] Accordingly, the Court finds there is no agreement to arbitrate and the petition to confirm the arbitral award must be dismissed.

## B. Procedural Infirmities Preclude Confirmation.

In addition to the record demonstrating that there was no agreement between the parties to arbitrate, the Court finds that numerous procedural infirmities would independently preclude confirmation of the arbitral award. Petitioners did not file an authenticated or certified copy of the critical documents underlying their request for confirmation. The original 1933 Agreement was executed in both Arabic and English and specifies that the "English version shall prevail" in the

---

[3] In addition, the Court finds persuasive the holding of the United States District Court of Texas dated August 2, 2019 in *Al-Qaraqani v. Arabian Am. Oil Co.*, No. 18-cv-01807 (S.D. Tex. Aug. 2, 2019), in which the court dismissed a similar petition to confirm the same arbitration award as against Aramco Service Company. The Texas district court dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted on the basis that there was no agreement to arbitrate. The court found that Aramco Service Company was not bound by the arbitration agreement and none of the theories to bind a nonsignatory apply. *See id*. at 7. This Court agrees as to the parties before it.

7

event of any disagreement on the interpretation of the terms. (Pet., Ex. A, Art. 35.) However, the Court has not been provided with the original English version of the agreement, and instead Petitioners have only filed their certified translation of the Arabic version of the agreement. In addition, Petitioners have failed to produce a duly certified copy of the arbitration award and there are multiple versions of the award in the record, appearing with and without suspect authentication stamps. (*Compare* Pet., Ex. B; Dkt. No. 50, Declaration of Nader Mostafa Hesham ("Hesham Decl.") at ¶ 24, Ex. 1 at 8; Dkt. No. 79-6, Declaration of Christian Leathley ("Leathley Decl."), Ex. 46.)

Under Article IV(1) of the New York Convention, the petitioner must file with the petition an authenticated or certified copy of all critical documents underlying the request for confirmation, including the "original" agreement to arbitrate or a "duly certified copy" and a "duly authenticated original [arbitration] award or a duly certified copy." N.Y. Conv., Art. IV(1). Article IV(2) of the Convention, the party seeking to confirm an arbitration award "shall produce a translation" of the agreement only "[if] the said . . . agreement is not made in an official language of the country in which the award is relied upon." N.Y. Conv., Art. IV(2).[4] The failure of a party to satisfy the requirements of Article IV constitutes "one of the 'grounds for refusal or deferral . . . specified in the said Convention,' because the Convention uses mandatory language in establishing the prerequisites: '[t]o obtain the recognition and enforcement mentioned in the preceding article, the party applying for recognition and enforcement *shall, at the time of the application, supply*' a copy of the award and arbitration agreement." *Czarina, LLC v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004) (quoting N.Y. Conv., Art. IV(1)) (emphasis added by *Czarina* court).

The Court finds that Petitioners have failed to carry their burden to produce an authenticated or certified copy of the original English iteration of the underlying 1933 Concession Agreement or a

---

[4] Respondents also contend that the English translation of the 1933 Concession Agreement is materially inaccurate. The Court does not reach the issue of whether the translation contains falsities rendering it part of an overall scam intended to defraud Respondents of their legal rights and attain the disputed arbitral award. Regardless of the accuracy of the translation, there is a dispute of interpretation and Petitioners' failure to provide the Court with the original English version of the 1933 Agreement is dispositive.

8

duly certified copy of the arbitration award. Accordingly, pursuant to the mandatory language of the Convention, the Court is without the power to confirm the award. *See id.*

### C.   Confirmation Would Be Denied Under Article V of the Convention.

Even if the Court were to find that the 1933 Concession Agreement between third parties required that the parties present here were to submit to arbitration of their claims and even if Petitioners had complied with the mandatory procedures in instituting their petition to confirm the award, in order to confirm, the Court would still need to find that the underlying arbitral proceedings complied with Article 31 of the original 1933 Agreement to arbitrate. It does not.[5]

The Convention authorizes courts to refuse to recognize an arbitral award when "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." N.Y. Conv., Art. V(1)(d). Courts have uniformly recognized the importance of the parties' choice of forum in arbitration agreements in the context of international commerce. *See, e.g., Polimaster Ltd. v. RAE Systems, Inc.*, 623 F.2d 832, 841 (9th Cir. 2010). Here, Article 31 of the 1933 Agreement set forth clearly defined procedures for arbitral appointments and venue. The Agreement only permits *ad hoc* arbitration, that is arbitration without the designation of a specific institution to administer the arbitration. Further, the provision on arbitration explicitly designates the Hague in Holland as the default seat for any arbitration. In this case, Petitioners unilaterally brought their arbitration before the IAC and seated the tribunal in Cairo instead of Holland. Clearly, both of these designations contravene the explicit contractual terms of the arbitration provision and are therefore not in accordance with the only agreement Petitioners rely upon to have compelled arbitration. Because the IAC as an institution lacked contractual authority to administer the arbitration and because there was no authority to conduct an arbitration venued in Cairo, any award the tribunal issued cannot be affirmed by this Court. *See, e.g., id.* at 843.

