CHUNG, MALHAS & MANTEL, PLLC
Edward C. Chung, WSBA# 34292
1037 NE 65th Street, Suite 80171
Seattle, Washington 98104
Phone: (206) 264-8999
Facsimile: (206) 264-9098
Email: Echung@cmmlawfirm.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| WALEED AL-QARQANI, *et.al.* | **Case No. 4:18-cv-03297-JSW** |
| Petitioners, | |
| v. | **ATTORNEY, EDWARD C. CHUNG'S SURREPLY TO CHEVRON'S REPLY** |
| CHEVRON CORPORATION, and CHEVRON U.S.A. INC., | **Judge:** The Honorable Jeffrey S. White |
| Respondents. | **Date of Hearing:** November 3, 2023<br>**Time:** 9:00 AM |
| *In re* Attorney Edward C. Chung | |

**TO:** The United States District Court Clerk for Norther District of California (Oakland)

## I. INTRODUCTION

**COMES NOW**, undersigned counsel, Edward C. Chung, with the law firm of CHUNG, MALHAS & MANTEL, PLLC and respectfully submits this Surreply to correct both misstatements of law and misrepresentations of facts briefed by Chevron's Gibson Dunn counsel, Attorney Anne Champion. While Attorney Champion charitably cites legal authority and *unpublished* rulings adverse to her client's legal interests, her law firms' history of legal sanctions and reputation for intransigence in state, federal and international courts is regrettably not a deterrent to a firm that invokes political and judicial influence to paralyze the rule of law and circumvent public confidence in our U.S. judiciary. That aside, it is incumbent upon undersigned counsel to correct the record out of duty, conscience, and in hopes of preserving the legitimacy of our constitutional republic and a judiciary that governs its law.

# TABLE OF CONTENTS

Page No.

**I. ATTORNEY SURREPLY**……………………………………………………7

    A.   Chevron's Assertion that its Non-Compliant Motion for Attorneys' Fees Sanctions Cannot Be Stricken is a Misstatement of Law. Chevron Pending Motion Violates Local Rule 54.5 Because There is no Meet and Confer Certification, no Affidavit from Each Attorney Claiming Time Spent, nor is There a Description of the Relevant Qualifications and Experience of Each Attorney Claiming Time. Moreover, Under Local Rule 7-8 Chevron's Motion for Attorneys' Fees Sanctions is Time Barred………………………..7

    B.   Chevron Deceptively Mislabels their Motion as a Motion for "Compensatory" Attorneys' Fees. As a Matter of Law, the Imposition of Sanctions by Means of a Federal Court's "Inherent Authority" is "Punitive" not "Compensatory". Pursuant to U.S. Supreme Court and Circuit Court Precedent, no Federal Court may Impose Punitive Sanctions Against an Attorney Without Providing the Same Procedural Due Process Guarantees Applicable in Criminal Cases. As Reflected from the Appellate Record, Attorney Chung was not Afforded the Constitutional Protections Guaranteed by our U.S Constitution……………………………..……8

    C.   The June 26, 2023 "Transfer Order" Chevron Relies Upon to Obtain Post-Mandate "Compensatory Sanctions" Does **Not Exist** in Federal Appellate Practice. Pursuant to the Federal "*Mandate Rule*" a U.S. District Court has no Power or Authority to Deviate from an Appellate Decision that Orders no Action be Taken on Remand and a Mandate that Proclaims the Circuit Court has Terminated Jurisdiction. Any Subsequent Appellate Court Orders are a Legal Nullity…………………………………………….…..16

    D.   The *Law of the Case Doctrine* that Chevron Cites in *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) is Adverse to Chevron's Proposition that a U.S. District Court is Handcuffed from Using its Discretion in Rejecting a Circuit Court Order That is *Void ab Initio*, Violates Due Process of Law and Only Further Conceals Both Judicial and Legal Misconduct………………..20

    E.   On February 9, 2023, Gibson Dunn and its Client were Sanctioned **$925,000** by this Court for Legal Misconduct and Gamesmanship. Pursuant to Ninth Circuit Local Rule 11-6 the Pending Request for Attorney's Fees in Conjunction with Gibson Dunn's Falsified Translations [Dck# 119-1] and Witness Tampering [Dck# 101] that Attorney Chung Brought to this Court's Attention on November 7, 2018 Compels Judge White to Report this Legal Misconduct to U.S. District Court's Standing Committee on Professional Conduct and Chief District Court Judge, Richard Seeborg………………………………………………………..………21

F.    Gibson Dunn's Affiliation with Circuit Court Judge Eric D. Miller is not Wholly Forthcoming. Gibson Dunn Attorney Omits that Gibson Dunn Attorney, Matthew Reagan worked for Gibson Dunn Prior to Clerking for Judge Miller and Prior to the Decision to the August 12, 2021 Decision. Days After the Written Decision he was Offered and Paid an Associate Position with Gibson Dunn and Returned Back to Work for his Prior Employer. None of This was Disclosed on Appeal by Gibson Dunn or the Circuit Court Judges to Attorney Chung………………………………………………23

G.    The Unpublished Cases Chevron Attorney Anne Champion Cites for Validating the Legitimacy of Attorneys' Fees Sanctions Actually Undermines Chevron's Argument for Imposition of Attorneys' Fees. Contrary to Chevron's Motion, Declaration and Exhibits, the Case Law Chevron Relies Upon Would Bar Attorneys' Fees Because Gibson Dunn Associate Attorney Stephen Henrick is not a Lead Attorney nor Record Keeper and an Attorney who Lacks Personal Knowledge of the Time Spent by Another Attorney Cannot Attest to the Fees Sought by that Other Attorney. Moreover, Gibson Dunn Omits the 12 Factor Analysis for Allowing for an Award of Attorneys' Fees………………………………………………25

II.    CONCLUSION………………………………………………………………27

III.   CERTIFICATE OF SERVICE……………………………………...…………………28

## EXHIBITS

**Exhibit 1 – Attorney Edward C. Chung's August 25, 2022 Letter to Circuit Judge Eric D. Miller and Special Master Atasusi Wallace Tashima - Notice Invocation of Rule 8.4 of the Washington State Rules of Professional Conduct [COA-Dck# 121]**

**Exhibit 2 - Attorney Chung's November 7, 2018 Letter to Judge White 9 Requesting Appointymet of Special Counsel for Interference with International Due Process [Dck# 101]**

# \textbf{T}ABLE OF AUTHORITIES

Page No.

*Cases*

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021)……………………………..9

*Boyce's Ex'rs v. Grundy*, 34 U.S. (9 Pet.) 275, 287 (1835)…………………………………..17

*Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948)…………………………………………….17

*Calderon v. Thompson*, 523 U.S. 538 (1998)…………………………………………………16

*Centillium Commc'ns, Inc. v. Atl. Mut. Ins. Co.*, No. C 06-07824 SBA, 2008
 WL 728639, at *6 (N.D. Cal. March 17, 2008)………………………………………..…………7

*Chambers v. NASCO, Inc., 501 U.S. 32* (1991)……………………………………………….19

*City of Cleveland v. FPC*, 561 F.2d 344, 346 (D.C. Cir. 1977)……………………………….17

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)…………………………………18, 19

*Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178 (2017)…………………......9, 13, 21

*Harte v. Board of Commissioners*, 864 F.3d 1154 (10th Cir. 2017)…………………..…………20

*Haji v. NCR Corp.*, 834 F. App'x 562, 564 (11th Cir. 2020)…………………………………12

*Himely v. Rose*, 9 U.S. (5 Cranch) 313, 314 (1809)……………………………………..……17

*In Kranson v. Fed. Express Corp.*, 2013 U.S. Dist. Lexis 173499
*17 (N.D. CA Dec. 11, 2013)………………………………………………………………….27

*In re Osborne* 76 F.3d 306 (9th Cir. 1996)…………………………………………………......8

*Jones v. Metro. Life Ins. Co.*, No. C–08–03971–JW (DMR), 2010
WL 4055928, at * 6 (N.D. Cal. Oct. 15, 2010)………………………………………………….7

*Kong v. Margaret M. Harris Corp.*, No. CV 18-2112-MW (FFMx), 2020
WL 4018294, at *5 (C.D. Cal. Mar. 5, 2020)………………………………………………......25-26

*Martin v. Automobili Lamborghini Exclusive*, 307 F.3d 1332 (11th Cir. 2002)…………………12

*Miller v. City of Los Angeles* , 661 F.3d 1024 (9th Cir. 2011)……………………….……..10

*Mitchel v. VegasSportsConsultants.com*, 2019
WL 3426038 (S.D. Fla. May 23, 2019)…………………………………………….……12

*Muniz v. UPS*, 738 F.3d 214 (9th Cir. 2013)……………………………..………26

*Red Carpet Studios Div. of Source Advantage v. Sater,* 465 F.3d 642 (6th Cir. 2006)……………9

*Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 54, (1997)…………..………23

*Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221-EMC, 2011
WL 1334444, at *8 (N.D. Cal. Apr. 7, 2011)……………………………………………………26

*The Santa Maria*, 23 U.S. (10 *Wheat*.) 431, 434 (1825)……………………………………17

*Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)………………………………………..……23

*United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)………………………………………17

*United States v. 414 Kings Highway*, 128 F.3d 125, 127 (2d Cir. 1997)…………………...……18

*United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*
545 F.3d 1134, (9th Cir. 2008)…………………………………………………………...……18

*U.S. Postal Serv. v. Postal Regul. Comm'n*, 747 F.3d 906, 910 (D.C. Cir. 2014)…………….……17

*Wimbush v. Georgia*, 673 F. App'x 965, 967 (11th Cir. 2016)…………………………………....12

*Withrow v. Larkin*, 421 U.S. 35 (1975)…………………………………………………....…14

*Xue Lu v. United States,* 921 F.3d 850 (9th Cir. 2019)………………………………..……10

## Statutes

28 U.S.C. §1927……………………………………………………………………………19

## Rules of Procedure

Fed. Rul. Evid. 803……………………………………………………………………………25

Fed. Rul. Civ. Proc. 1……………………………………………………………...……13, 19

Fed. Rul. Civ. Proc. 11……………………………………………………………………19

Fed Rul. Proc. 46……………………………………………………………………..……14

Fed. Rul. Civ. Proc. 53………………………………………………………………....…28

Fed. R. App. P. 27-1………………………………………………………………10-11

Fed. R. App. P. 38……………………………………………………………...………*passim*

Fed Rul Ap. Proc. 47……………………………………………………...…13

Ninth Circuit Local Rule 7-8……………………………………………….7-8

Ninth Circuit Local Rule 54-5………………………………………...…26

Washington Rule of Professional Conduct 3.3……………………………9

Washington Rule of Professional Conduct 8.3……………………...…10

Washington Rule of Professional Conduct 8.4……………………………11, 14

## II. A<span>TTORNEY</span> S<span>URREPLY</span>

A. Chevron's Assertion that its Non-Compliant Motion for Attorneys' Fees Sanctions Cannot Be Stricken is a Misstatement of Law. Chevron Pending Motion Violates Local Rule 54.5 Because There is no Meet and Confer Certification, no Affidavit from Each Attorney Claiming Time Spent, nor is There a Description of the Relevant Qualifications and Experience of Each Attorney Claiming Time. Moreover, Under Local Rule 7-8 Chevron's Motion for Attorneys' Fees Sanctions is Time Barred.

This Court may, and has, stricken non-compliant motions. *See*, *Centillium Commc'ns, Inc. v. Atl. Mut. Ins. Co.*, No. C 06-07824 SBA, 2008 WL 728639, at *6 (N.D. Cal. March 17, 2008) [**procedurally improper motion ordered stricken pursuant to court's inherent power to control its docket**]. The basis to strike a motion such as Chevron's pending Motion for Attorneys' fees is that district courts have "**inherent power to control their dockets**" and "**strike material from the docket reflecting procedural impropriety or lack of compliance with court rules or orders**". *See*, *Jones v. Metro. Life Ins. Co.*, No. C–08–03971–JW (DMR), 2010 WL 4055928, at * 6 (N.D. Cal. Oct. 15, 2010). Therefore, Chevron's assertion that Attorney Chung's request that Chevron's pending, non-compliant motion for attorneys' fees cannot be stricken is a misstatement of the law and may be disregarded and disposed of as a flawed legal argument.

As further explained below, Chevron's motion for attorneys' fees sanctions, its supporting declaration of attorney Stephen W. Henrick, as well as its accompanying exhibits are non-compliant with Local Rule 7-8 and Local Rule 54.5. Local Rule 7-8 mandates that Chevron sanctions for attorneys' fees must have been filed, "*as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate*." Here Chevron waited nearly three (3) months from the June 26, 2023 "Transfer Order" to file its motion for attorneys' fees. Normally, a sanctions motion under Local Rule 7-8 provides only a 14-day time period for setting said motion for consideration. Therefore, in addition to the jurisdictional objections asserted by Attorney Chung in his Response briefing, Chevron is procedurally time barred for sanctions relief.

Aside from Local Rule 7-8, Local Rule 54.5 provides procedural mandates that must be complied with *before* filing a motion for attorneys' fees; again, Chevron did not comply. As reflected in their September 14, 2023 filing, they have not complied with: (1) A meet and confer certification prior to filing its motion; (2) Chevron failed to file a statement by **each** person claiming time spent for attorneys' fees coupled with their relative experience; and (3) Like Local Rule 7-8, the filing should have been filed within 14 days of the June 26, 2023 "Transfer Order"; it was not.

B. Chevron Deceptively Mislabels their Motion as a Motion for "Compensatory" Attorneys' Fees. As a Matter of Law, the Imposition of Sanctions by Means of a Federal Court's[1] "Inherent Authority" is "Punitive" not "Compensatory". Pursuant to U.S. Supreme Court and Circuit Court Precedent, no Federal Court may Impose Punitive Sanctions Against an Attorney Without Providing the Same Procedural Due Process Guarantees Applicable in Criminal Cases. As Reflected from the Appellate Record, Attorney Chung was not Afforded the Constitutional Protections Guaranteed by our U.S Constitution.

One of the very first concepts taught in law school is the doctrine of *stare decisis*. This doctrine comes from the Latin phrase *stare decisis et non quieta movere*, meaning to adhere to precedent and not unsettle what is established. *See*, *In re Osborne* 76 F.3d 306, 309 (9th Cir. 1996). Applying the doctrine of *stare decisis* to the case at bar*,* as a matter of law, undersigned counsel is protected from the arbitrary imposition of appellate sanctions invoked by circuit court judges Eric D. Miller[2] and Atasushi Wallace Tashima[3] because to date, there has been no proceeding that has been conducted that provides the same procedural due process protections to undersigned counsel as guaranteed in criminal cases[4].

---

[1] In federal appellate practice and by application of U.S. Supreme Court authority and Ninth Circuit precedent, a U.S. Circuit Court may not impose appellate sanctions with the exception for sanctions authorized for frivolous appeals in accord with Fed. R. App. P. 38.

[2] Circuit Judge Eric D. Miller refused to disqualify himself after his former client, Chevron, admitted friend, attorney Thomas Hungar and prior co-counsel, Gibson, Dunn & Crutcher, LLP verifiably falsified documents to advance their clients interest on appeal and to support a false narrative. He instead sought to sanction undersigned counsel to advance his former client and friend's legal interest and conceal judicial and legal misconduct.

[3] A. Wallace Tashima is a Ninth Circuit Court Judge appointed by Judge Miller to investigate the "legitimacy" of a demonstrative exhibit Attorney Chung asked **permission** to file. At a pre-hearing conference, he was audio and video recorded on Zoom, not knowing he was being recorded, asking

The black letter law is very clear. ***When a federal court invokes its "inherent authority" as a sanction to "vindicate the court's authority and the integrity of the judicial process" such sanctions as a matter of law are "punitive", not "compensatory".*** *See*, *Red Carpet Studios Div. of Source Advantage v. Sater,* 465 F.3d 642, 647 (6th Cir. 2006). While Chevron's attorneys Anne Champion, Stephen W. Henrick, Christian Leathley and Scott Balber have once again misled this Court in labeling Chevron's motion for attorneys' fees as "**compensatory sanctions**", they also violated Rule of Professional Conduct 3.3 (a) 2, as their own legal citation to *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) , as well as their reliance on *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) that is contained in Special Master Tashima's Report, both evidence how there can be no award of "**compensatory sanctions**" absent providing undersigned counsel the same procedural due process protections guaranteed in criminal cases. Why? Because aside from inherent authority being construed by U.S courts as a "**punitive sanction**", the imposition of a ***sua sponte*** monetary sanction for the financial benefit of a party who never motion for sanctions and the current demand in excess of a quarter of a million dollars **($268,283.85)** for merely filing a nine (9) page response to an appellate motion against a lawyer for seeking judicial permission to attach a illustrative exhibit that exposed Chevron and their counsel's misconduct is inherently punitive.

Since the application of the law to this case bars the arbitrary use of "**punitive sanctions**" as retaliatory measures for exposing judicial misconduct and the doctrine of *stare decisis* affords undersigned counsel the same constitutional due process protections for sanctions hearings as a criminal

---

what sanctions Chevron wanted to impose on Attorney Chung. By appellate mandate, Chevron was no longer a party to the proceedings after the court terminated its jurisdiction nevertheless, he appointed Chevron's counsel to represent the court in imposing sanctions. He has to date refused to make public the audio and video recording exposing his judicial misconduct, ruling it is not relevant.

[4] Because U.S. courts are statutory tribunals that cannot conduct trials or convey a jury, this is precisely why the imposition of appellate sanctions is limited to Fed. R. App. P. 38 sanctions for frivolous appeals, nothing else.

proceeding, the next step in the analysis is whether the Judge. Miller and Tashima violated undersigned counsel's constitutional rights; the appellate record clearly shows that they did. Per the legal authority Chevron's counsel Anne Champion cites, when sanctions are punitive as they are here, the alleged contemnor, "***must be afforded the full protection of a criminal jury trial***," ***including the right to be advised of the charges, the right to a <u>disinterested</u> prosecutor, the right to assistance of counsel, a presumption of innocence, proof beyond a reasonable doubt, the privilege against self-incrimination, the right to cross-examine witnesses, the opportunity to present a defense and call witnesses, and the right to a jury trial if the fine or sentence imposed will be serious***. *Id* . at 1138–39; *see also Lu* , <u>921 F.3d at 860</u> [**stating that "*non-compensatory sanctions' may be "akin to criminal contempt and may be imposed only by following the procedures applicable to criminal cases, including appointment of an independent prosecutor, proof beyond a reasonable doubt and a jury trial*** (*quoting*, *Miller v. City of Los Angeles* , 661 F.3d 1024, 1030 (9th Cir. 2011).

As has been shown throughout these proceedings, undersigned counsel exposed judicial, civil, criminal and ethical misconduct by judges, lawyers and oil cartels wherein in adhering to his ethical duties under Rule of Professional Conduct 8.3 (b), he has now become a target of monetary and ethical sanctions to the very tribunal he sought to protect. Fortunately, the law is both a sword and a shield and the appellate record places a spotlight on judicial corruption by evidencing that undersigned counsel was never afforded any jury trial, a disinterested prosecutor, proof beyond a reasonable doubt, a presumption of innocence, the right to cross-examine witnesses, the opportunity to present a defense and call witnesses. Instead, undersigned counsel was assigned to a single factfinder that a *Zoom* audio and video recording evidence was scheming with Chevron and their counsels *ex parte* to impose sanctions and discredit undersigned counsel after the circuit court had terminated its jurisdiction and before any hearing on the merits of these sanctions took place. Nowhere is there any notice of what rule or statute undersigned counsel violated by filing Fed. R. App. P. 27-1 motion seeking judicial permission to

supplement a motion with an exhibit. Nowhere in Special Master Tashima's Report does he even reference Fed. R. App. P. 27-1, the very rule that allows any lawyer admitted into the Ninth Circuit to attach "**any paper**" to a Fed. R. App. P. 27-1 motion. The prosecutor chosen was Gibson Dunn, the party seeking to recover **procedurally barred money sanctions** and who Attorney Chung reported was engaged in witness tampering, falsifying evidence and *ex parte* communications with the Special Master and whose lead counsel was an admitted friend of Judge Miller; this is not a disinterested prosecutor.

There was no presumption of innocence applied or advised of. To the contrary Judge Miller who issued the Show Cause Order alleged Attorney Chung "filed" a document as a "publication" and therefore should perpetrated a fraud upon the court. wherein in violation of the judicial code of conduct, went outside the record in search of this article that was never represented by Attorney Chung as "publication" nor even filed; Attorney Chung asked permission to file it as a "supplemental exhibit". Judge Miller who already ruled the document as being "***moot***" and "***unnecessary***", alleged that Attorney Chung possibly violated RPC 3.3; however, this rule could not have been violated as it would have required the document to be "***material***". After audio and video revealed *ex parte* communication with Chevron and judges concerning imposition of sanctions, and judge Tashima refused to produce it, Attorney Chung was thereafter accused of "perpetrating a fraud upon the court" a charge he was never advised was the subject of these proceedings. So no, Attorney Chung was never advised of the charge he was alleged to have committed.

After having knowledge of judicial and legal misconduct, and possible criminal wrongdoing, pursuant to his ethical obligations as a lawyer, Attorney Chung wrote a letter to the Judge Miller and Tashima invoking Washington State Rule of Professional Conduct 8.4 wherein it is professional misconduct for a lawyer to, "***knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law***". A copy of this letter is attached hereto as **Exhibit 1** and incorporated herein by reference. Thereafter, judge Tashima struck all my witnesses and

exhibits, none which were we were able to present at trial. So no, Attorney was not afforded the right to cross-examine witnesses, the opportunity to present a defense or call witnesses.

Despite not being present, judge Tashima proceeded to have a one-on-one proceeding with Gibson Dunn. He ruled on motions and admitted Gibson Dunn's self-serving evidence into a closed appellate record. Thereafter, he issued a decision maintaining that Attorney Chung perpetrated a fraud upon the Court; a charge significantly beyond the scope of his assignment. He did not cite nor perform any analysis of Fed. Rul. Civ. Proc. 27-1 nor did he apply a beyond a reasonable doubt standard. So not, Attorney Chung the reasonable doubt standard nor any standard justifying such artifice findings was applied.

Prior to these proceedings, Attorney Chung was never at any point issued a "warning" prior to being sanctioned. In our U.S. judicial system, the types of "egregious conduct" necessitating sanctions involve flagrant, **repeated** violations of court directives far beyond the misunderstanding at issue here. *See*, *Haji v. NCR Corp.*, 834 F. App'x 562, 564 (11th Cir. 2020) ["**willful and flagrant disobedience" by failure on "numerous occasions" to comply with discovery orders**]; *See*, *Wimbush v. Georgia*, 673 F. App'x 965, 967 (11th Cir. 2016) ["**disobedience" was "willful" where plaintiff ignored repeated orders to refile an amended complaint and was "specifically told failure to comply could result in dismissal**"]; *Martin*, 307 F.3d at 1336 & n.2 ["*continual and flagrant abuse of the judicial process," including "misleading the court about the real party in interest," "extensive discovery abuse," and using forged signatures and extortive letters*"]; *Mitchel v. VegasSportsConsultants.com*, 2019 WL 3426038, at *3 (S.D. Fla. May 23, 2019) ["**Repeated failures to comply with discovery orders, without any explanation, demonstrates a willful disregard to comply**."]. Here, undersigned counsel was never warned or informed how filing a Fed. R. App. P. 27-1 motion for judicial leave to attach an exhibit would result in the imposition of sanctions exceeding over a quarter of a million dollars

**($268,283.85)** and the commencement of disciplinary proceedings to suspend or disbar him from the practice of law. In fact Fed Rul Ap. Proc. 47 (b) states, in part, the following:

> **No sanction** or other disadvantage **may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules unless** the alleged violator has been furnished in the particular case with **actual notice** of the requirement.

Aside from the foregoing, judge Tashima denied undersigned counsel's access to a ***public record*** that exposed Judge Tashima's *ex parte* communications and judicial misconduct with Chevron. Absent any source or legal authority, judge Tashima arbitrarily invoked U.S. District Court Fed. Rul. Civ. Proc. 53[5], contrary to Fed. Rul. Civ. Proc. 1 that expressly ***limits*** the applicability of the United States Rules of Civil Procedure to U.S. district courts; he is a U.S. Circuit Court judge. Judge Tashima struck all of Attorney Chung's evidence and all his witnesses wherein undersigned counsel was not even entitled to cross examine or put forth a defense. Under *Goodyear*, undersigned counsel is afforded the same rights in a criminal proceeding. Judge Tashima violated undersigned counsel's **Sixth Amendment Confrontation Clause** rights where attorney Chung is afforded the right to cross examine judge Miller, Tashima, as well as Chevron and their legal counsels. None of this happened. Why? Because circuit courts are statutory tribunals that cannot conduct trials or convey a jury. This is precisely why the imposition of appellate sanctions is limited to Fed. R. App. P. 38 sanctions for frivolous appeals, nothing else.

While Chevron's counsel Anne Champion has argued that Attorney Chung requested a hearing and purportedly failed to appear without good cause, she would once again be definitively wrong for the following three reasons:

---

[5] Although there is no federal rule or statute allowing Circuit Court Judges to cherry-pick district court rules if and when they want, to the extent Fed. Rul. Civ. Proc 53 applies, it still mandates undersigned counsel is entitled to a fair and impartial Special Master. How can he be impartial if he has stated on the record what sanctions does Chevron want me to impose before a hearing ever takes place?

***First***, because Fed Rul. Proc. 46 (c) right to a hearing is a right to a disciplinary hearing, Judge Tashima expressly stated the post-mandate hearing he was conducting was ***<u>not</u>*** a disciplinary proceeding.

***Second***, Judge Tashima, not knowing he was being audio and video recorded on *Zoom*, asked what sanctions Chevron wanted imposed upon Attorney Chung, evidencing *ex parte* contact and a prejudged determination. He then concealed this public record without court order or authority, maintaining it was not relevant to the proceedings and denied Attorney Chung's motion to disqualify Judge Tashima on the basis no evidence existed. Can you see the circular reasoning here? Pursuant to U.S. Supreme Court authority, *Withrow v. Larkin*, 421 U.S. 35 (1975), ***"a fair tribunal is a basic requirement of due process";*** Judge Tashima obviously was not a fair and impartial fact finder for sanctions in consideration of ***ex parte*** communications evidencing a pre-determination of sanctions and concealment of evidence Clearly, these factors evidence that any decision-making would undermine any assurance of a fair and impartial proceeding.

***Third***, knowing there was judicial misconduct and proceedings taking place that were unlawful, Attorney Chung had an ethical duty under Rule of Professional Conduct 8.4 (f) not to further participate in these proceeding that involved judicial misconduct conduct or that was a violation of other law. More specifically, Washington Rule of Professional Conduct 8.4 goes on to state:

> ***A lawyer may <u>refuse to comply with an obligation imposed by law</u>*** upon ***<u>a good faith belief</u>*** that ***<u>no valid obligation exists</u>***. *See*, RPC 8.4, Commentary 6; *emphasis added*.

Respondent, as well as another attorney in our firm witnessed circuit judge Tashima in a *Zoom* audio and video recording exposing his bias which evidence that these hearings that were taking place after the circuit court had already terminated jurisdiction. It is evidence to anyone and everyone that these retaliatory proceedings were a by-product of reporting judicial and legal misconduct and possible

criminal violations wherein impartiality and fairness in Ninth Circuit appellate decisions may merely be an illusion. Undersigned counsel's intention and duty as an officer of the court is to place a spotlight on these judicial indiscretions and regain public confidence in our judiciary for the purposes of preserving our constitutional republic. Chevron, Gibson Dunn, circuit court judges Miller and Tashima present intent is to discredit Attorney Chung and remove him as an officer of the court for purposes of neutralizing his skill in jurisprudence, litigation and appellate practice because this erudition and experience poses a threat to their positions.

None of the proceedings or legal arguments put forth by judge Miller, Tashima, nor Chevron taken to date may be reconciled with the rule of law. The sanctions sought herein are **punitive** because they do not correspond to any specific harm sustained by Chevon and not specifically related to a "filing". The compensation sought, as evidenced by their pending motion, is for work that was incurred _**after**_ the appellate court issued its decision and terminated jurisdiction. The fact that sanctions recommended exceed the specific harm incurred is reflected Special Master Tashima's Report that the judicial panel adopted and which states,

> I recommend that Chung be sanctioned by being required to reimburse Appellees for the attorneys' fees and costs (or such portion thereof as the panel deems just and proper) _**incurred by Appellees in addressing Chung's filing of the Saudi Sun exhibit in Docket No. 66 and its aftermath.**_

_See_, COA-Dck# 124, Page 24; _emphasis added_.

The term "aftermath" denotes that Tashima and Miller are allowing sanctions to be imposed **further than** Chevron's filing of a response to Appellants' motion. More concerningly, in consideration that Chevron prevailed on appeal and Appellants' motion seeking judicial leave (permission) to file an illustrative exhibit was denied as "_**moot**_" and "_**unnecessary**_", it begs the question what specific harm did Chevron incur? These questions are central to the issues before this court and must be answered before another law clerk writes a decision in favor of Chevron and before another judge rubber stamps a

sanctions judgment in these proceedings without reexamining the law, due process and their own judicial oath to uphold the law and the Constitution of the United States. *Fiat justitia ruat caelum*!

C. The June 26, 2023 "Transfer Order" Chevron Relies Upon to Obtain Post-Mandate "Compensatory Sanctions" Does **Not Exist** in Federal Appellate Practice. Pursuant to the Federal "*Mandate Rule*" a U.S. District Court has no Power or Authority to Deviate from an Appellate Decision that Orders no Action be Taken on Remand and a Mandate that Proclaims the Circuit Court has Terminated Jurisdiction. Any Subsequent Appellate Court Orders are a Legal Nullity.

In the 236 years of our constitutional republic, there has been no precedent or record of a "Transfer Order" for attorneys' fees sanctions after an appellate decision and mandate terminating jurisdiction has been issued by a U.S. circuit court; it simply doesn't exist. Why? Because as previously stated, circuit courts are statutory tribunals that cannot conduct trials or convey a jury. This is precisely why the Ninth Circuit and the U.S. Supreme Court limit the imposition of appellate sanctions to Fed. R. App. P. 38 sanctions for a frivolous appeal, nothing else. If, however, there is some reason to revisit the merits after an appellate mandate has terminated the circuit court's jurisdiction, as a matter of law a judicial panel is compelled file a motion to **_recall_** the mandate in accord with U.S. Supreme Court ruling in *Calderon v. Thompson*, 523 U.S. 538, 550 (1998). In the case at bar, this was never done nor possible because Chevron prevailed on appeal and a recall is only warranted if an "exceptional circumstance" exists where a party has been adversely affected.

Pursuant to the *Ninth Circuit Court's Practice Manual*, when an "mandate" is issued the Circuit court effectively "*relinquishes jurisdiction over the case.*" *As reflected from the appellate record, on August 12, 2021, the Ninth Circuit Court issued a decision expressly ordering there would be __no remand back to the district court__ [COA-Dck# 82]. The Ninth Circuit mandate terminating appellate jurisdiction was issued on November 29, 2022 [COA-Dck# 82]. Both the decision rejecting the need to impose a remand and the court mandate terminating circuit court jurisdiction were sent to this U.S. district court before the June 26, 2023 transfer for these star chamber "Transfer Order" sanctions.*

*Applying the "Mandate Rule" the June 26, 2023 "Transfer Order" is a legal nullity and does not even exist in federal appellate practice.* However, if we plug into the *Matrix* and dive deep into the rabbit hole of discombobulated legal reasoning embraced by Chevron's counsel then we must accept that up is down and down is up to make sense of these *Alice in Wonderland* post-mandate proceedings. It begins with Chevron's counsel, Anne Champion, putting the wagon before the horse when she refers to the *law of the case doctrine* before the *mandate rule.* While it is briefed below how the *law of the case doctrine* does not paralyze this court in having any discretion as to what it can and cannot do if it invokes this legal doctrine, we must first begin **sequentially** with the *mandate rule* which is similar to, but broader than, the *law of the case doctrine.* The *mandate rule* provides that any "district court that has **received** the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *See*, *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).

From "its earliest days," the Supreme Court has "**consistently held that an inferior court <u>has no power or authority to deviate from the mandate</u> issued by an appellate court**." *See*, *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948) (*first citing Himely v. Rose*, 9 U.S. (5 *Cranch*) 313, 314 (1809); then citing *The Santa Maria*, 23 U.S. (10 *Wheat.*) 431, 434 (1825); and then citing *Boyce's Ex'rs v. Grundy*, 34 U.S. (9 Pet.) 275, 287 (1835)). It's simple, any district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it. Once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate and is required to give full effect to its execution. *See*, *U.S. Postal Serv. v. Postal Regul. Comm'n*, 747 F.3d 906, 910 (D.C. Cir. 2014) [*quoting, City of Cleveland v. FPC*, 561 F.2d 344, 346 (D.C. Cir. 1977)) [*explaining that a court subject to a federal appellate court's authority* "*is without power to do anything which is contrary to either the letter or spirit of the mandate*"].

Its paradoxical therefore that the Circuit Court made a formal declaration on August 12, 2021 there would be **no remand back to the district court** concerning this case and then reinforced that

proclamation by issuance of a November 29, 2022 mandate announcing that it was terminating its jurisdiction. If the circuit court made an official ruling it would not be remanding the case and a mandate has issued announcing the appellate court has terminated jurisdiction, then any subsequent post-mandate order is a legal nullity. In explaining this conundrum Chevron's counsel, Anne Champion, comes up with dubious legal authority and legal reasoning adverse to Chevron's cause.

*Exempli gratia,* while attorney Champion makes a herculean effort to discredit and disparage undersigned counsel, the case law she stands on for maintaining that circuit court judges Miller and Tashima were acting within the scope of their judicial authority is *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*, 545 F.3d 1134, (9th Cir. 2008) and *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990). Both cases are self-defeating in her quest for injustice.

To begin with, attorney Champion pontificates that this alleged Ninth Circuit, "Transfer Order" is a legit second order or remand per, *United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal.*, 545 F.3d 1134, (9th Cir. 2008), a Ninth Circuit court case that contains a footnote citation to a Sixth Circuit Court case, *United States v. $515,060.42 in United States Currency*, 152 F.3d 491 (6th Cir. 1998) and a Second Circuit court case, *United States v. 414 Kings Highway*, 128 F.3d 125, 127 (2d Cir. 1997). ***These cases held that a <u>U.S. district court</u> could maintain authority to retain jurisdiction of disputed property following a Fed. Rul. Civ. Proc. 41 dismissal of a <u>forfeiture action</u>. While neither of these cases have anything to do with an appellate mandate and the Ninth Circuit expressly stated, "<u>we do not adopt</u>" the legal reasoning contained in $515,060.42 and Kings Highway, it should be noted that both these cases were quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990), the same case that attorney Champion keeps banging the drum to support her proposition that circuit court judges Miller and Tashima were acting within their official capacity as officers of the court in sanctioning undersigned counsel after the Ninth Circuit terminated jurisdiction***.

Leer! The Spanish word from my Mexican heritage that means read. Read what? Read the legal authority that Chevron's counsel, attorney Champion cites from our U.S. Supreme Court's ruling in *Cooter & Gell v. Hartmarx Corp,* to champion her illicit sanctions. *Cooter* "clearly and unequivocally" states:

> On its face, ***Rule 11 does not apply to appellate proceedings***. Its provision allowing the court to include "***an order to pay to the other party or parties the amount of the reasonable expense, incurred because of the*** ***filing of the pleading, motion, or other paper***, including ***a reasonable attorney's fee***" must be interpreted ***in light of Federal Rule of Civil Procedure 1, which indicates that the rules only "govern the procedure in the United States district courts.***"
>
> ***Neither the language of Rule 11 nor the Advisory Committee Note suggests that the Rule could require payment for any activities outside the context of district court proceedings***.

If we re-examine the post-mandate star chamber proceedings in conjunction with Chevron's proposition that district courts and circuit courts may hip-hop between district court rules of procedure and circuit court rules of procedure, then we must neglect the very ***first rule*** of federal procedure, Fed. Rul. Civ. Proc 1 that says, no! **District court rules and circuit court rules are not interchangeable**. Ergo circuit court judge Tashima's use of Fed. Rul. Civ. Proc 53 and Miller's attempt to create a second order of remand makes all the post mandate proceedings, I dare say, a "sham".

Moreover, if we look at the facts, the circuit court makes much to do about a "filing" of a motion that they posed as basis to sanction Attorney Chung for a purported "***filing***" by using its "inherent authority" pursuant to *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); however, the Justice White explained how "inherent authority" was used by the district court to sanction a **party litigant**, **not a lawyer** which could have been done under Fed. Rul Civ. Proc. 11 or 28 U.S.C. §1927. In this case however, the circuit court is impermissibly using its inherent authority to target a lawyer for a "***filing***".

That said, if it looks like a duck, walks like a duck, quacks like a duck, you call it what it is; an attempt to use Fed. Rul. Civ. Proc 11 sanctions in an appellate forum. In consideration of the foregoing, a money sanctions award *via* a "Transfer Order" is a fool's gold and as a matter of law, a legal nullity that cannot be given any judicial deference.

D. The *Law of the Case Doctrine* that Chevron Cites in *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) is Adverse to Chevron's Proposition that a U.S. District Court is Handcuffed from Using its Discretion in Rejecting a Circuit Court Order That is *Void ab Initio*, Violates Due Process of Law and Only Further Conceals Both Judicial and Legal Misconduct.

Chevron's counsel cites the case, *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) for the proposition that Attorney Chung it trying to "relitigate" the Ninth Circuit's June 26, 2023 post-mandate adverse rulings and pontificates that the "*law of the case doctrine*" bars a U.S. district court from considering Attorney Chung's jurisdictional arguments against the June 26, 2023 "Transfer Order". Chevron's counsel citation to and application of the *law of the case doctrine is* both wrong and contrary to Chevron's legal interest. Under the *law of the case doctrine*, once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case. *See*, *Harte v. Board of Commissioners*, 864 F.3d 1154 (10th Cir. 2017); however, while Chevron's cites *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) for the proposition that a district court is handcuffed is revisiting legal issues, it conceals the exceptions delineated in the case they cite, which is:

> (1) The first decision was clearly erroneous;
>
> (2) An intervening change in the law has occurred;
>
> (3) The evidence on remand is substantially different;
>
> (4) Other changed circumstances exist;
>
> (5) **A manifest injustice would otherwise result.**

> *Id.*, at 1157*; emphasis added.*

If this court recognizes that a formal judicial proclamation was issued by the Ninth Circuit that terminated jurisdiction, it must also recognize that these post-mandate proceedings are nothing more

than two individuals dressed up as judges, conducting star chamber proceedings. No reasonable person could debate that it is beyond a reasonable there is a clear manifest injustice as Attorney Chung was entitled but did not receive the constitutional protections and guarantees prescribed in *Goodyear* and our U.S. Constitution.

Additionally, as a judicial officer presiding over this matter, pursuant to Canon 2 (b) of the Code of Conduct for United States Judges, the Honorable Judge White has a judicial obligation not to allow any relationship with these other judges, if such relationship exists, influence the decision in the pending motion.

E. On February 9, 2023, Gibson Dunn and its Client were Sanctioned **$925,000** by this Court for Legal Misconduct and Gamesmanship. Pursuant to Ninth Circuit Local Rule 11-6 the Pending Request for Attorney's Fees in Conjunction with Gibson Dunn's Falsified Translations [Dck# 119-1] and Witness Tampering [Dck# 101] that Attorney Chung Brought to this Court's Attention on November 7, 2018 Compels Judge White to Report this Legal Misconduct to U.S. District Court's Standing Committee on Professional Conduct and Chief District Court Judge, Richard Seeborg.

In consideration of Chevron's reliance on *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993), the Honorable Judge Jeffrey S. White has an affirmative duty in referring all Gibson Dunn attorneys to the U.S. District Court's Standing Committee on Professional Conduct and/or the Chief District Court Judge, Richard Richard Seeborg. As this Court is aware, on November 7, 2018 Attorney Chung's wrote a letter to Judge White 9 [Dck# 101] requesting for an appointment of Special Counsel due to Chevron and Gibson Dunn's civil and criminal misconduct. Also on the record are Chevron and Gibson Dunn's falsified translations contained in Docket No. # 119-1. We had these Gibson Dunn Arabic translations forwarded to a translator and three Arabic linguist; conclusion, they are nothing more than jibber-jabber on a fabricated document purporting to be from an Egyptian Prosecutor's Office even though not written on the Egyptian Prosecutor's letterhead.

There is no and, ifs or buts that Gibson Dunn has engaged in conduct that is prejudicial to the administration of justice as the falsified evidence was used with the intent to defraud the court. I will

also remind this Court that on **February 9, 2023** Gibson Dunn and its clients were court sanctioned by

U.S. District Court Judge, the Honorable Vince Chhabria **$925,000** (USD). In his sanctions order he

stated,

> "This case is an example of a wealthy client (Facebook) and its
> high-powered law firm (Gibson Dunn) using delay, misdirection,
> and frivolous arguments to make litigation unfairly difficult and
> expensive for their opponents. Unfortunately, this sort of conduct
> is not uncommon in our court system. But it was unusually
> egregious and persistent here.

He goes on to state,

> The Court finds ***by clear and convincing evidence*** that Facebook
> and ***Gibson Dunn's conduct reflected a sustained, concerted, bad-***
> ***faith effort to throw obstacle after obstacle in front of the***
> ***plaintiffs—all in an attempt to push the plaintiffs into settling the***
> ***case for less than they would have gotten otherwis***e.

Judge Chhabria, before imposing sanctions against Gibson Dunn stated:

> "…***hopefully, this ruling will create some incentive for*** Facebook
> and ***Gibson Dunn*** (and perhaps even others) ***to behave more***
> ***honorably moving forward***."

Evidently Gibson Dunn has not heard the call to duty. By using Chevron's political influence to

threaten witnesses to withdraw from these proceedings, filing verifiably falsified evidence with this

Court, concealing *Zoom* video and audio recordings evidencing *ex parte* communication with a federal

court circuit court judge, and then secretly having a Gibson Dunn associate attorney leave Gibson Dunn

then work for Judge Miller during this appeal, and as explained further below, days after writing the

decision denying confirmation of a $18 billion dollare arbitral award, leave the Circuit Court for an

undisclosed paid position back with Gibson Dunn.

Respectfully, there can be no **willful blindness** to Gibson Dunn's and Chevron's misconduct.

Concerningly, however, undersigned counsel has concerns of this Court's impartiality in light of prior

attempts of reporting of misconduct and more specifically when it dismissed Petitioners case pursuant to *Shaw v. Regents of University of California*, 58 Cal. App. 4th 44, 54, (1997). As evidenced in this Court's September 24, 2019 Order of Dismissal, it relies on *Shaw* to dismiss Petitioners' case on the basis that Deed 124 did not "clearly and unequivocally incorporate" Article 31's agreement to arbitrate. Why is this concerning? Because the *Shaw* decision stated the exact opposite from what this Court wrote in its September 24, 2019 ruling [Dck#171]. *Shaw* never required a clear and unequivocal standard. To the contrary it states the following,

> "**the contract need not recite that it "incorporates" another document, so long as it "guide[s] the reader to the incorporated document."** (Compare *Baker v. Aubry*, supra, 216 Cal.App.3d at p. 1264 with *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal. App. 3d 632, 644 [223 Cal. Rptr. 838].)"

While undersigned counsel believes this may be a judicial oversight, I still believe in the impartiality of this Court and your Honor. While the facts and law could not be more clear, in your hands, more than mine, is the opportunity to put a stop to this "kill step" guerilla legal tactics of targeting U.S. lawyers through affluent clientele's ability to instigate arbitrary judicial exercise of force. It's up to you.

F. Gibson Dunn's Affiliation with Circuit Court Judge Eric D. Miller is not Wholly Forthcoming. Gibson Dunn Attorney Omits that Gibson Dunn Attorney, Matthew Reagan worked for Gibson Dunn Prior to Clerking for Judge Miller and Prior to the Decision to the August 12, 2021 Decision. Days After the Written Decision he was Offered and Paid an Associate Position with Gibson Dunn and Returned Back to Work for his Prior Employer. None of This was Disclosed on Appeal by Gibson Dunn or the Circuit Court Judges to Attorney Chung.

In these proceedings, Gibson Dunn attorneys boldly go where no law firm has gone before, which is *ex parte* communication, infiltrating the courthouse with Gibson Dunn attorneys posed as law clerks, paying them money after they leave and then using their judicial influence to target lawyers who

expose this misconduct; a tactic they have used for years[6].  Somehow, attorney Champion skates over the concealed and revealing fact that Ninth Circuit Court Judge Eric Miller's law clerk, Matthew C. Reagan, who resides in San Francisco while Judge Miller's chambers are in the Nakamura courthouse in Seattle, Washington, was a associate for Gibson Dunn & Crutcher, LLP between **May 2015** to **July 2015**. He then clerked for this Court between August to November 2015. After being admitted into the California Bar, Gibson Dunn attorney Matthew Reagan clerked for Ninth Circuit Judge Eric D. Miller while this appeal was pending, this was never disclosed. On **August 12, 2021**, Eric Miller, on behalf of the judicial panel, ruled against Petitioners. Days after the decision was written, Matthew Reagan stopped being a purported Law Clerk for Judge Miller and on **September 1, 2021** started again working back for Gibson Dunn & Crutcher, LLP. Did Gibson Dunn attorney, Matthew C. Reagan write Judge Miller's decision? Is there a difference between a reason and an excuse?

One need only ask themselves, what would a reasonable person confronted with these facts make of these proceedings? Should a lawyer be sanctioned over a quarter of a million dollars **($268,283.85)** for asking judicial permission to file an illustrative exhibit that exposes judicial and legal misconduct that included witness tampering, falsified evidence, and thereafter exposing *Zoom* audio and video recording evidencing *ex parte* communication with a judge, and having oppsoming counsel's former

---

[6] For example, Judge A. Wallace Tashima (whose law clerk also worked at Gibson Dunn after clerking in the Ninth Circuit) curiously served as a Special Master in sanctions proceedings against Thomas V. Girardi, Walter J. Lack; Paul A. Traina that denied recognition of a foreign judgment against Gibson Dunn's client and effectively suspended the attorneys' from practicing law within the Ninth Circuit. Harvard lawyer and human rights activist Steven Donziger who obtained a multibillion-dollar judgment against Chevron was disbarred and imprisoned for contempt without a jury and privately prosecuted per a *sua sponte* court order by U.S. federal judge Lewis A. Kaplan when the U.S. Attorney General in New York refused to prosecute attorney Donziger. Gibson Dunn, using falsified evidence, reported California attorney Jorge Dominguez to the California Bar for ethical misconduct. The bar complaint was later dismissed. Even the large DC law firm of Patten Boggs retreated when Gibson Dunn and Chevron alleged that Ecuadorian judgments were a purported sham. In a *Reuters* online post, Donziger alleged that Chevron relocated Judge Guerra's family to the U.S. amd paid him $38,000 to testify against Donziger. Chevron evidently confirmed Chevron that it paid Judge Guerra's family $10,000 per month for living expenses and $2,000 for housing to testify against Donziger.

associate, clerk for a judge presiding over a $18 billion dollars write a decision and days later return back to the law firm that he previously worked for. What would a reasonable person make of judges who have knowledge of this criminal, civil and legal misconduct but remain silent to an oil cartel's indiscretion but commence retaliatory sanctions towards the attorney who has sounded the trumpet for fairness and impartiality.

Is there law? Are there truly impartial courts handling case? If this Court remains neutral in situations of such obvious injustice, it has effectively become a comrade to rule by law as opposed to rule of law. Because I see this injustice, I am willing to march into hell for a heavenly cause…*aequitatis*!

G.  The Unpublished Cases Chevron Attorney Anne Champion Cites for Validating the Legitimacy of Attorneys' Fees Sanctions Actually Undermines Chevron's Argument for Imposition of Attorneys' Fees. Contrary to Chevron's Motion, Declaration and Exhibits, the Case Law Chevron Relies Upon Would Bar Attorneys' Fees Because Gibson Dunn Associate Attorney Stephen Henrick is not a Lead Attorney nor Record Keeper and an Attorney who Lacks Personal Knowledge of the Time Spent by Another Attorney Cannot Attest to the Fees Sought by that Other Attorney. Moreover, Gibson Dunn Omits the 12 Factor Analysis for Allowing for an Award of Attorneys' Fees.

Chevron's Gibson Dunn attorney, Anne Champion, maintains a remarkable consistency in misstating both facts and law and charitably cites case law adverse to her client's legal interest. In the litany of unpublished cases she copies and pastes into her legal briefing, she neglects that some of these cases are inapposite to Chevron arguments for justifying attorneys' fees based on the motion, declarations and exhibits they filed with this Court. For example, they have Associate Attorney Stephen Henrick submit a declaration on behalf of all attorneys. However, if you read the decision in *Kong v. Margaret M. Harris Corp.*, No. CV 18-2112-MW (FFMx), 2020 WL 4018294, at *5 (C.D. Cal. Mar. 5, 2020), a declaration is required from a record keeper or partner of the law firm for attorneys' fees to be properly authenticated under ER 803.

Here Stephen Henrick is an Associate Attorney that is neither a record keeper nor lead attorney in the case. While he may have made cameo appearances here and there with emails, he does not meet the threshold criteria that Chervon attorney Anne Champion cites in *Kong*. They then cite *Stonebrae, L.P. v. Toll Bros., Inc.*, No. C-08-0221-EMC, 2011 WL 1334444, at *8 (N.D. Cal. Apr. 7, 2011) for the proposition that purportedly a single attorney declaration sufficed to authenticate the time entries for three attorneys), *aff'd*, 521 F. App'x 592 (9th Cir. 2013). However in *Stonebrae*, relying on Civ. Local R. 54-5(b)(2) states:

> ***A motion for attorney's fees must be supported by a declaration*** or affidavit containing, *inter alia*, "[a] statement of the services rendered ***by each person for whose services fees are claimed together with a summary of the time spent by each person***, and a statement describing the manner in which time records were maintained." Civ. Local R. 54-5(b)(2).

As such, the *Stonebrae* court disallowed a number of hours for a number of timekeepers. No there was no rubber stamp on attorney's fees in *Stonebrae* by a single lawyer. That aside, Gibson Dunn has not complied with Civ. Local R. 54-5 as Chevron motion was not noted 14 days after the June 26, 2023 Circuit Court Order, there is no certification of meeting and conferring before filing the motion for attorneys' fees because it never took place, there is no declaration from each person expending time on the matter nor is there a description of relevant qualifications and experience and a statement of the customary hourly charges of **each such person** asking for an award of attorneys' fees. Additionally neither the Motion nor their Reply comply with Fed. Rul Civ. Proc. 27. In other words, if this impartial tribunal were to follow the letter of the law, Gibson Dunn would gets less than 0 and actually be sanctioned and referred to legal misconduct proceedings.

However, if this Court were to elect considering published authority as opposed to unpublished case law that is not authoritative, then it can turn to *Muniz v. UPS*, 738 F.3d 214 (9th Cir. 2013)) declined

to allow an attorney to attest to time spent by someone else in his office[,] finding that such an attestation was hearsay under the Federal Rules of Evidence.

Applying the law to the case at bar and the pending materials before this Court, any motion for attorneys fees not predicated personal knowledge is hearsay and should also be discounted under the Best Evidence Rule as the best evidence to explain the nature of work, hours, and experience, would have been a declaration" from the person attesting time spent on the matters. *See*, *In Kranson v. Fed. Express Corp.*, 2013 U.S. Dist. Lexis 173499, *17 (N.D. CA Dec. 11, 2013).

### III. CONCLUSION

Based on the foregoing, and without waiving objections to these post-mandate proceedings, undersigned counsel respectfully asks that Chevron's motion be stricken or in the alternative be denied or apportioned to reflect only those amount of hours addressing the motion that was the basis for imposition of sanctions.

*Respectfully submitted this 15th day of October, 2023*

/s/ Edward Chung
Edward C Chung, WSBA# 34292
1037 NE 65th Street, Suite 80171
 Seattle, Washington 98104
Phone: (206) 264-8999
Facsimile: (206) 264-9098
Email: Echung@cmmlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

Undersigned counsel declared he filed and served the foregoing document on this 15th day of October 2023 with the court ECF database which will serve Chervon's counsel of record electronically.

_/s/ Edward Chung_____
Edward C Chung, WSBA# 34292
1037 NE 65th Street, Suite 80171
Seattle, Washington 98104
Phone: (206) 264-8999
Facsimile: (206) 264-9098
Email: Echung@cmmlawfirm.com