---

[5] Petitioners' contention that Chevron consented to the arbitration in Egypt and waived its substantive arguments is unpersuasive. To the extent Chevron participated by initially nominating an arbitrator, it was clearly under protest and without giving consent to arbitrate before the IAC. (*See* Dkt. No. 63, Declaration of Ashraf Elibrachy at ¶¶ 6, 10, Exs. 1-4.) In addition, a tribunal's findings cannot "control the Court's ruling on the merits of [a] defense . . . under Article V." *Changzhou AEMC Eastern Tools & Equip. Co. v. Eastern Tools & Equip., Inc.*, 2012 WL 3106620, at *5 (C.D. Cal. July 30, 2012).

9

In addition, the constitution of the arbitral panel was highly irregular and appears to have been engineered to produce a result in favor of Petitioners.  By its express terms, Article 31 provides a process for appointment of arbitrators.  First, each party had thirty days from written receipt of a request from the other party to appoint their respective arbitrator.  (*See* Pet., Ex. B at 17.)  Second, the two chosen to be arbitrators were to appoint an umpire prior to proceeding to arbitration.  (*See id.* at 16-17.)  Should the two arbitrators have failed to appoint an umpire, then the parties were to jointly appoint the umpire.  (*See id.* at 17)  Fourth, should the two arbitrators and the parties have disagreed and this mechanism were to fail, "then they should apply to the President of the Permanent International Court of Justice to appoint an umpire."  (*See id.*)

None of these procedures were followed as required.  There were multiple resignations of appointed arbitrators, some in protest of the proceedings, and a rotating cast of arbitrators filled the positions vacated by others.  (*See, e.g.,* Leathley Decl., Ex. 48.)  There was no neutral umpire secured by the chosen arbitrators, the parties, or the International Court of Justice.  The various arbitral appointments were not in conformity with the plain terms of the arbitration agreement, thereby rendering any award invalid and unenforceable.  *See, e.g., Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 91 (2d Cir. 2005) (holding that district court properly refused confirmation of award where appointment of the arbitrator was not in conformity with parties' agreed-upon terms); *see also Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 224-25 (4th Cir. 1994) (reversing district court's confirmation of an arbitration award where the arbitration procedure failed to follow the parties' contract for selection of arbitrators).

Notwithstanding the substantial irregularities in the institutional choice, the venue for the arbitration, and the arbitrator selection process, on May 18, 2015, the presiding arbitrator issued an opinion that the tribunal was without jurisdiction to arbitrate the parties' dispute.  (*See* Leathley Decl., Ex. 39.)  This opinion concluded that the tribunal had no jurisdiction over the dispute because the claimants' purported claims were "outside the scope of the [1933 Agreement's] arbitration clause . . . in terms of its parties and its content."  (*Id.* at 13.)

Regardless of the finding by the tribunal that it in fact lacked jurisdiction to arbitrate the matter, on the same day this jurisdictional opinion was rendered, a new arbitrator appeared for the first time, again in violation of the explicit terms of the arbitration provision in the 1933 Agreement for the selection of arbitrators. (*See id.*, Ex. 36 at 5.) A newly-constituted tribunal with two new arbitrators issued the disputed Award a mere sixteen days later. (*See* Pet., Ex. B.) The earlier finding by the tribunal that it lacked jurisdiction to issue an award renders the authority of the tribunal exhausted and the later-issued award beyond the scope of the submission to arbitration and without authority. *See, e.g., McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) (holding that entry of arbitral judgment divests tribunal of jurisdiction).

The Court also finds that the Award itself attempts to resolve claims that are outside the scope of the purported arbitration agreement. The scope of the 1933 Concession Agreement was limited to the grant of rights in the extraction of hydrocarbons on public and private lands as granted by the Kingdom of Saudi Arabia. The arbitration provision in that original agreement does not purport to cover a dispute concerning money allegedly owed under a deed transferring private rights and the title of land to another party. The subject-matter of the dispute does not fall under the scope of the original arbitration provision. Accordingly, this Court denies the petition to confirm the award on this independent basis.

Lastly, certain unverified copies of the Award before the Court indicate that, after its issuance, some copy of Award was apparently authenticated with stamps that inaccurately indicate it had been reviewed by the United States Department of State and the Egyptian Ministry of Foreign Affairs. (*See* Hesham Decl. ¶¶ 26-29; Dkt. No . 64-3, Ex. 15 at 2.) These multiple procedural irregularities similarly caution against confirmation of the Award.

Accordingly, and on all of these separate bases, had the Court found it had jurisdiction, the Court would deny the Petition on the merits of Chevron's defenses under Article V of the Convention.

11

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Chevron's motion to dismiss the Petition. The Court shall issue a judgment and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: September 24, 2019

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE